UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

MASON CLASSICAL ACADEMY, INC.,
a Florida non-profit corporation,
KELLY LICHTER, individually, and
DAVID BOLDUC, individually,

                                    Case No.

      Plaintiffs,

v.

LARRY ARNN, individually,
HILLSDALE COLLEGE, INC.,
a Michigan non-profit corporation,
JONATHAN D. FISHBANE, individually,
ERIKA DONALDS, individually,
THE OPTIMA FOUNDATION, INC.,
a Florida non-profit corporation,
MATTHEW MATHIAS, individually,
PHOENIX EDUCATION NETWORK, INC.,
a Florida non-profit corporation,
CHRISTOPHER DURST, individually, and
CHRISTINE LEWIS, individually,
PAMELA VICKARYOUS, individually,
BENJAMIN H. YORMAK, individually,

      Defendants.

_____/

## COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiffs, Mason Classical Academy, Inc., Kelly Lichter, and David Bolduc,

sue Defendants, Larry Arnn, Hillsdale College, Inc., Jonathan D. Fishbane, Erika

Donalds, The Optima Foundation, Inc., Matthew Mathias, Phoenix Education

Network, Inc., Christopher Durst, Christine Lewis, Pamela Vickaryous, and Benjamin

H. Yormak, and allege as follows:

## I.    <u>NATURE OF THE ACTION</u>

1.    Mason Classical Academy, Inc. is a private non-profit corporation that operates "Mason Classical Academy," *the highest performing public school* in Collier County, Florida—one of Florida's wealthiest and most politically influential counties.

2.    Kelly Lichter and David Bolduc are *unpaid volunteers* who serve on the school's Governing Board.

3.    Despite Mason Classical Academy's stellar academic and financial performance, Plaintiffs have been the targets of a relentless, ongoing conspiracy carried out by individuals, officials, and entities with considerable political and economic power on the local, state, and national level.

4.    This cast of conspirators and their accomplices and enablers includes current and former elected officials, attorneys, their spouses and affiliated companies, and others with political aspirations or grudges against Plaintiffs, who covertly planned and carried out a continuing series of criminal and tortious acts that violated Plaintiffs Constitutional rights, liberties, and freedoms.

5.    Ironically, the seditious scheme to seize control of Mason Classical Academy is antithetical to the policies many of the Defendants and their facilitators endorse—most notably increasing parental and decreasing governmental control over educational opportunities for children.

6.    Regardless of whether they were motivated by the money, power, and/or political benefits associated with controlling Mason Classical Academy or driven by greed, political alliances, ill-will, hatred, or spite, each Defendant shared a common

goal of rapidly expanding Hillsdale College's Barney Charter School Initiative and with it their own social, political, or economic interests.

7.      In furtherance of that goal, Defendants each engaged in overt, unlawful, and tortious acts that substantially contributed to their conspiracy's objective and caused Plaintiffs considerable harm that cannot be allowed to continue.

8.      Plaintiffs bring this action primarily to stop the onslaught of abuse and harassment they and their school have endured over the past several years simply because they are unwilling to be bullied and forced out of their school by people with more political influence and economic power.  Plaintiffs also seek compensation for the significant harm Defendants' acts and conspiracy to seize control of Mason Classical Academy and oust its Board has caused.

## II.      PARTIES, JURISDICTION & VENUE

9.      Plaintiff, Mason Classical Academy, Inc. ("MCA") is a Florida non-profit corporation with its principal place of business located in Collier County, Florida.

10.      Plaintiff, Kelly Lichter ("Lichter"), is an individual residing in Collier County, Florida.

11.      Plaintiff, David Bolduc ("Bolduc"), is an individual residing in Collier County, Florida.

12.      Defendant, Larry Arnn ("Arnn"), is an individual residing in Hillsdale, Michigan.

13.     Defendant, Hillsdale College, Inc. ("Hillsdale"), is a Michigan non-profit corporation that is registered to conduct and conducting business in Florida, including in Collier County, with its registered agent located in Volusia County.

14.     Defendant, Jonathan D. Fishbane ("Fishbane"), is an individual residing in Collier County, Florida.

15.     Defendant, Erika Donalds ("E. Donalds"), is an individual residing in Collier County, Florida.

16.     Defendant, The Optima Foundation, Inc. ("Optima Foundation"), is a Florida non-profit corporation with its principal place of business located in Collier County, Florida.

17.     Defendant, Matthew Mathias ("Mathias"), is an individual residing in Collier County, Florida.

18.     Defendant, Phoenix Education Network, Inc. ("Phoenix"), is a Florida non-profit corporation with its principal place of business located in Collier County, Florida

19.     Defendant, Christopher Durst ("Durst"), is an individual residing in Orange County, Florida.

20.     Defendant, Christine Lewis ("Lewis"), is an individual residing in Hillsborough County, Florida.

21.     Defendant, Pamela Vickaryous ("Vickaryous"), is an individual residing in Collier County, Florida.

22.    Defendant, Benjamin H. Yormak ("Yormak"), is an individual residing in Lee County, Florida.

23.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1332 because it involves claims arising under the U.S. Constitution and laws of the United States, as well as claims between citizens of different states with an amount in controversy that exceeds the sum of $75,000.00, exclusive of interest and costs.  This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367 because they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same cause or controversy under Article III of the U.S. Constitution, and do not raise novel or complex issues of state law or substantially predominate over the claims over which this Court has original jurisdiction.

24.    Pursuant to 28 U.S.C. §1391, venue is proper in this District because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District and multiple Defendants reside in this District.

25.    Defendants, directly and/or through employees, agents, authorized representatives, co-conspirators, subsidiaries, affiliates, and/or other persons, entities, and/or representatives acting under their management, direction, supervision, and/or control, engaged in numerous contacts in, with, and/or directed at the state of Florida upon which this action is based.

26.    Defendants knowingly and intentionally entered into one or more contracts or agreements, pursuant to which they, directly and/or through employees,

agents, authorized representatives, co-conspirators, subsidiaries, affiliates, and/or other persons, entities, and/or representatives acting under their management, direction, supervision, and/or control, committed and engaged in tortious and overt acts within and directed at the state of Florida.

27. Based on the facts alleged throughout this Complaint, this Court has personal jurisdiction over each Defendant under Section 48.193, *Florida Statutes*, because they each personally, directly, in concert with one another, and/or through an employee, agent, co-conspirator, subsidiary, affiliate, and/or other person or entity acting under their management, supervision, direction, and/or control, engaged in one or more of the following acts:

a. committing tortious acts within the state of Florida;

b. committing intentional torts expressly aimed at Florida, effects of which were suffered in Florida;

c. operating, conducting, engaging in, or carrying on a business or business venture within the state of Florida, or having an office in Florida;

d. engaging in substantial and not isolated activity within the state of Florida; and/or

e. engaging in a conspiracy to commit tortious acts against Plaintiffs within the state of Florida and engaging in overt acts in furtherance of that conspiracy within the state of Florida.

28. Based on the facts alleged throughout this Complaint, sufficient minimum contacts exist between each Defendant and the state of Florida to satisfy Due Process under the United States Constitution because Defendants: (1) engaged in substantial and not isolated activity within and directed at the state of Florida;

(2) reside, maintain an office, and/or conducted business through employees, agents, co-conspirators, and/or authorized representatives located in the state of Florida; and/or (3) committed and conspired to commit intentional torts expressly aimed at Florida, the effects and harms of which were calculated to and did cause injury within the state of Florida.  Accordingly, each of the Defendants could and should have reasonably anticipated being sued for the claims alleged herein in the state of Florida.

29.     At all times material to this action, Defendants were the agents, licensees, employees, partners, joint-venturers, co-conspirators, masters, and/or employers of one another, and each of them acted within the course and scope of an agency, license, partnership, employment, conspiracy, ownership, joint venture, or contractual relationship with one another.  At all times material to this action, each Defendant's acts, omissions, and misconduct alleged herein were known to, authorized, approved, and/or ratified by the other Defendants; and/or Defendants engaged in such acts, omissions, and misconduct in concert or active participation with one another or to aid or abet one another.

30.     Defendants conspired and agreed with each other and others to engage in unlawful and tortious conduct intended to violate Plaintiffs' Constitutional rights, harm Plaintiffs, prevent Plaintiffs from holding office and discharging the duties of their offices, injure Plaintiffs on account of their lawful discharge of the duties of their offices, and disrupt and/or interfere with the lawful administration and functions of their offices and MCA's operations.  In furtherance of this conspiracy, Defendants and other co-conspirators engaged in overt acts within and directed at the state of Florida

and could and should have reasonably anticipated that their and their co-conspirators' acts and omissions alleged herein connected them to Florida in a meaningful way.

31.    Defendants' actions, failures to act, and misconduct alleged herein produced and/or substantially contributed to producing the damages, injuries, and harms Plaintiffs suffered, and for which they seek recovery and redress through this action; which injuries and harms occurred in the state of Florida and the greatest effects of which were suffered within the state of Florida.

32.    All conditions precedent to the filing and maintenance of this action have occurred, have been performed, and/or have been waived.

33.    Plaintiffs have retained the undersigned attorneys to represent them in this action and are obligated to pay them a reasonable fee for their services.

## III.    OVERVIEW OF THE PARTIES & KEY PLAYERS

34.    MCA operates a charter school for grades K-12 in Collier County, Florida pursuant to a Charter Agreement with the School Board of Collier County ("CCSB") dated June 13, 2017 (attached as **Exhibit A**), as amended by the First Amendment to the Charter Agreement dated December 1, 2017 (attached as **Exhibit B**).  MCA's charter runs through November 30, 2032.

35.    MCA is Collier County's highest performing K-12 public school.  The Florida Department of Education ("FDOE") ranked MCA No. 8 out of 3,392 schools in the state in 2021.  *US News and World Report* recently ranked MCA the No. 351 public school nationally out of 17,843 schools.

36.    MCA is a prototype charter school started by parents who wanted to take a more active role in their children's and community's children's public education.

37.    Lichter is a mom and MCA parent, former teacher, and former Collier County School Board Member, who helped found MCA and has served as its President since its inception over a decade ago.

38.    Lichter *volunteers* her time at MCA and is not compensated for her services.  Her hard work and dedication in the educational field has been recognized by the FDOE, *US News and World Report*, *Eagle Forum*, and the Florida Consortium of Charter Schools.

39.    Lichter served as a Collier County School Board ("CCSB") Member from 2014-2018, often clashing with CCSB counsel, Fishbane, and other-CCSB Board Members due to philosophical differences and because Lichter is a staunch advocate for school choice and charter schools.

40.    Bolduc is a dad and MCA parent who spent his career working in the financial services industry and has *volunteered* his time without compensation as an MCA Board Member and its Treasurer since January 2019.

41.    **Lichter and Bolduc do _not_ personally profit or derive any personal financial benefit from the time and energy they donate to MCA**.

42.    Durst is a former MCA parent and an accountant with "operational and financial management experience from a variety of industries."

43.    Lewis is a former MCA parent and former administrative assistant for MCA.

44.    Joseph Baird ("Baird") is a former MCA parent who briefly served on the MCA Board and as its Treasurer from August 2016 to October 2016.

45.    Mathias was an MCA Board Member from September 2014 until his resignation in December 2015 due to a conflict of interest associated with loans he procured for the school.

46.    Mathias is a founder and Chair of the Governing Board of Defendant, Phoenix, a Florida non-profit corporation he formed with E. Donalds amidst the conspiracy to take over MCA and oust its Governing Board.

47.    Phoenix operates the Naples Classical Academy, a Hillsdale College affiliated Collier County charter school managed by E. Donalds's Optima Foundation. Naples Classical Academy opened in the fall of 2021.

48.    Mathias serves on Phoenix's Governing Board with its Vice Chair, Derrick Ayers[1] ("Ayers"), Tim Hall (a consultant for Florida Gulf Coast University and Ambassador for the Greater Naples Chamber of Commerce) and Bill Truog (a Hillsdale College graduate).

---

[1] Ayers was a board member of the Greater Naples Chamber of Commerce alongside Bill Barker, President/Publisher of the *Naples Daily News* from 2016-2021. Ayers and Bill Barker also served together on the Collier County Chamber of Commerce and The Partnership for Collier's Future Economy. Ayers also serves on the Board of newly formed "Forward Collier ECO" with Blake Gabel.

49.     Byron Donalds ("Rep. Donalds") is a member of the U.S. House of Representatives on behalf of Florida's 19th District and was a member of the Florida House of Representatives from 2016-2020.  While in the Florida House, Rep. Donalds was on the Education Committee and Appropriations Committee and the Vice Chair of the PreK-12 Appropriations Subcommittee.  He was also involved in the passage of Florida House Bill 7069 in 2017, including its "Schools of Hope" and "Hope Scholarship" initiatives.

50.     E. Donalds and Rep. Donalds are married and actively involved in Republican political circles:





51.    E. Donalds is the President and CEO of Defendant, Optima Foundation, a charter school management company with close ties to Hillsdale College that manages several charter schools in Florida, as well as a recently launched virtual charter school.[2]  In 2015, E. Donalds co-founded the Florida Coalition of School Board Members ("FCSBM") with Shawn Frost, who was Rep. Donald's 2020 campaign manager.  In December 2021, E. Donalds also incorporated The Classical Education Network, Inc.

52.    E. Donalds was an MCA Advisory Board Member from 2012-2014 and Collier County School Board Member from 2014-2018.

53.    In March 2022, Gov. DeSantis appointed E. Donalds to the Florida Gulf Coast University's ("FGCU") Board of Trustees.[3]  FGCU's Board Chair, Blake Gable

---

[2] In September 2020, E. Donalds incorporated Optima Domi, LLC (now OptimaED, LLC), a virtual instruction provider of a classical education curriculum substantially similar to Optima Foundation's other schools.
[3] The FGCU Foundation is a channel for private donations to FGCU.  Its elected Board Members include Bill Barker and Gail Markham.  Bill Barker is also a Director of the Naples

(CEO and President of Barron Collier Companies), also serves on the board of Forward Collier ECO with Ayers.

54.    Optima Foundation is a non-profit charter school management company that provides financial and compliance management and oversight to charter school governing boards in exchange for a management fee, typically in the range of 10% to 12% of the school's gross revenue.

55.    Optima Foundation is closely associated with Hillsdale College and manages several Hillsdale charter schools through the Barney Charter School Initiative, including Treasure Coast Classical Academy, Jacksonville Classical Academy, Naples Classical Academy, and Optima Classical Academy. Optima Foundation states its mission as follows:



---

Chamber of Commerce with Blake Gable (Board Chair-Elect), Ayers (Vice Chair), and Collier County School Superintendent Kamela Patton (Ex-Officio).

> Optima's goal is the successful launch of Hillsdale College Barney Charter School Initiative classical academies and other schools of excellence across the state of Florida. Our classical schools serve kindergarten through twelfth grade, with the mission to train the minds and improve the hearts of young people through a content-rich classical education in the liberal arts and sciences, with instruction in the principles of moral character and civic virtue.

56.    Optima Foundation's Government Relations Manager, Domine Clemons ("Clemons"), is a member of the Emerging Leaders Council at the Steamboat Institute and previously worked as the Director of Operations of Florida Citizens Alliance.  Clemons interned at the U.S. Department of Education under Betsy DeVos and is a 2020 graduate of Hillsdale College.

57.    Optima Foundation Board Member Bob Harden also serves on the Board of the Foundation for Government Accountability ("FGA") with Bridgett Wagner (Vice President for External Relations at The Heritage Foundation), who also serves on the Board of the Steamboat Institute with Dr. Matthew Spalding, Vice President of Washington Operations and Dean of the Van Andel Graduate School of Government for Hillsdale College in Washington D.C.

58.    Former-President Trump appointed Dr. Spalding as the Executive Director of his 1776 Commission, on which Arnn served as Chair:

**THE PRESIDENT'S ADVISORY 1776 COMMISSION**

Larry P. Arnn, Chair
Carol Swain, Vice Chair
Matthew Spalding, Executive Director

59.    Optima Foundation's Director of Charter School Management, Chuck Marshall ("Marshall"), was affiliated with MCA for several years until he left MCA for Optima Foundation in 2019.  Marshall has worked as a consultant for E. Donalds and Optima Foundation since 2018.

60.    Optima Foundation's Director of Finance & Compliance, Susan Turner, is a MCA's Former Business Manager who left MCA in 2019 to work for Optima Foundation.

61.    Hillsdale College is a private conservative liberal arts college based in Hillsdale, Michigan.  All of Hillsdale's educational efforts—from its undergraduate and graduate degree programs at its campus in Hillsdale, Michigan, to its national outreach programs—depend on the support of donors because it does not receive funding from any government funding, loans or grants.  Hillsdale College's endowment is nearing $1 billion.

62.    Hillsdale College's Barney Charter School Initiative ("BCSI") started in 2010 to launch K–12 charter schools across the country based on a classical liberal arts model, with a strong civics component to "equip students to understand and defend the principles of the Declaration of Independence and the Constitution."

63.    Hillsdale's BCSI has been described by some as "part of the far right's national plan for schools":



64.    Arnn has served as Hillsdale's President since 2000.  He is one of the founders of The Claremont Institute, serving as its President from 1985 to 2000, and has also served on the Board of Directors of The Heritage Foundation since 2002 and on the Board of Advisors for Landmark Legal Foundation.

65.    Arnn's daughter, Kathleen O'Toole ("O'Toole"), is Assistant Provost for K-12 Education at Hillsdale College, where she leads Hillsdale's work in K-12 education and the BCSI.

66.    O'Toole and E. Donalds serve together as Advisory Board Members for Classic Learning Test ("CLT"), a standardized test developed by Classic Learning Initiatives designed as an alternative to the SAT and ACT.

67.    Phillip Kilgore ("Kilgore") was the Executive Director of Hillsdale College until September 2019 and responsible for BCSI until July 2019, when O'Toole took over.

68.    Eric Coykendall ("Coykendall) is a graduate of Hillsdale College and Associate Director of Hillsdale's BCSI, where his job duties and responsibilities include charter school founding efforts, guiding schools through the application process, and writing and defending charter applications.

69.    Chris VanOrman ("VanOrman") is a professor at Hillsdale College and was appointed its Provost in 2019.

70.    Mike Harner ("Harner") is Chief Staff Officer and Assistant to the President at Hillsdale College.  Harner also recently became Board Chair of Hillsdale's charter management organization, American Classical Education, Inc., which is currently pursuing several charter school applications in Tennessee.

71.    CCSB is the elected policy-making body of the Collier County School District.  CCSB Board Members focus on policy and governance and appoint the Superintendent of Schools in Collier County, who is the Secretary and Executive Officer of the School Board and administers daily operations in the School District. The CCSB is composed of five members, elected at large, for staggered four-year terms. CCSB sponsored MCA's Charter.

72.    Kamela Patton ("Sup. Patton") has been Superintendent of Schools in Collier County since 2011 and is scheduled to leave her position following the 2022-2023 school year.

73.    Fishbane is a licensed attorney in the state of Florida and general counsel for the Collier County School District.  He previously worked at the Roetzel &

Andress[4] law firm with James Fox ("Fox"), who represents the CCSB as outside litigation counsel in several matters adverse to MCA, Lichter, and Bolduc.  Fishbane and Fox are friends and have worked together for many years.

74.    Richard Corcoran ("Corcoran")[5] served as Speaker of the Florida House from 2016-2018 and Florida's Commissioner of Education from 2018-2022.  In May 2022, Gov. DeSantis appointed Corcoran to the Board of Governors of the State University System.

75.    Vickaryous was MCA's Principal from October 4, 2019 through June 5, 2020.  Prior to joining MCA, she worked as a Collier County School District Administrator, Principal, and Assistant Principal.

76.    Before working at MCA, Vickaryous was fired from Manatee Middle School after allegations of erratic and abusive behavior through targeting, bullying and undermining staff.  After Vickaryous was fired as Principal of Manatee Middle School, Yormak filed a whistleblower lawsuit on her behalf against the CCSB.

77.    Yormak is a licensed Florida attorney who specializes in employment and disability law and regularly represents individuals in employment and

---

[4] Roetzel & Andress was the Naples City Attorney until May 2021.
[5] Corcoran's wife, Anne, has been active in Hillsdale College's BCSI.  She founded and served as CEO of Classical Academy Preparatory School in Pasco County, Florida, and helped found and served on the Board of Tallahassee Classical Academy, a charter school formerly affiliated with Hillsdale College.  Corcoran's brother, Michael, is the founding partner and CEO of Corcoran Partners, a lobbying firm that has worked for the FCPCS and several charter school management companies.

whistleblower claims.  Yormak's clients include Vickaryous, former MCA employee Scott Moore, and Durst.

78.     Former MCA attorney, Shawn Arnold ("Arnold"), is a licensed Florida attorney whose practice is focused on representing charter schools and educational management organizations ("EMOs") in transactional and litigation matters throughout Florida.  Arnold's firm, The Arnold Law Firm, L.L.C., is a Florida Consortium of Public Charter Schools ("FCPCS") preferred vendor that represents charter and private schools, EMOs, educational service providers, investors, and others similarly situated.

79.     FCPCS is Florida's leading charter school membership association with a membership of nearly 75 percent of all operating charter schools.  FCPCS provides technical support, mentoring, training, networking, and purchasing services to its membership; and advocates for all Florida public charter schools.

## IV.    FACTUAL BACKGROUND

### A.    Overview of Florida's Charter School System

80.     Charter schools in Florida are part of the state's program of public education and formed and operated pursuant to a statutory framework laid out in Part III of Chapter 1002, *Florida Statutes*.  *See* § 1002.33, *Fla. Stat*.

81.     Charter schools are "sponsored" by the district school board in the county in which the charter school is located. *See* § 1002.33(5)(a), *Fla. Stat*.

82.     Charter school "sponsors" have specific enumerated duties, such as the review and approval of new charter school applications, renewal of charter contracts,

and monitoring and reviewing school progress and certain operations. *See* §§ 1002.33(5)(b) & 1002.345, *Fla. Stat*.

83. As publicly acknowledged[6] by CCSB representative Sheryl Rogers concerning MCA in October 2018:

> Sheryl Rogers, administrative director of curriculum and instruction and charter school liaison for the Collier school district, said the district does not have a supervisory role over charters.
>
> "Their board is the governing body of that school," she said.

84. A charter school sponsor cannot apply its policies to a charter school unless the charter school agrees. *See* § 1002.33(5)(b)(1)(d), *Fla. Stat*. Moreover, a sponsor cannot impose additional reporting requirements on a charter school so long as the charter school has not been identified as having a deteriorating financial condition or financial emergency. *See* § 1002.33(b)(1)(j), *Fla. Stat*.

85. Section 1002.33(8), *Florida Statutes*, specifies very limited causes for nonrenewal and termination of charters. Sponsors are required to "make student academic achievement for all students the most important factor" in renewal and termination decisions. *See* § 1002.33(8)(a), *Fla. Stat*. Sponsors "may choose not to renew or may terminate [a] charter only if the sponsor expressly finds that" one of the following three grounds "exists by clear and convincing" evidence: (1) failure to participate in the state's education accountability system or failure to meet the

---

6          https://www.naplesnews.com/story/news/education/2018/10/05/former-mason-classical-treasurer-alleges-financial-mismanagement/1251257002/

requirements for student performance stated in the charter; (2) failure to meet generally accepted standards of fiscal management due to deteriorating financial conditions or financial emergencies determined pursuant to § 1002.345; or (3) material violation of law. *Id.*

86.     A charter can only be terminated immediately where the sponsor "sets forth in writing the particular facts and circumstances demonstrating that an immediate and serious danger to health, safety, or welfare of the charter school's students exists and is likely to continue, and an immediate termination of the charter is necessary. *See* § 1002.33(8)(c), *Fla. Stat.*

87.     Charter schools are exempt from Chapters 1000-1013, Florida Statutes, with certain enumerated exceptions. *See* § 1002.33(16)(a)-(b), *Fla. Stat.*

88.     The governing board of a charter school is required to exercise continuing oversight over charter school operations, responsible for establishing and maintaining certain internal controls and compliance with governing laws, and participate in governance training approved by FDOE. *See* § 1002.33(9)(i)-(j), *Fla. Stat.*

89.     Members of a charter school governing board are subject to §§ 112.313(2) [solicitation or acceptance of gifts], 112.313(3) [doing business with one's agency], 112.313(7) [conflicting employment or contractual relationship], and 112.313(12) [exemptions], and 112.3143(3) [voting conflicts], *Florida Statutes. See* § 1002.33(26)(a), *Fla. Stat.*

90.     **A charter school sponsor and FDOE have no authority to appoint or remove charter school governing board members**.

91.     In the performance of their official duties, Florida charter schools (such as MCA) and their Governing Board members (such as Lichter and Bolduc) are required to comply with the U.S. Constitution and several Federal laws, such as the:

- Elementary and Secondary Education Act of 1965 (ESEA), as amended;
- Family Educational Rights and Privacy Act (FERPA);
- Civil Rights Laws, including Title II of the Americans with Disabilities Act, Title IX of the Education Amendments of 1972, and Title VI of the Civil Rights Act of 1964;
- Individuals with Disabilities Education Act (IDEA); and
- Workforce Innovation and Opportunities Act (WIOA).

**B.      The Money, Politics, & Power of Charter Schools**

92.     Although publicly funded, operated by non-profit organizations, and sponsored by local school districts, charter schools are significant sources of political capital and private revenue *for some* people and organizations (like Defendants).

**(1)      The Economics of Charter Schools**

93.     In 2021-2022, Florida appropriated $182,864,353 to charter schools through the Florida Education Finance Program ("FEFP").  Funding for each charter school is directly tied to its student enrollment.

94.     Management companies or EMO play a prominent role in Florida's charter school system.[7]  Over 40% of Florida charter schools are managed by EMOs, which receive a percentage of the public funds appropriated to a charter school in

---

[7] Two of the largest EMOs in the country are based in Florida (Charter Schools USA and Academica).

exchange for their management services.  By way of example, Optima Foundation typically receives a 10% to 12% management fee from each charter schools it manages.

95.    Charter school campuses are also a significant source of revenue in the form of rent charter schools pay to lease their facilities and interest charter schools pay on loans they use to purchase and build charter school campuses.  Some EMOs (directly or through related entities) own and rent campuses to charter schools.

96.    Attorneys, such as Arnold, can also generate significant revenue from representing charter schools and EMOs, particularly during the application and charter approval process.

97.    Not surprisingly, EMOs and other businesses in the charter school industry are active in Florida politics.  By some estimates, EMOs have provided over $13.5 million in political spending in Florida since 1998, and several EMOs have direct and indirect connections to elected officials.

98.    When Optima Foundation was formed in 2017, E. Donalds was a sitting CCSB Board Member and Rep. Donalds was a member of Florida's legislature and Vice Chair of the Prek-12 Appropriations Subcommittee, and worked closely with Corcoran:



99.    In 2017, then-Speaker of the Florida House Corcoran appointed E. Donalds to Florida's 2017-2018 Constitution Revision Commission ("CRC"), on which she served as the Chair of the CRC's Local Government Committee and on the CRC's Rules, Education, and Declaration of Rights Committees.

100.    Another Florida EMO, Academica, has close ties with several current and former Florida lawmakers, among them Manny Diaz, Jr. (recently appointed by Gov. DeSantis as Corcoran's replacement for Education Commissioner) and Antiere Flores (former-President of Doral College and current Director of Development for The ACE Foundation).

101.    In 2017, Florida significantly expanded the economic opportunities associated with charter schools in the state through the "Schools of Hope" legislation (House Bill 7069), which allows "Hope Operators" to manage charter schools in areas where there are "persistently low-performing" public schools.  EMOs that meet certain criteria (including management of *three (3) or more charter schools*) can be designated "Hope Operators" by the state and entitled to be paid their management fee for operating Schools of Hope.  These management fees can range from hundreds of thousands to millions of dollars depending on a school's enrollment.  *See* § 1002.333(2), *Fla. Stat.*

102.    In 2020-2021, there were approximately **159** "persistently low-performing" public schools in Florida, presenting significant financial opportunities for EMOs that can qualify as Hope Operators.

### (2)    The Politics of Charter Schools

103.    Education has become one of the most important issues in local, state, and national politics.   Governor DeSantis recently coined Florida the "Education State":



104.    In 2018, then-candidate DeSantis was elected by a margin of just over 33,000 votes.  In part, that victory has been credited to the importance of school choice, particularly among minority women voters.

105.    The politics surrounding  education spiked due to the COVID pandemic (mask mandates, school closures, and virtual schooling) and growing debate over critical race theory and *The New York Times*' "The 1619 Project."

106.    On November 2, 2020, former-President Trump established his 18-member "1776 Commission" to end the "radicalized view of American history" which

has "vilified [the United States'] Founders and [its] founding" and write a report on "core principles of the American founding and how these principles may be understood to further enjoyment of 'the blessings of liberty.'"

107.   On December 18, 2020, Trump appointed Arnn Chair of the 1776 Commission, which held its first meeting on January 5, 2021 and released its 41-page "The 1776 Report" on January 18, 2021, two days before the end of President Trump's term.

108.   In March 2021, Hillsdale announced its publication of the 1776 Report with a new preface, notes and commentary by Arnn, Carol Swain, and Dr. Spalding:



109.   In July 2021, Hillsdale further advanced the 1776 initiative by releasing its "1776 Curriculum," a K-12 curriculum aimed at teaching what Hillsdale officials described as "a more patriotic approach to American history."

110.   In November 2021, Glenn Youngkin made schools (particularly parental control) the closing issue in his upset win over Terry McAuliffe in the Virginia Governor's race.  At the same time, hundreds of school board members faced recall elections across the country and many candidates campaigned on the issues of school choice, race, COVID restrictions, and gender issues.

111.   Unsurprisingly, education is a centerpiece of Gov. DeSantis's 2022 re-election campaign.

112.   On June 15, 2022, Gov. DeSantis issued his *Education Agenda*—a "statewide blueprint for school board candidates and members who are committed to advancing Governor DeSantis's agenda priorities at the local school board level." That also included an appeal for school board candidates to take a survey and pledge:

113.    Although Florida School Board races are traditionally non-partisan, Gov. DeSantis and gubernatorial candidate Charlie Christ recently began endorsing school board candidates across the state.

114.    For example, Gov. DeSantis recently endorsed Sarasota School Board Member Bridget Ziegler, whose husband, Christian Ziegler, is Vice-Chairman of the Florida Republican Party and a former fellow at The Heritage Foundation.

115.    Bridget Ziegler has worked with E. Donalds and is one of the co-founders of *Moms for Liberty*—a social welfare non-profit organization that recently formed several political action committees and held its National Summit in Tampa on July 14-17, 2022, at which the featured speakers included Gov. DeSantis, Betsy DeVos, Dr. Ben Carson, and Senator Rick Scott:



116.    E. Donalds serves on *Moms for Liberty's* advisory board and Optima Foundation sponsored *Moms for Liberty's* National Summit with The Heritage Foundation and Leadership Institute.

117.    Rep. Donalds recently endorsed Volusia County School Board candidate Jessie Thompson, who attended a candidate training program coordinated by Shawn Frost (Donalds's 2020 campaign manager) in conjunction with a "Campaign Management Workshop" hosted by the Leadership Institute, for which Bridgett Ziegler is the Director of School Board Programs.

### (3)    The Growing Power of Hillsdale's BCSI

118.    Over the past decade, through its BCSI and Arnn's connections, Hillsdale College positioned itself at the forefront of conservative politics and secured a prominent role in Florida's education system.

119.    Hillsdale College alumni and supporters filled prominent roles in the Trump Administration, and Arnn was on former-President Trump's shortlist for Education Secretary before the nomination went to Betsy Devos—whose family has been actively involved in the school choice movement and donated millions of dollars to Hillsdale College.  Betsy DeVos was also a speaker at the *Moms for Liberty* 2022 National Summit in Tampa:



120.   Hillsdale's national political connections also run deep, with school speakers including Supreme Court Justice Clarence Thomas, former Vice President Mike Pence, Mike Pompeo, Sidney Powell, William Barr, and Donald Rumsfeld. Virginia Thomas was the associate director of Hillsdale's DC operations from 2008-2009.

121.   In February of 2022, Tennessee Gov. Bill Lee announced plans with Hillsdale to launch as many as 50 BCSI charter schools in Tennessee, which has been described as the prototype program for Hillsdale's planned BCSI national expansion.

122.   In Florida, Hillsdale's political influence has steadily grown over recent years, and many of its major donors live in the Naples area.

123.   In January 2019, Gov. DeSantis issued Executive Order 19-32, which directed the Commissioner of Education (Corcoran) to comprehensively review Florida's K-12 academic standards and provide recommended revisions for civics education and the elimination of Common Core.

124.   Soon thereafter, Florida HB 807 was introduced, which required instructional materials for civics education courses to be reviewed and approved by the Commissioner of Education in consultation with certain entities and individuals to identify errors and inaccuracies in state-adopted education materials.

125.   In March 2019, HB 807 was amended to specifically identify Hillsdale College among a small group of organizations approved to assist the Commissioner of Education with reviewing and approving civics education course instructional materials.  *See* § 1003.4156, *Fla. Stat*.

126.    In 2019 and 2020, Hillsdale worked with Corcoran to review Florida's standards for civic education and its English language arts and mathematics curriculums, primarily through BCSI:

> Much of the work in reviewing Florida's curriculum has been headed up by the Barney Charter School Initiative, a project of Hillsdale College that promotes classical K-12 education by establishing charter schools across America, including in Florida. "Hillsdale College and its Barney Charter School Initiative are leading the effort to prepare the men and women of this generation to again govern the American Republic according to the principles of liberty," said Kevin Hoeft, education policy development director at the Florida Department of Education. "It is my confident hope that Florida's revised civics education standards will contribute to this noble and essential work."
>
> The Barney Charter School Initiative had a team who worked on the project, composed of former teachers with experience in civics, government, and United States history. The primary contributors were Kathleen O'Toole, Hillsdale's assistant provost for K-12 education; Daniel O'Toole, who teaches U.S. Constitution at Hillsdale College and contributed to the initiative; and Jordan Adams, associate director of instructional resources. The team combed through each individual standard and provided reviews, feedback, and suggestions for improvement.

127.    In 2020, Hillsdale reviewed Florida's civics materials alongside the Bill of Rights Institute (launched in 1999 by the Koch family and its foundations, and whose President, David Bobb, taught at Hillsdale College).

128.    Corcoran spoke at Hillsdale College on May 5, 2021 about the importance of education and charter schools to the conservative agenda, with Arnn introducing him as "one of the most important men in the U.S. today":



129.    After FDOE adopted new civics standards recommended by Hillsdale in 2021, Hillsdale was one of only four groups selected to create a civics training program for Florida teachers.

130.    On February 23, 2022, Gov. DeSantis was the keynote speaker at Hillsdale's National Leadership Seminar in Naples, at which Arnn introduced Gov. DeSantis as "one of the most important people living" and commented that his "most important work is before him—and we need him."

131.    In March 2022, the Florida legislature passed and Gov. DeSantis approved HB1467 establishing term limits for school board members, requiring certain meetings regarding instructional materials to be open to the public, and imposing requirements regarding school libraries.

132.    In April 2022, FDOE rejected dozens of math textbooks based on the recommendations of Jonah Apel (a sophomore student majoring in political science at Hillsdale) and Jordan Adams (a civics education specialist at Hillsdale tied to the "1776 Curriculum").

133.   In July 2022, the University of Florida received $3 million in unrequested funding to establish a civics program backed by the Council on Public University Reform, whose representative, Josh Holdenried, previously worked with The Heritage Foundation and is currently pursuing a master's degree from Hillsdale College.

## C.    The Founding and Achievements Of MCA[8]

134.   In 2011, after exploring the public-school options for their two children in Collier County, Florida, Lichter and her husband decided to start a K-12 charter school.   During that process, they began working with Hillsdale College because its BCSI offered assistance to classical charter school boards in their formative years at no charge.

135.   The CCSB approved MCA's charter application in October 2012 and executed MCA's initial Charter Contract on August 30, 2013, which provided for MCA to open in August 2014.  The term of MCA's original (2013) Charter Contract ran through June 30, 2017.

136.   On November 15, 2013, MCA and Hillsdale College entered into an Agreement pursuant to which Hillsdale College through its BCSI would assist MCA in launching its charter school.

137.   From 2014 through 2017, MCA's academic and financial performance was exceptional.   It received "A" ratings from the state of Florida every year.

---

[8] "Mason Classical Academy" was named after Lichter's late father, Donald W. Mason.

138.   On June 13, 2017, CCSB executed another Charter Agreement with MCA for a term of five (5) years ending on June 30, 2022 (Ex. 1).  Notably, MCA's Charter Agreement with CCSB does not contain any provisions requiring MCA to be affiliated with Hillsdale.

139.   On October 13, 2017, FDOE notified MCA that it had met the criteria for "high performing" charter status pursuant to section 1002.331, *Florida Statutes*, and MCA and CCSB executed the First Amendment to the Charter Agreement, which extended the term of MCA's charter through November 30, 2032 (Ex. 2).

140.   Under Florida law, a "high-performing" charter school is entitled to certain important benefits:[9]

**What are the benefits offered to a high-performing charter school?**

A high-performing charter school is authorized to:

- Increase its student enrollment once per school year to more than the capacity identified in the charter, but student enrollment may not exceed the current facility capacity.
- Expand grade levels within K-12 to add grade levels not already served
- Submit quarterly rather than monthly financial statements to the sponsor
- Consolidate under a single charter the charters of multiple high-performing charter schools operated in the same district by the charter school's governing board
- Receive a modification of its charter to a term of 15 years
- Replicate its educational program in any district in the state

A high-performing charter school must notify its sponsor, in writing, by March 1 if it plans to increase enrollment or expand grade levels for the next school year.

A high-performing charter school may submit an application in any school district in the state to establish and operate a new charter school that will substantially replicate its educational program. A high-performing charter school may not establish more than one charter school within the state in any year. A high-performing charter school system may also replicate one of its high-performing charter schools in the same manner.

---

[9]    See        https://www.fldoe.org/schools/school-choice/charter-schools/charter-school-faqs.stml

141.    On December 13, 2017, MCA entered into another Agreement with Hillsdale, a copy of which is attached as **Exhibit C**, which extended their relationship through January 1, 2023.  This 2017 Agreement was terminable for any reason on 60-days' notice and specifically provides that Hillsdale has no control over MCA or its governance and that MCA is not required to implement any strategy suggested by Hillsdale.

142.    MCA continued to maintain its exceptional performance record even after its disassociation with Hillsdale in 2019.  In fact, MCA continued its streak of "A" ratings in Florida's most recent school grades, while Naples Classical Academy, a Hillsdale Member school managed by E. Donalds and Optima Foundation and operated by Mathias and Phoenix, was only able to muster a "C" rating.

### D.    The Seeds of the Conspiracy To Take Over MCA

143.    Despite MCA's exceptional performance since opening its doors in 2014, it has been forced to endure an ongoing and relentless effort to seize control of the school and oust its Governing Board.

144.    Lichter and most of the people who helped establish MCA as one of Florida's highest performing schools are not insiders in Naples or Florida political circles and have no close ties to Hillsdale.

145.    When MCA opened its doors to students in 2014, its governing board consisted of Lichter (President), Rep. Donalds (Vice President), Jason Lane (Treasurer), and Shelly Connors (Secretary).  E. Donalds and Mathias were advisory board members.

146. Mathias helped MCA's fundraising efforts and was trying to secure funding for MCA to purchase and make capital improvements to the building it was leasing.

147. Eventually, Mathias was forced to resign from MCA's Board because of a conflict of interest associated with several unsecured loans he procured for MCA that benefited his family members.

148. As a result, Mathias started working with Rep. Donalds to take over MCA, including trying to use a promise of a construction loan to gain a seat for Mathias on the MCA Board with the "understanding" that if Rep. Donalds could convince Lichter to resign, Mathias would secure loans on better terms for MCA.

149. This tactic came to a head at a May 9, 2016 MCA Board Meeting, at which Rep. Donalds tried to convince Lichter to resign in exchange for Mathias's loans, knowing that he would ascend to MCA Board Chair if he could convince Lichter to step down.[10]  The effort to strong-arm Lichter into resigning failed.

150. On August 8, 2016, Baird joined MCA's Board and was appointed Treasurer.  However, he resigned from these positions in October 2016.

151. On November 1, 2016, Rep. Donalds announced he was resigning as an MCA Board Member and stepping down as Vice President.

---

[10] An audio recording of the May 9, 2016 MCA Board Meeting captured Rep. Donalds suggesting Lichter resign for MCA to receive the construction loan arranged by Mathias with his family members as financial beneficiaries.

152.    On March 21, 2017, CCSB voted unanimously to renew MCA's charter (set to expire June 30, 2017).

153.    However, Fishbane, CCSB Members Stephanie Lucarelli and Erick Carter,[11] and the *Naples Daily News* tried to thwart MCA's renewal.

154.    Fishbane stalled the negotiation and approval of MCA's renewal Charter Agreement while *Naples Daily News* reporter Anika Hammerschlag started digging through public records to piece together negative stories about MCA.

155.    Among other things, Fishbane tried to add provisions to MCA's renewal Charter Agreement that were not in Florida's model Florida Charter Agreement[12] (several of which were specifically rejected by Florida's legislature), not mandated by MCA's charter renewal, and not in other Collier County charter school contracts;

---

[11] Lucarelli and Carter's School Board campaigns received substantial support from Save Our Public Schools, an anti-charter school PAC.

[12] Section 1002.33(7), *Florida Statutes* (2017), provides that:

> The sponsor and the governing board of the charter school shall use the standard charter contract pursuant to subsection (21), which shall incorporate the approved application and any addenda approved with the application. Any term or condition of a proposed charter contract that differs from the standard charter contract adopted by rule of the State Board of Education shall be presumed a limitation on charter school flexibility. The sponsor may not impose unreasonable rules or regulations that violate the intent of giving charter schools greater flexibility to meet educational goals.

Section 1002.33(7)(d) (2017) further provides: "A charter may be modified during its initial term or any renewal term upon the recommendation of the sponsor or the charter school's governing board and the approval of both parties to the agreement."

including a requirement that MCA have five Board members located in Collier County.

156.    MCA repeatedly requested to put its charter renewal contract on the May 2017 CCSB Agenda, but Fishbane delayed the vote until the June 2017 CCSB meeting, allowing more time for Hammerschlag and *Naples Daily News* to publicly attack MCA and its Governing Board.

157.    One Saturday in April 2017, Hammerschlag emailed then-MCA attorney Arnold and told him that MCA's charter agreement would not be one the May 2017 CCSB agenda as planned—demonstrating that Fishbane was working closely with Hammerschlag and feeding her inside information about MCA's renewal agreement.

158.    On June 12, 2017, ***the day before the CCSB Public Meeting to vote on MCA's renewal Charter Agreement***, the *Naples Daily News* published an article about MCA's May 9, 2016 Board Meeting (at which Rep. Donalds and Mathias sought to oust Lichter), including quotes from Rep. Donalds:



> Donalds, who left the Mason board when he was elected last year as a state legislator from Collier, said he can't explain Lichter's decision.
>
> "It's not the decision I would have made," said Donalds, whose wife, Erika, helped establish the school. "I made my point on that pretty clear."
>
> Just two of the six board members who served during the first term hold their position; a total of three members currently serve on the board.

> Donalds, who recently introduced a bill that would allow boards to meet in private, conceded Mason's minutes are, in general, "very thin."
>
> Donalds repeatedly pushed for the adoption of a Five-Year Strategic Plan for Mason that would increase the minimum number of board members from three to five by the 2015-16 school year and to nine by 2017, records show.
>
> The plan, which Donalds helped draft, would have also required school staff to participate in customer service training. The board, led by Lichter, voted against it.
>
> Donalds said he included this requirement because of what he called the Mason administration's "demonstrative tone" toward parents, citing specifically Lichter and David Hull, the school's principal.

159.    Hours prior to the *Naples Daily News* publishing this article, Hammerschlag emailed MCA's then-counsel, Arnold, and asked, "Why did Kelly reject the offer, especially considering it was at a far lower interest rate than the other loan offered at 14%?"  Arnold replied:

> Previously, Mathias demanded repayment of the loan. MCA's attorney reviewed the loan documents between MCA and Mathias and found no provision for the loans to be recalled unless the payments were not being made or other conditions which did not occur. The attorney advised Mr. Mathias of this fact, and he withdrew his demand letter. Mathias then tried another approach offering money at a lower interest rate if Lichter resigned. The Board did not want to do business with Mr. Mathias due to his improper demand for repayment and

the fact he resigned from the Board due to a previous conflict of interest. Mr. Mathias had a duty of trust to his clients as well as to the School. Knowing this to the be conflict, Mr. Mathias brokered deals with the School and his clients nevertheless. Moreover, an offer for the lending of money that will be paid back over a period of more than one year must be in writing otherwise it violates Florida law. As such, there was nothing for the board to vote upon. Ms. Lichter chose to continue on the Board and remains there for numerous reasons. She is the founder of the school named after her late father. The Board is by Florida Law the fiduciary for the School. The idea that someone would attempt to peddle influence over the school by using others money is offensive to the Board. The School is highly successful and will be able to obtain lower rate financing in the future when it receives its high performing charter status.

160.    Nevertheless, MCA's renewal Charter Agreement was finally approved at the CCSB June 13, 2017 meeting. However, Lichter publicly confronted Fishbane about the delay in approving MCA's agreement and his apparent collusion with the *Naples Daily News*.

### E.    The Enemies of MCA's Enemies Unite for a Common Goal

161.    As noted above, Florida HB7069 was introduced in March 2017 and approved by Florida's Governor in June 2017. Because of her relationships with Rep. Donalds and other political insiders, E. Donalds knew about the approval of the Schools of Hope program and the incredible financial opportunity it presented.

162.    In October 2017, Corcoran, Rep. Donalds, Rep. Manny Diaz, Jr. and Rep. Michael Bileca appeared together at a press conference[13] to promote Florida's "Hope Scholarship" program:

---

[13] https://www.youtube.com/watch?v=JjYRoTWVoTk





FULL: 10.11.2017 Speaker Corcoran and Rep. Donalds Press Conference

163.    On December 6, 2017, E. Donalds incorporated Optima Foundation, the stated goal of which is **"the successful launch of Hillsdale College BCSI classical academies and other schools of excellence across the state of Florida."**

164.    On December 7, 2017, E. Donalds incorporated Treasure Coast Classical Academy ("TCCA") (then-known as "Alpha Classical Academy, Inc."), a Hillsdale member school.

165.    E. Donalds submitted TCCA's Charter Application on January 31, 2018, which identified Hillsdale's Coykendall and Chuck Marshall as affiliated with the school:

Names, roles, and current employment of all persons on applicant group, i.e. anyone with a role in drafting the substantive content of this application or expected to have a significant role with the school, including any consultants or employees of an Education Service Provider. Add lines as necessary.

| Full Name | Current Job Title & Employer | Role with Proposed School |
|---|---|---|
| Shawn Frost | Business Consultant, MVP Strategy and Policy, LLC | Board of Directors |
| Erika Donalds | CFO/COO, DGHM & Board Member, CCPS | Board of Directors |
| Lynda Daniel | N/A | Board of Directors |
| Eric Coykendall | Associate Director, Barney Charter School Initiative, Hillsdale College | Advice and Support |
| Chuck Marshall | Compliance Officer, Mason Classical Academy | Consultant |
| Add Additional Members to Applicant Group (As Needed) | | Remove Row |

Projected Date of School Opening (Month/Year):  **August 2019**

166.    In January 2018, E. Donalds also proposed several Florida constitutional amendments, one of which (Amendment 8[14]) would have created 8-year term limits for school board members, enshrined Florida's statutory civics education graduation requirement in its Constitution, and paved the way for Florida's legislature to authorize and oversee charter schools outside the authority of local school boards.

167.    In early 2018, one of Baird's children withdrew from MCA.  At that time, Baird made numerous positive statements about MCA and its then-principal, David Hull.

---

[14] In September 2018, Florida's Supreme Court decided in a 4-3 decision that Amendment 8 should remain off the ballot in the November election.

42

168.    Around that same time, E. Donalds was discussing with friends pulling her children out of MCA and her animosity toward the school, and using her political connections to take action:



169.    Not long after, the Donalds' pulled their children out of MCA.

170.    On April 17, 2018, the Martin County School Board approved TCCA's charter application, marking the **first of the three schools** E. Donalds and Optima Foundation needed to start qualifying as a "Hope Operator."

171.    When some Martin County residents raised concerns over TCCA's affiliation with Hillsdale, E. Donalds made the following comments:[15]

> Ms. Donalds, who now holds a seat on the Collier County School Board, explained that Martin County parents recruited her for the local charter campaign for a Hillsdale classical school.
>
> "I learned that Martin County has very few public school choice options (none for elementary and middle outside of the school for autistic students), and has the second-highest percentage of students attending private school in the state (nearly 27 percent)," she said. "I believe in the classical model and want to see it offered as a free public school option in every community."
>
> Mr. Frost, who currently serves as the chairman of the Indian River County School Board and said his role in Martin County was strictly in a non-official capacity as a volunteer board member, echoed Ms. Donald's sentiments.

172.    In May 2018, Baird informed MCA that the rest of his children would not return for the upcoming school year, but asked that they be permitted to participate in MCA athletic programs—which was not possible and led to an argument

173.    In early June 2018, Baird filed a false and retaliatory complaint with FDOE alleging financial mismanagement and bullying by MCA's then-principal, David Hull,[16] also naming Lichter and Laura Miller as accomplices.  Unsurprisingly,

---

[15] https://www.hometownnewstc.com/news/parents-protest-approved-charter-school/article_b33b5475-5b69-58be-8bb6-32dcde39b24e.html
[16] FDOE determined that Baird's complaint was outside its jurisdictional purview and forwarded it to CCSB.

Baird went out of his way to exonerate E. Donalds and Rep. Donalds from any wrongdoing.

174.    Baird and E. Donalds started speaking with each other regularly around this time:



175.    Baird and Fishbane were also in constant communication, sending each other hundreds of emails and text messages over the course of a year.

176.    In consultation with E. Donalds, Baird also started encouraging parents of MCA students to advocate for the termination of MCA's charter and removal of MCA's Board.  Baird and E. Donalds also discussed trying to get an investigation into "the treatment of students at MCA" opened, but were told it would not go anywhere because "no amount of maltreatment will get us anywhere" and they would have to

show "actual harmful effects of abusive behavior... [such as]...depression, suicidal tendencies etc."

177.  E. Donalds and Baird also talked about getting the media to go after MCA and E. Donalds' lawyer counseling Baird about talking to the media:

> Would your attorney be able to advise me about speaking to the media? I'd be a lot more comfortable if I had legal counsel.  I'm especially worried that if nothing is found David will come after me with everything he's got.
>
> Good question. I'll find out

178.  On June 21, 2018, Baird emailed Sheryl Rogers for help ensuring that information he got from the Inspector General's Office would get into Adam Miller's hands at the FDOE, and Sheryl Rogers forwarded Baird's email to Miller.

179.  On July 10, 2018, E. Donalds emailed the same Adam Miller at FDOE regarding "Charter Revocations," asking for data on "forced charter closures":

| From: | Erika Donalds [███████@gmail.com] |
|---|---|
| Sent: | Tuesday, July 10, 2018 5:43 PM |
| To: | Miller, Adam |
| Subject: | Charter revocations |

Can you please send me the annual historical number of forced charter closures in FL for as far back as you have it?

Erika B. Donalds, CPA, CGMA
Cell: ████████

180.   E. Donalds was also in contact with the *Naples Daily News* about MCA, and on July 30, 2018, Annika Hammerschlag asked E. Donalds for Baird's phone number.   E. Donalds reached out to Baird, who was happy to speak with Hammerschlag.

181.   On August 8, 2018, Baird texted E. Donalds to ask whether Hillsdale's Kilgore wanted to talk about anything.   E. Donalds responded that Kilgore would want to talk to Baird directly and asked Baird for a "sharable copy" of the complaint he filed against MCA with FDOE—confirming that by this time E. Donalds was communicating directly with Hillsdale about MCA:



182.    On October 5, 2018, Hammerschlag and the *Naples Daily News* published

two negative articles about MCA based on information provided by Baird and

E. Donalds.

183.    The <u>first</u> October 5, 2018 article was posted at <u>3:31 p.m.</u> and was about

Baird's Complaint:



184.    After summarizing Baird's accusations, the first article discussed how

E. Donalds and Rep. Donalds "corroborated" Baird's allegations:

> Mason Classical is a public charter school co-founded by Collier County School
> Board members Kelly Lichter and Erika Donalds in 2012. Donalds and her
> husband, state Rep. Byron Donalds, a co-founder and former Mason board
> member, corroborated the allegations made in the complaint. The couple no longer
> are involved in the school.

185.    The <u>second</u> October 5, 2018 article was posted at <u>3:41 p.m.</u> and was

about proposed legislation Rep. Donalds was "mulling" which "he said is still in the

'conceptual' stage, would require charter schools to publish student and teacher

turnover rates 'to give parents the additional information they need to make the best

choice for their child' and would mandate a minimum of five board members."

Rep. Donalds and E. Donalds were both interviewed for this article and criticized MCA:

**EDUCATION**

## State Rep. Donalds mulls legislation to increase charter schools' accountability

 **Annika Hammerschlag**
Naples

Published 3:41 p.m. ET Oct. 5, 2018 | Updated 4:43 a.m. ET Oct. 7, 2018

The Donaldses said many of the issues they encountered at Mason could have been avoided by having oversight from more board members, such as a required minimum of five board members. The school now has just three.

Erika Donalds described Mason and other charter schools that have had difficulties as "bad apples."

To assume she and Byron support charter schools "no matter what" is a misconception, she said.

Charters that perform poorly, fail to serve all students or break the law should not be allowed to continue operating, she said.

"That doesn't mean that charters don't have a place in our education system," she said. "It means we need to clean up the ones that are not following the law."

186.    The October 5, 2018 *Naples Daily News* articles were the first time MCA heard about CCSB being involved in investigating Baird's baseless complaint.

187.    When E. Donalds and Rep. Donalds "corroborated" Baird's baseless allegations, E. Donalds was still a CCSB Board Member and Rep. Donalds was a member of the Florida House, serving as Vice Chair of the PreK-12 Appropriations Subcommittee, and on the Education Committee and PreK-12 Quality Subcommittee.

188.    The second October 5th article clearly demonstrates how Rep. Donalds' position as a member of the Florida House was being used in the ongoing effort against MCA.

189.    On October 9, 2018, E. Donalds distributed a letter attacking MCA and Lichter, while simultaneously promoting herself and Optima Foundation:

Erika B. Donalds, CPA, CGMA

October 9, 2018

Friends and Colleagues,

Recently, the Naples Daily News published a story about leadership issues at Mason Classical Academy (MCA), the Hillsdale College charter school whose advisory board I volunteered on during the school's founding from 2012 to 2014. My children attended MCA from its opening in 2014 until last year. My husband Byron served on the governing board from 2012 to 2016. In 2014, I stepped away from my volunteer role at MCA to run for the Collier County School Board, to which I was elected and have since served. In 2017, I started working with Hillsdale College to help open other classical charter schools across the state. Byron and I care deeply about the success of the Hillsdale classical model, our education community in Collier County (and across Florida) and, in fact, MCA. This story and the situations surrounding it have been painful and personal for Byron and me.

The leadership and governance issues cited in the article occurred, and continued, in spite of our repeated objections and Byron's efforts as a minority member of the founding board. MCA's Principal is at the center of the concerns brought forward by the former MCA board treasurer as well as dozens of parents and teachers. The issues range from lack of appropriate financial controls to unacceptable mistreatment of teachers, parents and students. As an MCA board member, Byron voted against this Principal's contract after the first year of operations revealed major leadership concerns and lack of sound judgement. Byron pushed for more transparency and accountability for excessive student turnover and parent complaints. He insisted on expanding the (now three-person) board to bring in a broader range of expertise for improved board governance. Byron and other former board members tried to implement a financial oversight committee, a long-term strategic plan, and a more comprehensive principal evaluation system. All of these efforts were blocked by the board chair and board secretary, who many times made up either a majority or a filibuster when the board stood at just three and four members, respectively.

My experience with MCA was a primary factor in the establishment of the Optima Foundation, a non-profit which provides financial, management, governance, and operational support to public charter schools. As a vocal proponent for the expansion of school choice, I hate to see poor decision-making by a few bad actors damage our movement. As a finance and compliance professional, I know the level of diligence and expertise required to overcome scrutiny that comes with operating a charter school. As a mom, I want to ensure that other children and families are never mistreated at their school, which should be a haven.

Being a part of a charter school is not for the faint of heart, and unfortunately it requires us to answer to every negative news story about other charter schools – related and unrelated. We know that in the end, we are helping children succeed in school and in life. We are changing families for generations, and changing our entire state for the better. It is well worth the effort.

Feel free to reach out with any questions or concerns on my cell at ███████ or by email Erika@OptimaEd.org.

Sincerely,

*Erika Donalds*

Erika Donalds

190.    Also on October 9, 2018, Baird and E. Donalds texted about the progress of the "*phase[s]*" of their "*plan*" against MCA:

I totally understand the struggle.

You're welcome.

Phase 1 (or maybe this was 2 or 3?!) complete. Now we hurry up and wait

I'll stay on it on my end

Thank you

Thursday, Oct 11, 2018 • 11:12 AM

Erika, I'm glad our paths have crossed.

191.    On October 29, 2018, Hillsdale's Kilgore and Harner discussed a meeting they had scheduled with Fishbane in Naples on November 13, 2018, while noting that "*Only Erika [Donalds] knows we are meeting with him*":



192.    Around this same time, Baird admitted on Facebook that E. Donalds was secretly "working very hard on" the "*initiative*" against MCA and its Board:



193.    On November 8, 2018, Baird made a direct plea on Facebook for parents to contact Fishbane about "maltreatment and abuse at the hands of the MCA Board" and "allegations [that] could result in felony charges":



194. In the same post, Baird revealed the falsity of allegations in his FDOE complaint by admitting that he "*had access*" to "*Mason's Google Drive with all their financial information in it…*"



Joe Baird Lee Dixon - Of course I had access - I am not aware that the expense reports were stored on that Google Drive. I had to request scanned images that were emailed to me, and the scanning job was so sloppy that I couldn't tell what I was looking at. I could post copies of these sloppy

195. On November 12, 2018, Hillsdale's Harner and Kilgore met with Lichter in Naples. Lichter asked them to visit MCA the following day, but they declined due to prior "donor business" commitments.

196. Contrary to this lie, Kilgore and Harner met with Fishbane at CCPS headquarters the following day. Kilgore later admitted in an internal Hillsdale email

that he was concerned about the possibility of Lichter discovering their secret meeting

with Fishbane:

> Also, a minor additional thing he mentioned: Kelly submitted a public records request for a list of visitors to CCPS offices during the month of November 2018, which was the time Mike and I visited there. We went to meet Jon Fishbane because of the article that ran in the Naples Daily News about an investigation that was referred from the DOE to CCPS based upon the Baird complaint. This was when we made our initial inquiry to see if there really was an investigation and how it would proceed.

197.    On November 16, 2018, Harner emailed Kilgore about how to skirt

Florida's Sunshine and Public Records laws to  keep Hillsdale's activities secret:

> **From:**    Mike Harner
> **To:**    Kathleen O"Toole
> **Subject:**    FW: MCA Notes/Thoughts
> **Date:**    Monday, November 25, 2019 9:41:21 AM
> **Attachments:**    Mason Classical Academy assist visit notes.docx
>
> My after action report.
>
> MHH
>
> ---
>
> **From:** Mike Harner
> **Sent:** Friday, November 16, 2018 10:41 AM
> **To:** Phillip Kilgore <pkilgore@hillsdale.edu>
> **Subject:** MCA Notes/Thoughts
>
> My 20,000 foot review of our meetings. Had a good talk with a Florida sunshine law expert yesterday. Anything we send the board is public record. We either have to be very careful in crafting those recommendations, or deliver the unadulterated critique to each board member individually either in person or telephonically. I will speak with Dr. Arnn about this. If Kelly inquires, let her know we will give her feedback on Tuesday.
>
> MHH

198.    On December 6, 2018, Harner emailed Lichter (copied to Kilgore)

several actions to consider "to promote and ensure good governance at MCA":

Mike Harner <mharner@hillsdale.edu>                                  Thu, Dec 6, 2018 at 8:15 AM
To: Kelly Lichter <klichter@masonacademy.com>
Cc: Phillip Kilgore <pkilgore@hillsdale.edu>

Kelly.

I hope this finds you well. It has been three weeks now since Phil Kilgore and I met with you in an effort to identify
specific areas where board action might help alleviate some of the contention MCA is currently experiencing. After
much discussion and a thorough review of Florida law and statute we believe you should consider the following
actions.

1. Expand the MCA board from 3 to no fewer than five members.
2. Conduct conflict of interest reviews of all board members as they pertain to the board's oversight of MCA
   employees.
3. Conduct Board training on Florida Sunshine statutes.
4. Retain a consultant to conduct a financial processes risk assessment.
5. Review, update, and amend, as necessary, board policies concerning the handling of inquiries, concerns, and
   complaints.
6. Adopt a comprehensive social media policy.
7. Adopt a board Code of Conduct.

It is our belief that the implementation of the above will do much to promote and ensure good governance at MCA. We
stand ready to assist you in your efforts to that end.

Best regards,

Mike Harner

Chief of Staff

Hillsdale. College

199.    Of course, Hillsdale did not tell MCA or its Board anything about

Fishbane's ongoing "investigation" or raise any concerns over whether it should be or

how it was being conducted.

200.    In December 2018, Governor-elect DeSantis announced his transition

team advisors, which included E. Donalds (appointed to serve on Gov. DeSantis's

Transition Advisory Committee for Education and Workforce Development) and Keith Flaugh, CEO and co-founder of Florida Citizens Alliance.

201.  Florida Citizens Alliance ("FCLA") is an organization that champions educational reform through legislative action, community activism, and alternative education resources.  It lists its goals and achievements as:

**What We Do**

Through legislative action, community outreach, scholarships, and education alternatives, Florida Citizens Alliance provides solutions for improving K-12 education in Florida.

**What motivates us**

We are motivated every time we see a child and their parents take advantage of their education. We strive to educate parents on their options so that they feel empowered to make the best decision for their family.

Our public education system is failing America's students academically, civically and morally. Florida children are being indoctrinated in a public school system that undermines their individual rights and destroys our nation's founding principles and family values.



**Our Achievements**

**Replaced Common Core**

Florida Citizens Alliance played an influential role in getting rid of the failed Common Core Standards in Florida!

**New Civics Standards**

FLCA successfully influenced Gov. DeSantis' statewide civics announcement that all high school students must take the same civics exam that new immigrants must pass.

**Hope Scholarship**

FLCA implemented an awareness program for the Hope Scholarship. Find out if you are eligible for the Hope Scholarship!

202.   FCLA's CEO, Keith Flaugh ("Flaugh"), is actively involved in Florida politics and educational issues.

203.   In January 2019, E. Donalds and Arnn both attended and spoke at an event sponsored by Florida Citizens Alliance in Naples:



 

   

204.    On January 19, 2019, Kilgore emailed Arnn about the "confidential report of investigation" being prepared by Fishbane (5 months before it would be issued), commenting specifically about how the report was "***being designed***":

On Jan 19, 2019, at 10:58 PM, Phillip Kilgore <pkilgore@hillsdale.edu> wrote:

Sir,

Things have been relatively quiet at Naples over the past two or three months, meaning the concerns about the school being voiced to us from the parent and employee community have subsided, at least for now. One of the three board members resigned in December, and the remaining two (Kelly Lichter and Laura Miller) have identified a replacement. We are also vetting people identified by John Cervini in Collier County who could be additional board members. We await the confidential report of investigation by the school's authorizer, Collier County School District, on the complaints on the principal's pattern of behavior and what remedy/consequences will issue from that report. We have made no statements that we intend to break relations with the school. We (Mike Harner and I), following our visit to Naples in early November, sent a message to the board with advice on actions it should take to correct deficiencies and mitigate risks. Mike advised me that he plans to follow up with the board on Monday to inquire if it has acted on any of those recommendations.

I think this family would likely find the school experience for their kindergarten child to be a good one regarding the teacher and the classroom instruction and culture. It is my hope that some future rehabilitative pressures on the principal would prevent any problem from developing between him and the parents. The District's report is being designed to effect some form of correction on that score.

Phil

205.    Hillsdale's clandestine meeting with Fishbane and this email demonstrate that it and Arnn were working hand-in-hand with E. Donalds and Fishbane, contrary to MCA's best interests.

206.   Around this time, Bolduc joined MCA's Board member and was appointed Treasurer.

207.   On February 7, 2019, E. Donalds had discussions with Hillsdale about the ongoing conspiracy against MCA and its Board, including Fishbane's impending report, which he planned on sharing with E. Donalds and Hillsdale and E. Donalds planned on sharing with the media:

> Mason Update?
> -John Fishbane at Naples School District says he's writing his report, is only a few weeks from making it public. John is planning to share it with Erika, Hillsdale. Erika is planning to share it with the media so that it gets out on her terms.
>     Three sections:
>         1.   David Hull, his actions
>         2.   ESE, infractions related to ESE
>         3.   Board, infractions of policy and statute
> -Chuck is still consulting for Mason. They're training his replacement. Chuck doesn't know that Mason is under investigation. Shawn Arnold has made several comments that suggest that he doesn't know, either.

208.   In early March 2019, Baird and E. Donalds texted about their ongoing collaboration with Fishbane on the MCA investigation and the timing of Fishbane's anticipated report:



209.    On March 18, 2019, Hillsdale's Norton, Harner, Arnn, and Kilgore held an operations meeting, during which they discussed the report Fishbane was writing and Arnn's idea to get Rep. Mike Bileca involved:



210.    Rep. Bileca[17] has connections with Hillsdale and Arnn dating back to

2018:

From: Michael Bileca <mbileca@bilecafoundation.org>
Date: Thursday, February 22, 2018 at 9:43 AM
To: Victoria Bergen <vbergen@hillsdale.edu>, "Larry P. Arnn" < >
Subject: <no subject>

President Arnn,

I have to cancel my trip to Hillsdale this week. In the Florida Legislature we are dealing with some tough issues with respect to the Parkland shooting.  We are debuting legislation tomorrow and expect a strong media response.  Its been a crazy time and if you were witness to the hysteria from the students that were instigated by the activist adults, you would be more convinced than ever that are current education system is failing our Nation.  It has  been terrifyingly sad to witness the media and leftists agenda collusion in using students as a shield and prop.

I very much would like to visit though.  We talked last year at the beginning of Legislative session and we were able to accomplish our ambitious goals we set forth to further parental choice by passing some of the most sweeping Education legislation in the past decade.

Of immediate impact was the sharing of the capital outlay with charters - I believe Mason alone received an additional 1.4 million this year for buildings and facilities. There were many other areas we were able to benefit charters as well as create easier replication for high performing schools and systems.  I think there is an opportunity for the Florida Hillsdale schools to benefit from this to allow for easier expansion.

We also revamped of our civics education requirements for high school graduation and have standards in place close to Core Knowledge standards as well as we now require a civics class (with specific knowledge standards) to be required for state university graduation.

I think there are meaningful ways for Hillsdale to be more involved in Florida via the Charter initiative as well as our civics education platform.

Our legislative session ends beginning of March, would welcome the opportunity to meet after at Hillsdale or if you find yourself in Florida, would love to host you at our school in Miami.  I could probably have Senator Rubio (who's children go to our school) join in as well.

---

[17] Rep. Bileca served in the Florida House of Representatives from 2010-2018, where he maintained a focus on education.  During his last term, her served as Chairman of the Education Committee.  Bileca is now the Executive Director of the Dennis Bileca Institute for Character and Excellence, a foundation that primarily funds schools focusing on virtue-based education with an emphasis on a classical liberal arts curriculum.  In 2021, Gov. DeSantis appointed Bileca to the Miami Dade College Board of Trustees.  Bileca has also been the CEO of True North Classical Academy in Miami since 2020.

211.   On March 24, 2019, Baird spoke with Fishbane about the status of the report about MCA:



212.   On April 8, 2019, Baird texted E. Donalds after speaking with Fishbane again about his report**:**



213.   At an April 18, 2019 MCA Board Meeting, now aware that CCSB was supposedly investigating Baird's complaint, Lichter advised that she would compose a complaint to the FDOE regarding CCSB's improper investigation of MCA:

**Good of the Order**

Kelly Lichter will compose a complaint to the DOE regarding the negligence and abusive nature of the supposed "CCPS Investigation" of MCA, being unfairly conducted outside state mandated guidelines. She will send a draft of the letter for board review prior to submitting the official complaint.

Laura Miller Mlinarich will compose a letter to MCA parents explaining the need for support at the upcoming CCPS board meeting and will send a draft for board review prior to sending it to our community.

214.   During this same time frame, the MCA Board decided Bolduc should explore captivated insurance programs for schools which may benefit MCA.

215.   On May 7, 2019, Fishbane confirmed during a telephone conference with CCSB's Director of Budgets, Siobhan Fox, that MCA's financials "have been appropriate and timely submitted":



Telephone Conference with S. Fox – May 7, 2019

1. Discussed with Ms. Fox the financial documents we had received from MCA (from Mr. Arnold, Ms. Turner, etc.).

2. Discussed with her the financials that MCA submits to the District monthly and/or otherwise and whether they conform from an auditing and statutory standpoint from her perspective in addressing matters of this sort including other charter schools.

3. She advised that the Finance Department monitors closely charter school financials and related submissions.

4. She further advised, based on my questions, that MCA's financials have been appropriate, and timely submitted for District purposes.

5. She mentioned she would also review the matter with Mr. Spencer.

216.   At a May 7, 2019 CCSB meeting, Bolduc spoke publicly as an MCA parent to defend MCA and expressed concern over the propriety of CCSB's

investigation and what appeared to be an improper effort to seize control of MCA. This put Bolduc in the conspiracy's crosshairs with Lichter.

217.    On May 8, 2019, Fishbane confirmed during a telephone conference with CCSB's Assistant Superintendent of Financial Services, Bob Spencer, that MCA's "financials have been timely, and conform to audit and statutory criteria":



**Telephone Conference with R. Spencer – May 8, 2019**

1. Spoke with Mr. Spencer about my conversation with Ms. Fox. She had apprised him of the discussion we had and the financial issues involved.

2. He confirmed that he was aware of no impropriety in MCA's submissions, that the financials have been timely, and conform to audit and statutory criteria. In sum, he noted that the financial documents and information that his team have received and reviewed from MCA have been acceptable.

218.    Of course, Fishbane intentionally excluded the exculpatory evidence he learned from Fox and Spencer from his report.

219.    On May 7, 2019, the Duval County School Board approved Jacksonville Classical Academy's charter application, which marked E. Donalds's and Optima Foundation's **second charter school** in Florida.

220.    At a May 16, 2019 meeting, the MCA Board voted unanimously to submit a complaint to FDOE about CCSB's investigation of MCA.

221.    Lichter submitted MCA's Complaint on May 20, 2019, a copy of which is attached hereto as **Exhibit D**.

222.    During an Operations meeting on May 20, 2019, Hillsdale leadership discussed speeding up "**severing the relationship with**" MCA:

> - Can we speed up severing the relationship with Mason? Phil will try to get Mike to send a follow up letter.

### F.    The Rush to Terminate MCA's Charter, Seize its Assets and Reconstitute its Board without Authority or Due Process

223.    On May 30, 2019, Fishbane completed his investigative report concerning MCA (the "Investigative Report"), which he had no authority to be preparing or releasing.

224.    On the afternoon of June 3, 2019—**before it was publicly released**—Fishbane delivered a copy of the report to Hillsdale, which Coykendall circulated to Hillsdale's "PR Team":

| From: | Eric Coykendall |
|---|---|
| To: | Emily Davis; Ashton Waite; Joe DiBenedetto; Matt Witkowski; Clare Liening; Morgan Greenberg |
| Subject: | Fwd: FW: Investigative Report |
| Date: | Monday, June 3, 2019 4:29:40 PM |
| Attachments: | image003.png |
| | InvestigativeReport.1.pdf |

PR Team,

We've been waiting for the hammer to fall on Mason Classical Academy for a long time....and maybe it's finally falling. Attached is part one of the Collier County School District's official report on the school. The second part will be attached in my next email.

This report will be announced at the Collier County SB meeting tonight—and the school district's attorney will provide the board with the high-level analysis. There will then be a 10 day period before the report is a public document. I assume that the press will be present for the SB meeting.

Depending upon what is said at the school board meeting tonight, we may need a holding statement as early as tomorrow. We will certainly need to have a statement prepared by the time the report becomes public.

I don't expect us to all read the report before tomorrow afternoon. What we should do, I think, is to develop a basic holding statement. Here's my first take:

> Hillsdale College is concerned about the details of the report, and we will take some time to review it before determining our course of action. We hope to work with Mason Classical Academy and the Collier County School District to ensure that the best interests of the students and their families are served.

I appreciate all of your timely input.

Regards,
Eric

**Eric Coykendall** | Associate Director, BCSI
**Hillsdale College | Barney Charter School Initiative**

225.    MCA first learned about Fishbane's Investigative Report on the night of June 3, 2019, during CCSB's public meeting, when Fishbane spoke about the report and recommended that the MCA Board resign and that then-principal David Hull undergo additional training or resign.

226.    Notably, Fishbane was asked during the meeting if CCSB had the authority to remove charter school board members and he admitted that it did not.

227.    Fishbane's supposed "investigation" of MCA commenced shortly after Baird's June 2018 complaint and culminated in a 61-page hit piece, blessed by Hillsdale, amounting to a full-scale attack on MCA and its Board that was completely silent on the original purpose of the investigation and lacking any evidence substantiating Baird's allegations.

228.    Fishbane's supposed "investigation" was a sham.  Aside from briefly speaking with Principal David Hull, Fishbane did not interview any MCA staff or Board Members or obtain sworn statements from any of the accusers.  In fact, Fishbane's investigation was completely devoid of basic due process requirements and resulted in a recommendation to force the removal of MCA's Board, which Fishbane knew CCSB had no authority to do.

229.    Incredibly, Fishbane went out of his way in the Investigative Report to defame MCA and its Board, never disclosing Fishbane's secret meetings and communications with Hillsdale, E. Donalds, Mathias, and Baird, nor his collusion with all of them to oust MCA's leadership and try to take over the school for E. Donalds' and Hillsdale's benefit.

230.    Among other things, the Investigative Report unfairly and prejudicially took sides with Hillsdale, advocating for its interests and the interests of E. Donalds and Optima Foundation, while falsely accusing Plaintiffs of violating federal laws and the U.S. Constitutional rights of others.

231.    Not long after the Investigative Report was published, MCA retained the law firm of Coleman, Hazard, Taylor, Klaus, Doupe & Diaz, P.A. to independently audit and analyze Fishbane's allegations.

232.    In what is clearly an orchestrated effort to capitalize on Fishbane's Investigative Report, on June 4, 2019 (***the day after*** Fishbane's Investigative Report was publicly revealed), E. Donalds and Optima Foundation launched their website and announced their "grand opening" on social media:





233.   On June 4, 2019, Hillsdale's Kilgore spoke with E. Donalds about the anticipated fallout from Fishbane's Investigative Report.   The following morning, Kilgore sent an email to VanOrman, Harner, Whalen, and O'Toole discussing Hillsdale's plan to work with Fishbane, E. Donalds, FDOE, and CCSB to force out MCA's Board and take over control of the school, while also noting Rep. Donald's position as a "sitting member of the Florida House of Representatives":

**From:** Phillip Kilgore
**Sent:** Wednesday, June 5, 2019 9:50:39 AM
**To:** Chris VanOrman; Mike Harner; David Whalen; Kathleen O'Toole
(kathleenarnn̲ ▮▮▮▮▮▮▮▮)
**Subject:** RE: Actions re: Mason Classical Academy

An update from last night, speaking with Erika Donalds, one of our key contacts in all things FL charters and former member of the Collier County School Board (husband is a former member of Mason's School Board and is a sitting member of the Florida House of Representatives):

The FL DOE is quite energized by this report and is going to communicate to the Collier County School Board that it thinks that CCSB should have already initiated the charter revocation process. The FL DOE asked what Hillsdale is going to do, stating that a move of discipline on our part will strengthen the hand of both the CCSB and heighten the gravity of the situation.

Here is a possible sequence of events:

1.  Hillsdale sends the letter to the MCA school board.

2.  Board capitulates and we help with corrective action (not likely)

3.  If not #2 above, then more forceful action by governmental entities, either

    a.  FL DOE or Governor's office removes current board members, with new appointments being made, (501c3 is retained) or

    b.  CCSB takes over the charter, becoming the board for a time until a new one is appointed (501c3 is unnecessary because it is a district charter until that changes).

In any event, we can re-engage with a new board if the current board doesn't meet our 30 June deadline and we sever relations and then watch while the state takes its actions, waiting to step back in.

It seems the next step is to send the letter if that is the decision of all the HC executive players.

Phil

234.    Later in the day on June 5, 2019, Kilgore spoke with Adam Miller in FDOE's Office of Independent Education and Parental Choice about the plan to revoke MCA's charter and efforts Hillsdale could take to "strengthen" the CCSB's hand—which he laid out in a follow-up email to Harner, O'Toole, Whalen, and VanOrman:



| | |
|---|---|
| **From:** | Phillip Kilgore |
| **To:** | Kathleen O'Toole; David Whalen |
| **Cc:** | Chris VanOrman; Mike Harner |
| **Subject:** | RE: Actions re: Mason Classical Academy |
| **Date:** | Wednesday, June 5, 2019 2:02:28 PM |

I just spoke with Adam Miller, Executive Director, Office of Independent Education and Parental Choice at the FL DOE. He confirmed the comments Erika provided to me, namely that the he thinks CCSD should have already moved on a charter revocation action. He thinks the leadership (board and principal) must change and if it doesn't the school must close. It can't continue to be run by the current team. He is coordinating with the FL DOE General Counsel but thinks the private nature of a 501c3 board protects them from forcible member ejection by a state entity. Confirmation yet to come. He thinks the only remedy available if the current board digs in its heels is to revoke the charter. I mentioned to him that perhaps CCSD could immediately authorize a district-managed charter following the revocation of the current one. Afterward, we could implement a rational plan and schedule to form a new 501c3 board and return to normal operations. He thought that was a good idea. He asked to be notified if/when we send our letter. He stated that the dispatch of our letter was a good idea because it will strength CCSD's hand to effect reforms.

Phil

235.    As Adam Miller notes in this email, "**the private nature of [MCA's] Board protects them from forcible member ejection by a state entity**."

236.    On June 5, 2019, E. Donalds also spoke to FDOE—presumably Adam Miller—about the conspirators' plan for MCA:



237.   It is clear from Hillsdale College's, Fishbane's, E. Donalds', Mathias's, and Baird's communications during this time period that they all agreed and conspired with full knowledge of and cooperation with FDOE to terminate MCA's Charter and oust its Governing Board.

238.   In fact, consistent with the planning outlined in Kilgore's June 5, 2019 emails, Hillsdale sent a letter to the MCA Board on June 6, 2019, effectively terminating the December 2017 Agreement unless MCA ceded to Fishbane's baseless demands:



239.    Around this time, Durst joined in the conspiracy and started working with E. Donalds and Mathias and regularly communicating with Fishbane by email and phone about MCA.

240.    On June 6, 2019, Hillsdale and E. Donalds spoke to discuss how FDOE responded to the Investigative Report and that FDOE was going to apply pressure to take action against MCA, as well as the "**transition plan**" for taking over MCA and ousting its Board:

- Mason report is now a public record—Erika received it this morning via a public records request.
  - There was no public comment on John Fishbane's report at the meeting.
  - Kelly sent some nasty texts to Erika when she received it.
  - Erika hasn't gotten any emails from school administration (she usually gets a forward from parents), so presumably nothing has been sent out.
  - DoE is upset that the district has gone soft on the school. DoE thinks that district shouldn't have said in report that they don't want to close the school (this was important leverage to use against the school). The department will be putting pressure on the district to do something.
    - The district school board members haven't really understood their role or power here—they responded to the report with exasperation and felt like they couldn't do anything. Erika thinks they
  - Is there any way to let Kelly save face? Erika thinks maybe if we chose a board, Kelly would go for it.
    - How to do it? Start calling alumni and major donors, get them on a conference call.
    - Work with some parents. Erika knows a few—one is a CPA who isn't controversial, but has been there since the beginning and have been hoping and praying for a change; he would be a good person—Derek Aires.
    - Jason Lane—he was on the board before. He's stayed in relatively good graces, didn't leave with drama, left because he said he didn't have time.
    - Holly Miller—an OB/GYN who was previously on the board of the Christian classical school, has her kids at Mason.
  - Business manager, Susan Turner, reached out to Erika looking for a position elsewhere. She'll leave if there's not a change.
  - Principal? John Brunner. He was at the school in the beginning as a teacher, came from classical private school. He's good for academics, terrible from a business perspective. He
    - He's now teaching in the district at a high risk school.
    - Potentially bring him in as interim, conduct a formal job search during the school year.
  - We should put together a transition plan, propose it to the Mason board and the district. Kelly may not go for it, but this is the only plan that she might agree to. District is more likely to go for it. Parents would like it.
  - What about teachers who are part of the old guard?
    - Erika: loyalties change very quickly when power changes. We lose Gena Smith. Joe Whitehead gets fired. A few teachers might leave, but we might also get some back.

241.   In a call on June 6, 2019, E. Donalds told Hillsdale that MCA's Business

Manager, Susan Turner, "reached out to Erika looking for position elsewhere."

242.   E. Donalds also texted Baird on June 6, 2019 about Hillsdale forcing the

MCA Board to resign and having a "**reconstituted board picked out**":



243.   E. Donalds and Mathias were busy identifying new potential MCA

Board Member candidates to send to Hillsdale for approval:



244.   On June 11, 2019, E. Donalds and Coykendall texted about getting

Coykendall access to an MCA Facebook page and MCA parent email list:



245. On June 14, 2019, mentally and emotionally exhausted from the onslaught of harassment and false accusations orchestrated by Defendants, Principal

Hull made the difficult decision to resign and sent a letter notifying the MCA Community of his decision:



Dear MCA Community,

This letter serves to inform you of my resignation from Mason Classical Academy.

This is by no means an admission of wrongdoing. Some faulty paperwork over a confusing tie-teacher-salary-to-state-tests law is not something anyone should resign over. Neither is being accused of violating privacy law by sharing disciplinary and academic information with a student's very own teachers. Other accusations each have valid, logical explanations as well. The recent activity on the MCA Community

Facebook page demonstrates perfectly why there have been some negative interactions between parents and me in the past. Like it or not, if certain, extremely difficult decisions were not made, and certain, very challenging parents were not told 'no' over these past five years, MCA would not be what it is today. The underlying premise behind almost all the negativity surrounding MCA remains: because of educational privacy law, only one side of a story gets told; and social media perpetuates a lack of truth, trust, and civility.

Interestingly, one of the main leaders of those wanting to see new leadership referenced the classic work Animal Farm. His post seemed to imply that the MCA leadership is tyrannical. However, as any 8th grade MCA Paladin can tell you, he clearly missed the point of the novel and confused the characters. In the novel, farm animals rose up in rebellion because they were unhappy with the farmer. One of the leaders gathered them all for a meeting in the big barn to discuss their oppression by the farm leadership. Sound familiar? Some of the more vocal animals took charge, began propagandizing others, and eventually became the very thing they despised. "All animals are equal, but some are more equal than others," does not describe the leaders of the school; it describes the leaders of the rebellion. As a parent of four current MCA students and founding principal of one of the finest educational establishments in the state of Florida, I pray dearly that the school does not ultimately end up like the book.

246.    Of course, Defendants immediately rejoiced over his development, with

E. Donalds texting Hillsdale's Coykendall that **"Step 1" of their plan** had been

accomplished



247.    On June 14, 2019, Mathias emailed Fishbane about MCA and disclosed

that "*[s]ince 2015, I've been trying to find ways to reconstitute MCA Board of Directors*…":



Mr. Fishbane:

My name is M███ M██████...a 27 year resident of Collier County. In regard to "education" in our community, I've been involved with Junior Achievement as a guest "instructor" in 4th, 8th and 12 grades and The Education Foundation (now Champions for Learning) as a former Board Member, a multi-year Chair of the Take Stock in Children selection committee and a "Take Stock" mentor to 2 different students over the years.

1

I'm also a former Board member of Mason Classical Academy, former Finance Committee Chair (when we had one) and a very proud parent of a ██████ heading into ██ grade this fall.

I'm hoping we can have a meaningful discussion about what "hypothetical" options we may have in locating our children in schools...given several different hypothetical outcomes. And, I also want to explore any POSSIBLE pathways to resolution with minimal disruption.

Full disclosure: Since 2015, I've been trying to find ways to reconstitute MCA Board of Directors, create a more appropriate board infrastructure and significantly improve the "Corporate Governance" of this body. I attach a "5-Year Strategic Plan" for MCA which, along with 10 other parents, we developed in 2015 and presented to the Board at a "workshop". When the conversation about "Board Tenure" began, one Board member slammed the entire document and refused to continue any further discussion about the concept of a strategic plan. I only attach it in an effort to clearly express the seriousness I have around proper Board Governance, recognizing ALL constituencies for a Charter School Board: the students, student parents, teacher, administration, the District, the State of Florida and, in the case, Hillsdale College. The Board must maintain open and positive relationships with each of these constituents...even if they are at odds from time to time.

I had e-mailed Lisa Morse (a friend of mine) earlier this week, requesting a conversation with both you and Ms. Patton...but I recognize ████████████████████.. ██████████ ████████. Not wanting to wait for another week to have a conversation, I thought I would reach out to you directly and humbly request a conversation.

248.    On June 14, 2019, Baird and Durst openly discussed on Facebook the plan to keep MCA open "**under new leadership**" and the "**takeover of a cancelled charter school**":



249.  It is clear from this Facebook exchange that Olivia Durst's comment about what a "parent" told her about a conversation with Adam Miller is a reference to E. Donalds.

250.  Later in the same Facebook conversation, Baird revealed more about the nefarious conspiracy taking place:



251.   On June 15, 2019, E. Donalds and Mathias texted again about Hillsdale's "plan" concerning MCA:



252.   On June 17, 2019, Hillsdale sent another letter to the MCA Board (copied to Fishbane and Adam Miller at FDOE), confirming that its June 6, 2019 letter constituted 60-day notice to terminate its agreement with MCA:

> Without confidence in a school's governance, the College cannot sustain a fruitful partnership. In the June 6, 2019 letter to the MCA Board, the College again made this point and advised the Board to act on the Investigative Report's recommendations by June 30, 2019. The resignation of Mr. Hull is an important first step in this process, and we remain hopeful that the rest of the recommendations will be followed. Failing that, the Board has effectively severed its relationship with Hillsdale College and BCSI.
>
> We are in mutual understanding with regard to the 60 days' notice required to terminate the relationship between Hillsdale College and MCA, and will uphold this agreement. For the purposes of our contractual obligations, the MCA board should regard the June 6, 2019 correspondence from Hillsdale College as sufficient notice to begin the 60-day termination period. If the MCA board does

> ---
> hillsdale.edu          33 East College Street, Hillsdale, MI 49242          (517) 437-7341

> Page 2
> Board of Mason Classical Academy
> June 17, 2019
>
> not make the appropriate changes by June 30, 2019, then our relationship will formally terminate on August 5, 2019.
>
> In many of its essential aspects—students, teachers, staff members, and families—we believe that MCA is a good school. We firmly believe that the identification of a new principal and an entirely new set of board members is the best path forward for MCA. Hillsdale College hopes to have the opportunity to assist MCA in the recruitment of new leadership and to continue in support of the good work of its teachers and students.
>
> Sincerely,
>
> Dr. Christopher A. Van Orman
> Provost Hillsdale College
>
> CAV/cfb
> cc: Jon Fishbane, fishbj@collierschools.com
>      Adam Miller, Adam.Miller@fldoe.org
> encl: June 11, 2019 correspondence from Mason Classical Academy Board

253.   In a clear sign of coordination, *just two hours* after Hillsdale emailed its June 17th letter to MCA's Board—which was *only* copied to Fishbane and Miller—Michelle Caswell emailed Bolduc regarding "just receiv[ing]" a copy of Hillsdale's above letter.

254.   Even more astounding, on June 17, 2019, Coykendall also texted E. Donalds to make sure Hillsdale's letter "**hit the new parent FB** [Facebook] **Group**":



255.   On June 19, 2019, Bolduc sent an email to the MCA community about his public comments at the May 7, 2019 CCSB public meeting.  E. Donalds quickly forwarded Bolduc's email to Hillsdale and it was circulated internally.  O'Toole then acknowledged that Kilgore was "quick to turn on principals" and Hillsdale's lack of involvement with MCA:

| | |
|---|---|
| From: | Kathleen O'Toole |
| To: | gw_lingth |
| Subject: | Fwd: Message From Mr. Bolduc |
| Date: | Wednesday, June 19, 2019 10:24:03 PM |

This is a good summation of how Phil thinks about things. The responsibility of the school is to maintain a friendly relationship with us so that we can help. He is quick to turn against principals who don't talk to BCSI regularly.

What he neglects to mention here is that we did make a major mistake with respect to Mr. Hull. Apparently someone in BCSI sent someone else in BCSI a lengthy email listing frustrations with Hull, and then that person mistakenly sent the email to Hull himself. Embarrassing. Hull cooled quickly on us after that point, though there were problems before that.

Sadly I think all of this could have been avoided, or mitigated, if we had the right people in place. Water under the bridge now, I guess.

Sent from my iPad

Begin forwarded message:

> **From:** Phillip Kilgore <pkilgore@hillsdale.edu>
> **Date:** June 19, 2019 at 10:13:58 PM EDT
> **To:** Kathleen O'Toole <kotoole@hillsdale.edu>
> **Cc:** Chris VanOrman <cvanorman@hillsdale.edu>, Mike Harner <mharner@hillsdale.edu>
> **Subject:** Re: Message From Mr. Bolduc
>
> Our last visit was in early 2018. We haven't been down there this year because we've had no relationship with the principal. The only communication has been his nasty emails to me in November. He did not permit us to have contact with any of his teachers except that we go through him. There has been no relationship, and so no means to help.
>
>
> P. Kilgore
> Director, Barney Charter School Initiative
> Hillsdale College
>
> ------- Original message -------
> From: Kathleen O'Toole <kotoole@hillsdale.edu>
> Date: 6/19/19 22:09 (GMT-05:00)
> To: Phillip Kilgore <pkilgore@hillsdale.edu>
> Cc: Chris VanOrman <cvanorman@hillsdale.edu>, Mike Harner <mharner@hillsdale.edu>
> Subject: Re: Message From Mr. Bolduc
>
> Now this is getting ugly. Is it true that we haven't visited them in over 18 months? I thought someone had been down there more recently.
>
> Sent from my iPad

256. During a call with Hillsdale on June 20, 2019, E. Donalds confirmed she was going to hire Susan Turner from MCA and discussed Chuck Marshall's status:

> • Erika is going to hire Mrs. Turner from Mason—she's not going to stay at Mason under the current leadership. She really doesn't need her yet, but she doesn't want to let someone with her experience get away.
>   ○ MCA still needs Chuck Marshall, but he's out of sorts with the MCA board.

257.    On June 20, 2019, E. Donalds also laid out the steps in the ongoing conspiracy to take down MCA and its Board in a text to Baird:



258.    Consistent with the "parent" involvement mentioned in this plan, on June 20, 2019, Michelle Caswell and Olivia Durst sent a letter to Gov. DeSantis regarding MCA (copied to, among others, Hillsdale):

June 20, 2019

*Sent Via Electronic Mail*

The Honorable Ron DeSantis
Governor of Florida
400 S. Monroe St.
Tallahassee, FL 32399-0001
ron.desantis@eog.myflorida.com

Re:    *Mason Classical Academy*

Dear Governor DeSantis,

I am writing on behalf of a group of concerned parents of students at Mason Classical Academy ("MCA"), a Hillsdale affiliated charter school located in Naples in Collier County.

We are respectfully forwarding to you a copy of the enclosed report from Jon Fishbane to the board of Collier County Public Schools ("Report")[1] alleging serious misconduct by members of the board of directors of MCA ("Board"). The Report, the result of a year-long investigation by CCPS into numerous reports from parents and community members of misconduct by the MCA Board, includes, among others, allegations of Sunshine Law violations.

In response to the Report, the Board is pursuing a course of action that will cause irreparable harm to one of the finest charter schools in Florida and cause significant irreversible damage to our children.

We respectfully request that you intervene, suspend the current board, and appoint an interim board that will prevent any further damage to the school until the matter can be fully and properly adjudicated.

Respectfully submitted,

| | | |
|---|---|---|
| Michele W. Caswell | /s/ Ashley Tucker Stacell | /s/ Olivia Durst |
| mwothc@hotmail.com | Ashleystacell@gmail.com | livvvs@gmail.com |
| /s/ Christopher Durst | /s/ Kelsey Norton | /s/ Denis Buckley |
| /s/ Matt Stacell | /s/ Jonothan Norton | /s/ Kim Buckley |
| /s/ Juliette Bloom Lysiak | /s/ Melanie Nero | /s/ Erin Gannon Bryant |
| /s/ Adam Lysiak | /s/ Anell Robbins | /s/ T. Foster Bryant |
| /s/ Robyn Domes Mathias | /s/ Tony Robbins | /s/ Maureen Gerrity |
| /s/ Matthew W. Mathias | /s/ Sheri Ojanovac Dorta | /s/ Kevin Gerrity |
| /s/ Jodi Bain | /s/ Bob Dorta | /s/ Amee Rachu |
| /s/ Adam M. Bain | /s/ Cindy Walker-Palladino | /s/ Ron Rachu |

---

[1] The Report is attached hereto as **Exhibit 1**.

259.    On June 20, 2019, Hillsdale discussed Caswell's letter internally and raised the possibility of having her writing a "Letter to the Editor" for the *Naples Daily News*:



260.  The same day (June 20, 2019), Lewis's involvement in the conspiracy took shape, when she and Durst launched the "Citizens Concerned for MCA" Facebook Page, which Baird immediately joined, and Lewis started the mca-info.weebly.com website, which was little more than a front Defendants used to post numerous false and defamatory attacks against MCA and its Board):





261.   On June 24, 2019, in further support of the ongoing conspiracy, Durst filed a retaliatory complaint with CCSB against MCA and its Board, in which he requested that CCSB "appeal to the Governor of the state of Florida…to remove the current board at MCA and allow Hillsdale College to step in and assist…":

environment for the children attending the school.  I would request that the CCPS Board appeal to the Governor of the State of Florida, as the parents already have, to remove the current

board at MCA and allow Hillsdale College to step in and assist with efforts to install a Board that will actually adhere to the Pillars of Virtue, also called the Pillars of Character Development, that all Board Members are required to sign and date upon their appointment to the Board.

    Thank you for your time and I appreciate the time and consideration you have given me in reviewing this complaint.

Sincerely,

Christopher Durst
Concerned Parent of MCA Student

262.   On June 26, 2019, Lewis also tagged Gov. DeSantis in a post on the Citizens Concerned for MCA Facebook page (which was liked by CCSB Board member Lucarelli) falsely accusing the MCA Board of being "engaged in unethical and criminal activity," and Baird tagged Gov. DeSantis in a comment on Lewis's post:





263.   Also on June 26, 2019, Durst emailed the following cryptic threat to the MCA Board:



264.   The same day (June 26, 2019), Durst also sent a group email to MCA parents, which E. Donalds promptly forwarded to Coykendall and Kilgore:

**From:** Phillip Kilgore <pkilgore@hillsdale.edu>
**Date:** June 26, 2019 at 10:43:56 PM EDT
**To:** Eric Coykendall <ecoykendall@hillsdale.edu>, Rebecca Holland <rholland@hillsdale.edu>
**Subject: Fwd: Response to Kelly Mason Lichter**

I've forwarded this with some comments up the chain.


P. Kilgore
Director, Barney Charter School Initiative
Hillsdale College

-------- Original message --------
**From:** Erika Donalds <▇▇▇▇▇@gmail.com>
**Date:** 6/26/19 21:43 (GMT-05:00)
**To:** Phillip Kilgore <pkilgore@hillsdale.edu>, Eric Coykendall <ecoykendall@hillsdale.edu>
**Subject: Fwd: Response to Kelly Mason Lichter**


---------- Forwarded message ---------
**From: Christopher Durst** <▇▇▇▇▇@gmail.com>
**Date:** Wed, Jun 26, 2019 at 9:28 PM
**Subject:** RE: Response to Kelly Mason Lichter
**To:**

Fellow Parents of MCA Students.
    I apologize for having to send this email to you, as your email should be private and not accessible by any
other parent at MCA.  However, your email was obtained from an email sent by MCA earlier this year, in
which they forgot to cover all of the email addresses.

    Typically, I would not engage in a back and forth with a person such as Kelly Lichter, as there is no
benefit to such engagement.  But, since she has grabbed everyone's attention and has "spun" the narrative
once again to attack a new set of "enemies", I thought it would be the perfect time to engage the parents that

265.   Incredibly, on June 26, 2019, Kilgore sent an internal Hillsdale email discussing how Fishbane told him "*confidentially*" about a CCSB meeting that was going to take place on July 11, 2019 and not yet publicly announced to start the process of revoking MCA's charter:



-------- Original message --------
From: Phillip Kilgore <pkilgore@hillsdale.edu>
Date: 6/26/19 22:43 (GMT-05:00)
To: Mike Harner <mharner@hillsdale.edu>, Chris VanOrman <cvanorman@hillsdale.edu>,
Kathleen O'Toole <kotoole@hillsdale.edu>, Robert Norton <rnorton@hillsdale.edu>
Subject: Fwd: Response to Kelly Mason Lichter

Today, Jon Fishbane told me confidentially that the CCPS board will meet on 11 July
to discuss the commencement of a 90-day timetable to revoke the charter.  The
thinking is that the MCA board has been so belligerent and vitriolic since the release
of the investigative report that it is forcing the hand of the CCPS board to bring the
problem to a close.  There will likely be an appeal process afterward which will drag
on for a few months, so in the meantime the CCPS board will take over the school as
of 11 October and govern it until the adjudication is complete.  That could easily
continue into the spring, perhaps March or April, and it is therefore likely that CCPS
would operate the school through the end of the school year.

Phil

P. Kilgore
Director, Barney Charter School Initiative
Hillsdale College

266.    Unbeknownst to MCA, in late June and early July 2019, Arnn and Florida Education Commissioner Corcoran were speaking on the phone almost nightly.

267.    On June 27, 2019, Mathias texted E. Donalds to confirm what he should cover in a scheduled "meeting with Fishbane today":



268.    On June 27, 2019, MCA parent, Tamara Switken, posted a comment on Facebook about information Sup. Patton revealed about a CCSB Board meeting the week of the July 8th and that "***they want to keep the school open, but with new leadership.***" Tamara Switken was one of the people E. Donalds identified for Hillsdale as a potential Board member for the planned "reconstituted" MCA Board.

269.    On June 28, 2019, Tamara Switken emailed Sup. Patton and Fishbane to confirm their in-person meeting scheduled for July 1, 2019, which was also attended by Heather Ayers (married to Derrick Ayers), another proposed Board Member, and Michelle Caswell.

270.    On July 1, 2019, Lewis posted on the Citizens Concerned for MCA Facebook page about Hillsdale ending its relationship with MCA, referencing an email sent by Hillsdale's VanOrman:



271.    On July 2, 2019, the *Naples Daily News* published an article about Hillsdale cutting ties with MCA:



272.    On July 3, 2019, FDOE reached out to Arnold to ask whether MCA wanted to mediate with CCSB pursuant to section 1002.33(7)(6), *Florida Statutes.*

273.    **That same day** (July 3, 2019), Hillsdale sent the following letter to MCA parents, which Lewis almost immediately posted to the Citizens Concerned for MCA Facebook page:


HILLSDALE COLLEGE

July 3, 2019

Dear Mason Classical Academy Parent:

I am writing to update the concerned parents of Mason Classical Academy (MCA) students regarding Hillsdale College's affiliation with the school.

As you know, the College's Barney Charter School Initiative (BCSI) has provided academic support and advice in governing practices to MCA leadership and teachers since MCA's founding. And as we shared previously, despite the academic successes of MCA, its governing and leadership practices—especially as pertains to its Board—have generated serious concerns.

BCSI staff members observed these poor practices firsthand, and Hillsdale College sent a written communication on the severity of the issues and recommendations for changes to the MCA Board President in December 2018. Additionally, Jon Fishbane, General Counsel to the Collier County School District, issued an extensive Investigative Report.

Unfortunately, because the MCA Board has not made the appropriate changes—either as outlined by Hillsdale College or as described by Collier County School District's Investigative Report—the College will terminate its affiliation with Mason Classical Academy on August 5, 2019.

The decision to terminate this relationship did not come easily and is based on the severity of the problems at hand and the MCA Board's failure to comply. We have seen the outstanding work and dedication of the school's teachers and staff members, and we commend students, teachers and staff for their notable success.

As we have shared with the MCA Board, if the current MCA leadership demonstrates compliance with the aforementioned recommendations before August 5, Hillsdale College would explore reconsidering its decision.

Should you have any further questions about the role Hillsdale College's BCSI plays in advising affiliated schools, please contact charterschool@hillsdale.edu.

Sincerely,

Dr. Christopher A. VanOrman
Provost, Hillsdale College



274.    On the evening of Sunday, July 7, 2019, the CCSB posted a Public Notice

for a special meeting on July 11, 2019 to review "***whether to issue a notice of termination***

***of the charter with Mason Classical Academy***.":



275. Lewis quickly posted CCSB's July 7, 2019 Public Notice and the CCSB Agenda for the July 11, 2019 meeting on Facebook, describing it as **"Step 1 in taking back our school…"**:





276.    On the morning of July 8, 2019, Arnold emailed FDOE Assistant General Counsel, Lois Tepper, that MCA's Governing Board "need[s] to be populated with new board members":



277.    That same day (July 8, 2019), Arnold, emailed a letter to Fishbane stating, "Please send me the District's offer for settlement ASAP." Fishbane responded to Arnold with a "Proposal to Resolve the Controversy with Mason Classical

Academy." This "proposal" called for two (2) of the three (3) MCA Board Members to resign, then MCA will add four (4) new Board Members *preselected by Hillsdale College* and stated that "*the proposal has been discussed with the appropriate persons at Hillsdale College who are in support of it.*":



July 8, 2019

*Sent Via Email*

Shawn Arnold, Esq.
6279 Dupont Station Ct.
Jacksonville, FL 32217

Re:    Proposal to Resolve the Controversy with Mason Classical Academy

Dear Shawn:

    In follow up to our conversation, the following will set forth a proposal that I believe will resolve the controversy in everyone's best interest in advance of the District School Board's July 11, 2019, Special Board Meeting. The proposal has been discussed with the appropriate persons at Hillsdale College who are in support of it.

    With this in mind, the MCA Board would call a Special Board Meeting by July 25, 2019, to vote in four new Board Members from a list of candidates to be provided by Hillsdale College. Upon the voting in of the four new Board Members, Ms.Miller and Mr. Bolduc would step down and Ms. Lichter would stay on the Board. Within two weeks after the formation of the new Board, the Board will meet to select new Officers for the Board.

    Moreover, Hillsdale College has advised it will use the good offices of the recruitment/selection firm it relies upon to locate a Principal for MCA to have in place by the opening of school. This search will be made a high priority by the College to help MCA.

    During the July 2, 2019, MCA Meeting, Ms. Lichter stated that she wanted to repair with Hillsdale College. This provides her with an important opportunity to do so. If this proposal is accepted, Hillsdale will agree to continue its relationship with MCA and provide support to MCA's educational growth and development by working with its administrative team, faculty, and the Board in the best interests of MCA students and parents.

    Please encourage your client to accept this offer. This would need to be voted on at a Special Meeting prior to July 11, 2019. I would like to be able to report to our Board on July 11, 2019, and Hillsdale College that the proposal has been accepted.

278.    On July 8, 2019, Hillsdale sent an extortionate letter to Lichter advising that it would not recommend the revocation of MCA's charter to CCSB if she and MCA ceded to Fishbane's demands:



279.   On July 8, 2019, Hillsdale internally circulated notes concerning the July 7, 2019 CCSB meeting, including a reference to E. Donalds "recruiting people to serve as new MCA board members" during the meeting:

> **From:**    Emily Davis
> **To:**       Chris VanOrman; Kathleen O'Toole; Mike Harner; John Cervini
> **Cc:**       Matt Schlientz; Eric Coykendall; Phillip Kilgore
> **Subject:**  Highlights: Video from MCA
> **Date:**     Monday, July 8, 2019 1:42:13 PM
>
> One note: A mention that Erika Donalds is recruiting people to serve as new MCA board members
>
> **Some highlights from this meeting:**
> 29:50 BCSI schools are a "sea of average"

280.   On July 8, 2019, Lewis emailed CCSB, Fishbane, and Patton about how "**we**" would fill a new board and author a new charter once MCA's was terminated:



As scary as it sounds to request CCPS to "terminate the MCA charter", I am in favor of your doing so so that a new charter application can take its place. If you do not, the current administration will feel invincible and above the law - they will be victorious and will point to the summer of 2019 as the main example for why they are 100% in the right in all of their actions. It will be SO MUCH WORSE than it already has been in the past.

Many MCA Parents are ready to handle the load if MCA's charter is terminated. We will author a new charter application, we will fill a new Board, we will populate a PTA, and we will volunteer - we will do what it takes to carry the school we love forward. We will use Hillsdale's resources to guide our way, we will heal, and we will take MCA to the next level.

281. On July 9, 2019, Mathias texted E. Donalds confirming Hillsdale's continued involvement in terminating MCA's charter:



282. Mathias and E. Donalds also discussed their own charter application, Fishbane's involvement in the conspiracy, and their recruitment of Douglas Schumann—MCA's landlord—including locking MCA's doors after its charter was terminated:

99



283.   On July 9, 2019 Coykendall emailed O'Toole about correspondence between MCA and Fishbane provided by E. Donalds, as well as correspondence Coykendall obtained while secretly monitoring an MCA Facebook group:

From:       Eric Coykendall
To:         Kathleen O'Toole
Subject:    2019.07.09 MCA Attny ltr to Fishbane.pdf
Date:       Wednesday, July 10, 2019 8:26:16 PM
Attachments: 2019.07.09 MCA Attny ltr to Fishbane.pdf
            ATT00001.htm

Katy,

Just to make sure you have the most recent chatter from MCA:

1. Attached is the MCA board letter to Fishbane. It was sent to me by Erika Donalds (I neither
requested it, nor responded).

2. You can read Fishbane's response over
here: https://drive.google.com/file/d/1Ar_4n1iRVTe-6xlv5OVr8i2_afyqw-ef/view (It was
posted to a Facebook group created to follow all this madness. I follow the group as a silent
observer.)

284.   On July 10, 2019, Mathias texted E. Donalds about Durst sitting on the

Naples Classical Academy Board, and Ayers' thoughts about potential board

members:



285.    During this July 10, 2019 text exchange, Mathias and E. Donalds also discussed her knowledge and Durst's knowledge of what Fishbane would be offering at the special meeting on July 11, 2019 to terminate MCA's charter:



286.    On July 10, 2019, Baird also posted on Facebook about offers that would

be made to MCA on July 11, 2019 and Hillsdale's role in the plan:



287.    Also on July 10, 2019, **the day before the CCSB specially set meeting to discuss revoking MCA's charter**, Bolduc also received an unsolicited call on his cell phone from Bob Olson, who told Bolduc that he had been talking to Rep. Donalds about the MCA situation and that he "*need[ed] you guys to step down*" because Hillsdale had plans to "*take this national*."

288.    Bob Olson is a "big" Hillsdale Donor and close with Keith Flaugh (FCLA)—who also talked to Lichter about resigning before the July 11, 2019 CCSB meeting.

289.    On July 10, 2019, Mathias and E. Donald continued to text about Durst serving on the Naples Classical Academy Board and recent Facebook posts:



290.   On the morning of July 11, 2019 at 5:44 a.m., at Arnn's instruction,

Harner emailed Fishbane Arnn's notes from a private call he had with Lichter on the

night of July 10, 2019:

From: Mike Harner [mailto:mharner@hillsdale.edu]
Sent: Thursday, July 11, 2019 5:44 AM
To: Fishbane, Jon (Jonathan) <fishbj@collierschools.com>
Subject: FW: This is the note that I hope someone can get to Mr. Fishbane first thing in the morning.

Mr. Fishbane,

Below find a note from Dr. Arnn regarding a call he had with Kelly Lichter last night.

Best regards,

Mike Harner
Chief of Staff
Hillsdale College

From: Larry P. Arnn
Sent: Thursday, July 11, 2019 12:10 AM
To: Kathleen O'Toole <kotoole@hillsdale.edu>; Robert Norton <rnorton@hillsdale.edu>; Mike
Harner <mharner@hillsdale.edu>; Chris VanOrman <cvanorman@hillsdale.edu>
Subject: This is the note that I hope someone can get to Mr. Fishbane first thing in the morning.

Report of a Conversation with Kelly Lichter
At the urging of Bob Olsen, I sent a text this evening to Kelly Lichter.  This was after he had
scheduled her to call me at 10:00 a.m this morning, but she did not.  Getting my text, she did
call about 8:45. I talked to her for 40 minutes.

Main points:

    At the end of the conversation I told her that if anybody characterized this conversation
with me at the meeting or in any public forum differently than it was then we would never
have another private conversation.  I said that I called to make three points.

291.   The CCSB held its special meeting on July 11, 2019, during which

Fishbane recommended that CCSB mediate with MCA and FDOE.  CCSB voted to

proceed to Mediation on August 1, 2019.  During the public comment portion of this

meeting, dozens of supportive MCA parents spoke on behalf of MCA and MCA parent, Melissa McMurray, presented a petition titled "Keep MCA Open" with more than 1,700 signatures.

292.    On July 11, 2019, Fishbane had a telephone conference with O'Toole and Harner:

293.    During the July 11, 2019 CCPS meeting, E. Donalds and Mathias texted about the timetable for revocation of MCA's charter:



294.    On July 12, 2019, E. Donalds exchanged a series of messages with

Coykendall about her meeting with Hillsdale in Michigan planned for the following

week, as well as the "plan" to terminate MCA's charter and using the mediation "**to**

**take away MCA argument that they didn't get due process**":







295.   As demonstrated by this text exchange, at this point the conspirators'
plan was to get MCA's charter terminated but also keep the school open and transfer
its assets to the group E. Donalds and Mathias were putting together with Hillsdale's
oversight.

296.   At that time, under the stewardship of MCA's Governing Board
Members that Defendants were unlawfully trying to oust, MCA had over $2 million
in its reserves and MCA was a "high-performing" school, which opened the door to
significant, valuable benefits under Florida law.

297.   On July 12, 2019, E. Donalds also texted Mathias about Rep. Donalds
talking to Rep. Bob Rommel (Florida House of Representatives, District 106) and
bringing a "DOE-seated Board" to the MCA mediation:



298.   On July 12, 2019, Baird and E. Donalds texted about having a "replacement charter and board" ready and Baird speaking with Fishbane about terminating MCA's charter:



299.   On July 15, 2019, E. Donalds and Mathias texted about conversations with Rep. Rommel and Hillsdale:



300.    On July 17, 2019, E. Donalds met with Hillsdale leadership in Michigan. O'Toole's notes from her meeting with E. Donalds memorialize discussions about the replacement board and submitting an application for a new charter as soon as CCSB pursued termination of MCA's charter so that CCSB could turn over MCA's assets to this new group.   These notes also reveal that Sup. Patton approached E. Donalds

"asking her to submit an application" and that Coykendall had a meeting planned with

E. Donalds the following week regarding Jacksonville Classical Academy:

**From:** Kathleen O'Toole
**Sent:** Wednesday, July 17, 2019 10:56:43 AM
**To:** Mike Harner; George King; Eric Coykendall
**Subject:** Notes from conversation with Erica Donalds - George and Eric, to do items for you at the end

**Erica Donalds**
Mike Harner, Katy O'Toole

Thinks that mediation is going to fail

Met in person with a group of parents and community members who would be willing to serve as the board
Matt Matthias willing to be the chair
Tim hall

Bill truog is a Hillsdale grad

There are also 5 parents of MCA students willing to serve on the board

Matt wants to have a 9 person board
Because important to show a strong support base
One is a CPA
One owns a construction company
One is an OBGYN and was on the board of the private school that preceded MCA
One works as an accountant for the city of Naples

Did the name nick reid come up?
No she says
She doesn't know who he was

These people had an initial meeting last night
They are going to file to be a corporation with the state
Erica is going to assist them in filing for nonprofit status
Their intention is to submit the application as soon as termination is pursued by the district
Erica says if mediation fails she has no doubt that the school will be closed
Then she backs up a bit
The district is begging Erica to have an application ready if mediation fails
Three CCPS board members and the superintendent have come to her asking her to submit an application

The district doesn't have much choice, doesn't want to run a classical charter school.
Their best option is to hand over the assets of MCA to this new group

Mike: we are not going to work exclusively with Erica
If someone else comes forward we are willing to consider supporting them

Out goal is to keep the school open
This is not Hillsdale College and the optima foundation getting together and conspiring to take over the school

Erica says she is willing to help but is not actively pursuing anything

GEORGE and ERIC : We need to review the profiles of these board members very carefully
What kind of application process do we make them go through
This is a chance to have more oversight than we had before
The conversation will start happening next week when Eric is in Florida meeting with Erica re: Jacksonville

301.    In response to O'Toole, Hillsdale's George King emailed the following:

From:       George King
To:         Kathleen O'Toole; Mike Harner; Eric Coykendall
Subject:    RE: Notes from conversation with Erica Donalds - George and Eric, to do items for you at the end
Date:       Wednesday, July 17, 2019 12:15:15 PM

Katy,

If mediation does not fail, our path is clear.

If it does fail, as we discussed, the tone we need to take with Erica (which I will discuss with Eric) is to treat her group as one solution of potentially others out there. We will need to be careful and deliberate with her. We will want to have a posture that at an arm's length and go through the steps of getting the background on her prospective board, interviewing them, vetting them and keeping a posture of treating them as we would other candidate groups. Being too close to them, especially in this litigious-rich circumstance, could be highly problematic. I think we keep our poise, talk to Erica in a tone of interest, but not with an insider's familiarity, and stick to our guns on running our traps. Expectations need to be clear and we will likely appear more rigorous than she's experienced to date with her group in Jacksonville.

That's not say that if, with the right prowess in the group, what we know to be a typical timeframe for new schools can be expedited locally and we can effectively vet the group with an eye on our pillars of sound and stable organization, who can also attract a very strong head of school in the next few months, we can't put them in the chamber for an effective relaunch in this market next school year – maybe replacing an expected opening that may be a candidate to push to another year.

If we wake up the day after mediation and creating a safety net for this school is suddenly a priority for THIS year and their timeline is a possible match – we have a lot of heavy lifting to do with them and I'd recommend two or three emissaries get on the ground soon after for an extended involvement in the process.

George

302.    On July 17, 2019, Fishbane had a call with Hillsdale's General Counsel,

Robert Norton:

From:       Jennifer Frank
To:         fishbl@collierschools.com
Subject:    Hillsdale College phone meeting Thursday
Date:       Wednesday, July 17, 2019 3:22:00 PM

Good Afternoon,
Please use the following teleconference number for tomorrow's meeting with Bob Norton at 9:00 AM EDT.  888-340-5470 with access code 6468151.

Thank you kindly,
Jennifer

Jennifer Frank
Hillsdale College – General Counsel's Office | Moss Hall- 244 |
Hillsdale, MI  49242 | P: 517.607.2514 | E: jlfrank@hillsdale.edu | W: www.hillsdale.edu

303.   On July 17, 2019, E. Donalds texted Mathias about Hillsdale being "***IN

on the 'keep MCA open' plan!***" which included submitting a charter application for two

Naples campuses:



304.   In the same July 17, 2019 text exchange, E. Donalds confirmed to

Mathias that Susan Turner was coming to work for Optima, but to keep that quiet:



305.   Susan Turner began working for Optima Foundation not long after.

306.   On July 18, 2019, Susan Turner e-mailed MCA's bank to give Ashley Hamilton from the accounting firm Markham, Norton Mosteller Wright & Co access to MCA's on-line banking privileges.  Gail Markham, founder of Markham, Norton Mosteller Wright & Co., also serves on FGCU's Foundation Board.

307.   On July 18, 2019, E. Donalds met with Arnn for two and a half hours and discussed the "**ongoing partnership between Hillsdale and Optima**" and Hillsdale "pulling from their large donor list in the Naples area" for new board members once MCA was taken over:



308.   Notably, Mathias and E. Donalds indicate in this text that they should, "have a few parents [on the new board] **for appearances**."

309.    On July 19, 2019, Coykendall also met with E. Donalds in Michigan and

they discussed MCA's then-lawyer, Arnold, working for E. Donalds and Optima and

the "plan" for taking over MCA:



310.  After her meeting with Coykendall, E. Donalds texted Mathias:



311.    On July 21, 2019, E. Donalds emailed O'Toole and Harner about people

who had committed to serve on the new "Collier classical charter school board (yet to

be named)" including Mathias, **Heather Ayers**, and **Tamara Switken**:

> **From:** "erika@optimaed.org" <erika@optimaed.org>
> **Date:** Sunday, July 21, 2019 at 1:16 PM
> **To:** Mike Harner <mharner@hillsdale.edu>, Kathleen O'Toole <kotoole@hillsdale.edu>
> **Subject:** Board members
>
> Good morning Dr. O'Toole and Mr. Harner,
> Thank you for your time yesterday and for your efforts to ensure a Hillsdale Classical Charter School
> remains available for families in our community. I look forward to working together towards a
> effective solution to this disappointing situation.
>
> The individuals who have committed to serve on the new Collier classical charter school board (yet
> to be named) are:
> Matt Mathias – Chairman, Finance professional, MCA parent & former board member
> Dr. Holly Miller – MCA parent, OBGYN with extensive board experience
> Heather Ayers, CPA – MCA parent, Accounting professional
> William (Bill) Truog – Non-parent, Hillsdale alumnus, former business owner with non-profit
> experience
> Jodi Bain – MCA parent, City of Naples accountant
> Tony Palladino – MCA parent, Owner of Palladino Custom Homes
> Tamara Switken – MCA parent, works for Florida Southwestern State College
> Tim Hall – Non-parent, retired, founded and ran a private school for students with disabilities for 15
> years
>
> The Chairman is working on one more to bring the count to 9 board members at the outset. The
> MCA parents listed have all been at the school since its founding.

312.    On July 24, 2019, Mathias and E. Donalds met with Coykendall, after

which they texted about not being "public" about Hillsdale's "explicit support":



313.    On July 29, 2019, Rep. Bileca emailed Arnn about the upcoming MCA

mediation and Corcoran's involvement:





314.    On July 29, 2019, to drive public support for Hillsdale, Lewis posted on

the Concerned Citizens for MCA Facebook page about the college admissions

ramifications for students if Hillsdale was not involved at MCA:



315.    On July 30, 2019, E. Donalds emailed O'Toole about the ongoing plans

surrounding MCA:



316.    On July 31, 2019, Corcoran's office filed an Administrative Complaint against Vickaryous (Case No. 178-2606) alleging that she bullied and humiliated educators and improperly recorded private conversations while at Manatee Middle.

317.    On July 31, 2019, E. Donalds spoke with Sup. Patton and followed up with Mathias about the plan for MCA's charter termination:





318.    On July 31, 2019, Bileca emailed Arnn about conversations they were

having with Arnold:

From:     Larry P. Arnn
To:       Evernote
Subject:  Fwd: Maybe good news
Date:    Wednesday, July 31, 2019 2:35:16 PM

Begin forwarded message:

**From:** Michael Bileca <mbileca@bilecafoundation.org>
**Subject: Re: Maybe good news**
**Date:** July 31, 2019 at 8:35:34 AM EDT
**To:** "Larry P. Arnn" <LSpencer@hillsdale.edu>

I spoke to him late yesterday and had not seen this email. He characterized the
call a bit different in that he thought Hillsdale was more negative and was moving
forward with the termination. I told him I thought our call was constructive and
told him the desire of Hillsdale to stay involved and be helpful.

Does look positive, Shawn is talking more directly to the board members. I will
call Shawn this morning and yes he is a well-respected attorney that specializes in
charters in Florida.

On Tue, Jul 30, 2019 at 5:30 PM Larry P. Arnn <LSpencer@hillsdale.edu> wrote:
I learn after our call that Shawn Arnold, lawyer for the school, called our
General Counsel today to propose that:
1. You be chair.
2. We appoint or approve one or two additional board members.
3. We remain involved.

Bob was reluctant, but I hereby accept that deal if you can make it. I also add
privately to you that we would be happy to work entirely through you, to the
extent you ask for it, while you are chair. I accept this because I think you have
the best chance of sorting this out and we wish to help.

Bob says that Arnold is reasonable and likes to work with him.

How about that?

--
Michael Bileca

319. MCA was not aware of and never authorized Arnold to call Robert
Norton on July 30, 2019 to propose that Bileca be chair of the MCA Board.

320. On August 1, 2019, FDOE mediated the dispute between CCSB and
MCA, resulting in a Mediation Settlement Agreement (the "MSA").

321. This MSA included a "Corrective Action Plan" and acknowledged that
CCSB would "no longer pursu[e] termination of the Charter for Mason." The MSA
further provided that "Both parties will work in concert for a smooth opening of the
school on August 13, 2019," while acknowledging that Hillsdale College notified

MCA of its intent to terminate their contract effective August 5, 2019.  The MSA said nothing about Rep. Bileca being on MCA's Board.

322.    Unbeknownst to MCA at the time, Fishbane was communicating with Hillsdale College representatives **during the mediation**.

323.    On August 1, 2019, Mathias and E. Donalds texted about the mediation and a conversation with Coykendall that morning:



324.   On August 2, 2019, Fishbane and Baird texted about the settlement agreement and Fishbane assured Baird that "*there is more than the initial reading* [of the settlement agreement] *discloses*"—foreshadowing the next phase of the conspiracy:



### G.   The Next Phase of Charter Termination:
### Manufactured MSA Breaches, False Complaints, Defamation & Retaliation

325.   On August 3, 2019, Rep. Bileca and Arnn exchanged emails about the MCA mediation:

| | |
|---|---|
| **From:** | Larry P. Arnn |
| **To:** | Evernote |
| **Subject:** | Fwd: Good work |
| **Date:** | Saturday, August 3, 2019 4:03:34 PM |

Begin forwarded message:

**From:** Larry Arnn <lspencer@hillsdale.edu>
**Subject: Re: Good work**
**Date:** August 3, 2019 at 3:41:42 PM EDT
**To:** Michael Bileca <mbileca@bilecafoundation.org>
**Cc:** Kathleen O'Toole <kotoole@hillsdale.edu>

Give me a call whenever you like this weekend at ▮▮▮▮▮▮, my cell, which use anytime. Bob, our attorney, describes Mr. Arnold just as he describes Bob, but worse (Arnold: we won, you get nothing). I spoke with Bob about that and instructed him that we will not be making many demands but trying to make this work, even in the face of provocation, of which we have plenty. Our strategy is to help you make it work. We will be rescinding the notice of termination.

If friction prevails for months, it will not be our doing, but in that case we will withdraw. I do not know how many months, not wishing to give any ultimata, and not wishing to encourage the leaders of Mason to simply wait us out. My team is worn out with Mason, but they will persevere.

Look forward to talking.

> On Aug 3, 2019, at 3:12 PM, Michael Bileca <mbileca@bilecafoundation.org> wrote:
>
> Larry,
>
> Would be good for us to do a quick call together. The result was favorable and the DOE weighed in heavily. Hillsdale's attorney however, reflected a very negative view of the settlement and expressed this to Mason's attorney - Arnold - who I have been in contact with. Arnold works for the Board and I am sure that went back to them already. I have a concern that we need to create some bridge between Hillsdale and the existing board and instead of starting that process post mediation settlement, it created further division. As of now according to Shawn, there is a termination notice from Hillsdale that has been sent to the Board and I believe in effect this upcoming week unless retracted.
>
> I am available anytime through the weekend or Monday after 11.

326.    On August 4, 2019, Lewis emailed CCSB, Fishbane and Patton about the MSA, using complaints that are the handiwork of the conspiracy, including Baird's complaint, Fishbane's report, and Hillsdale's findings, while discussing the importance of Hillsdale remaining involved in the school. Two days later, Lewis spoke at an MCA Board Meeting with a Hillsdale binder in her hand:



327.    Of course, Lewis never mentioned that she was deeply involved with co-
Defendants in the plot to remove MCA's Board and take over the school, serving as a
surrogate for Fishbane and Hillsdale to post false and defamatory statements about
MCA and its Board.

328.    On August 5, 2019, O'Toole emailed Arnn about E. Donalds starting her
charter school in Collier and wanting to talk to Hillsdale about MCA.

329.    On August 6, 2019, Hillsdale College sent a letter to the MCA Board
attempting to rescind its termination of its contract with MCA, which had already
become effective the day before (August 5, 2019).   Although this letter is only
addressed to the MCA Board with a cc to Fishbane, Lewis posted it on her Weebly
site the next day:



August 6, 2019

Dear Board of Mason Classical Academy:

Hillsdale College and its Barney Charter School Initiative (BCSI) have noted some of the improvements undertaken by leaders at Mason Classical Academy (MCA).

Because of these changes, we send this letter to notify you that Hillsdale College retracts its proposed August 6 termination of its affiliation with MCA effective immediately.

Hillsdale College and BCSI will remain engaged with MCA through board development, teacher training, the selection of a new principal, and renewed curriculum support.

The College cares deeply about the students, teachers, and staff members of MCA. We hope that school leadership continue to take the steps necessary to ensure transparency and good governance.

Sincerely,

Christopher A. VanOrman
Provost, Hillsdale College

CAV/cfb
cc:  Jon Fishbane
     Laura Mazyck

330.   At a public meeting on August 6, 2019, CCSB discussed Hillsdale College's letter attempting to rescind its termination and Fishbane advocated that Hillsdale's rescission letter was valid.  Fishbane also stated that if MCA did not recognize Hillsdale as their current partner, he would view that as a breach of the charter agreement.[18]

---

[18] Hillsdale is NOT a "partner" with MCA, as plainly stated in Hillsdale's contract with MCA: "*Nothing in this Agreement creates or is intended to create a partnership, employee relationship, agency relationship, or any relationship implying or ceding control over MCA Corporation, Charter School, the governance of Charter School, or the operations of Charter School to Hillsdale College, or any of Hillsdale College's employees, agents, or representatives.*"

331.  On August 6, 2019, O'Toole forwarded Arnn an email from Coykendall about the Florida chartering process to "*answer[] [Arnn's] question about how involved Corcoran would be in starting up new schools in Florida.*"

332.  On August 6, 2019, E. Donalds and Coykendall texted about the mediation and Bileca's involvement:



333.    On August 7, 2019, Coykendall emailed O'Toole about Naples being able to support two schools and being "sensitive to *the Optima Foundation's need to grow to at least __three__ schools*":



334.    This clearly is a reference to Optima Foundation's need to have three schools to qualify as a Hope Operator.  In fact, Coykendall later testified as follows:

```
 9   Q.   Yeah.  Now, you -- at the end of the third paragraph
10        of your email to Katy O'Toole in Exhibit 31 you
11        mentioned that you were sensitive to the Optima
12        Foundation's need to grow to at least three schools.
13        What did you mean by that?
14   A.   Yeah.  So in order to have a successful management
15        company in the charter school business you have to
16        work on certain economies of scale.  A management
17        company typically takes a percentage of the total
18        revenues to a school and provides a set list of
19        services.  And the Optima Foundation's business plan
20        was such that I think basically they were spending
21        their investors' money and not recovering anything on
22        that investment until they had at least three
23        schools.  And so there was financial pressure on
24        Erika Donalds to have a third school as part of her
25        portfolio.
```

```
14   Q.   So I think if I understand you correctly, you
15        understood from Erika Donalds that from a business
16        perspective it was better to get to three schools as
17        soon as they could, and if this Naples school could
18        be opened, then that would help in what they were
19        trying to achieve?
20   A.   That's right.
```

335.   On August 7, 2019, MCA attorney Michael Coleman responded to Hillsdale's attempted agreement termination recission letter:



336.   Although this letter was only addressed to Hillsdale with a cc to the MCA Board, it was posted to Lewis' Weebly website for public viewing **the same day**.

337.   On August 7, 2019, Mathias and E. Donalds exchanged a series of texts about applying for two campuses "***but be more general about whether one is MCA***" and that "***Hillsdale is back in the picture***" because "***Corcoran has something to do with it***":



338.   August 7, 2019 Hillsdale also had a call with Steve Read (a teacher at

MCA sympathetic to Hillsdale), during which Hillsdale was careful not to say

anything about Bileca or Corcoran:

- → **I·did·not·say·anything·about·Mike·Bileca·or·Richard·Corcoran.··I·did·say·that·we·want·to·help·
  MCA·however·we·can,·and·we·have·agreed·to·help·the·school·as·long·as·it·welcomes·our·help·
  and·improves·its·governance·practices·(paraphrasing·Katy's·quote·for·Erika·Donalds).·¶

339.   On August 8, 2019, E. Donalds continued pushing Coykendall for

"approval" so she could get her third school:

Working on getting you the video from the MCA
board meeting this morning where the board
members agreed that this is just "another
chapter in Hillsdale trying to undermine the
school". Bileca was not added to the board but
they did add another hot-headed parent who
agrees that if parents don't like MCA they should
"go somewhere else".
Can I have my approval now??

Matt Mathias is also trying to get me the video.
I'm VERY interested.

340.   On August 8, 2019, O'Toole emailed Arnn about the conversation with

Steve Read:



From: Kathleen O'Toole <kotoole@hillsdale.edu>
Date: Thursday, August 8, 2019 at 10:39 AM
To: "Larry P. Arnn" <LSpencer@hillsdale.edu>
Cc: George King <gking@hillsdale.edu>, Mike Harner <mharner@hillsdale.edu>, Chris
VanOrman <cvanorman@hillsdale.edu>
Subject: FW: 2 questions re: Erika Donalds and Mason

Becky in our office has a friend on the faculty at Mason. The friend is sympathetic to the college and
sees problems in the board. Here are some notes about the school from him. Highlights in bold. Not
encouraging news.

--

Phone call with Steve Read
Wednesday, August 7, 2019
10:00 a.m.

341.    Later, O'Toole emailed Arnn about another conversation she had with

E. Donalds:

From: Kathleen O'Toole <kotoole@hillsdale.edu>
Date: Thursday, August 8, 2019 at 2:28 PM
To: "Larry P. Arnn" <LSpencer@hillsdale.edu>
Cc: George King <gking@hillsdale.edu>, Mike Harner <mharner@hillsdale.edu>, Chris
VanOrman <cvanorman@hillsdale.edu>
Subject: Re: 2 questions re: Erika Donalds and Mason

Afternoon update:

Spoke to Erika Donalds this afternoon to listen to her describe what's going on down there. She
knows details about today's board meeting and says the following:

1. Bileca has not been put on the board. This might happen later, but it didn't happen this
   morning when they put a 4th board member on.
2. The 4th board member is attorney Conrad Wilkomm, who I believe spoke to Bob on the
   phone.
3. David Hull has been hired as the Student Services Director.
4. Erika says that if anyone can handle the situation it's Bileca, but she also notes that he would
   be a minority on the board. 4-1.

Dr. Kathleen O'Toole
Assistant Provost for K-12 Education
Hillsdale College

342.    On August 8, 2019 (within 48 hours of the MSA being approved and

Fishbane advocating that MCA no longer having Hillsdale as a partner is a breach of

MCA's Charter Agreement), Mathias filed Phoenix's Articles of Incorporation.

343.    Also on August 8, 2019, Mathias tried to give Coykendall access to a

video of the MCA August 8, 2019 Board Meeting and offered access to "**our** 'MCA

Concerned Parents'" Facebook group:



344.    On August 9, 2019, Mathias emailed Rep. Rommel about the plan to

reconstitute the MCA board after having MCA's charter terminated and *"passing the*

*school along to a [his] newly approved…Hillsdale affiliated…charter school."* According to

an invoice from Jim Fox's Roetzel Law Firm to CCSB, Fox "received and reviewed"

this email from Mathias to Rommel:

**From:** M█ M███ <████████████████>
**Sent:** Friday, August 9, 2019 9:37 AM
**To:** bob@representativebobrommel.com <bob@representativebobrommel.com>
**Subject:** Mason Classical Academy

Bob:

You and I had a brief conversation prior to the mediation between the Collier County School Board District and Mason Classical Academy. Well, the mediation is over, and I can't be more disappointed in the outcome.

It appears the state of Florida representatives in Tallahassee believe "change" can occur by simply adding a special person on the Board of Directors at MCA.

Included in this e-mail are two examples of why I was explaining to you this strategy will not work.

The first (attachment) is a cut from a recording of a call/video conference among a limited number of MCA parents....with Kelly Lichter presiding. Kelly explains how there is a group of parents who are "undermining" the school and lays blame for the school's difficulty on the feet of those parents. She does only to explain her exasperation as to why these parents continue to have their children educated at MCA. On the heels of the mediation (August 1st and 2nd), this message of divisiveness is most troubling. If the intention for the outcome of the mediation was for the MCA Board Leadership to behave more in line with the "8 Pillars of Virtue" it purports to live by....well, this is a most unfortunate action by Ms. Lichter. So, this is the first example of how behaviors have NOT changed. She CLEARLY cannot separate the curriculum delivered by the teachers....versus the behaviors and decision-making of the 3 board members.

The second (URL Link Below) is a you tube video of a MCA Board of Directors meeting held on August 8th. It's rather lengthy, but I encourage you to listen/watch the entire video. If the intention of the mediation outcome was for MCA and Hillsdale College to mend fences and work together...well...clearly this is not the result...as you can determine for yourself. If the intention of the mediation outcome was for the MCA BOD to "come around" and behave in a civil manner...mending fences with all stakeholders (the Collier County School District; founding families; parents; the Landlord; the state of Florida taxpayer; etc...) you can interpret for yourself why this is not happening. If they are supposed to add a new board member agreed upon in mediation, why didn't they do so...or why wasn't that even discussed at this board meeting...where other board candidates were discussed? How is one person, one vote, supposed to overcome the 4 vote alliance of this Board?

https://www.youtube.com/watch?v=8vBANEnIQqc&feature=youtu.be&fbclid=IwAR3Z0xG0UM0KFgxd0zqTAbjmPtoFwkhHO_kw7HgrOm0Jton892p4nzxke8c



MCA Board Meeting 08 08 2019
MCA Board Meeting 08 08 2019
www.youtube.com

Time will tell, Bob, but the residents of Collier County and the Florida tax payers...particularly those who believe strongly in School Choice and Charter Schools...were dealt a disservice, in my opinion, by emboldening and empowering these board members to continue their intimidation tactics, continue to thumb their noses at their "sponsor" (the Collier County School District), continue to demonize their original education partner (Hillsdale), continue to WASTE tax payer dollars on legal fees, continue to squander financial resources by poor fiscal decisions and continue to abuse the charter school rules as they exist today.

Please understand, this is NOT about closing MCA...this is about reconstituting the Board of Directors....even if it means terminating the contract for MCA...and passing the school along to another newly approved...HILLSDALE COLLEGE AFFILIATED...charter school. This is a pathway to accomplish EVERYONE's objectives. This needs to be the communicated narrative to the entire universe. This notion of anyone trying to "close the school" is utter nonsense. But, given the current laws in Florida, the current MCA Board is empowered to do ANYTHING they want...ONLY BECAUSE THEY ARE A HIGH PERFORMING SCHOOL. This is a perfect argument for the opposition of charter schools. Just wait until those who fight against charter schools get ahold of this entire scenario. This Charter School "pushes out" low performing students (a 20% student attrition rate)...this Charter School wastes tens of thousands of Florida Tax Payer dollars on attorneys fees in its efforts to skirt Florida laws...this Charter School wastes hundreds of thousands of Florida tax payer dollars by paying off its lowest interest loans and retaining its highest interest loans....this Charter School squanders opportunity to own its campus and adjacent land free and clear, by upsetting and ostracizing the BENEVOLENT landlord...the State of Florida Department of Education supported them and emboldened them by not only allowing them to get away with it historically, but also by energizing them to continue their behaviors...the State of Florida Department of Education intervened by not allowing the Collier County School District to do their duty for the good of the citizens of Collier County.

My apologies if this e-mail is a bit assertive, but I simply ask you to understand we've been dealing with this nonsense for 5 years. Just as we thought we could see light at the end of the tunnel, the state of Florida stepped in and crushed any hope for real improvement...real change...at MCA. This is truly disheartening.

345.    On August 9, 2019, **Arnn sent a letter thanking Fishbane** for his help on the MCA situation:



346.    On August 9, 2019, Mathias and E. Donalds exchanged texts about Tom Grady (who served on the Florida CRC in 2017 and was appointed to the FDOE in 2015) and Blake Gable (CEO of Barron Collier Companies, Chairman of the Board of Trustees of FGCU), including Grady meeting with Sup. Patton about the MCA situation.

347.    On August 14, 2019, Fox sent a letter to Arnold alleging "Settlement Agreement Violations" which included "Rejecting its Contract with Hillsdale

College."  Fishbane later stated at a CCSB board meeting in October 2019 that he co-authored to this letter and all future letters sent in Fox's name to MCA.

348.   On August 29, 2019, Mathias emailed Jacob Olivia at FDOE about a *pathway to reconstitute* the existing MCA Board of Directors":

> From:        Matt Mathias <▮▮▮▮▮msn.com>
> Sent:        Thursday, August 29, 2019 7:36 AM
> To:          Oliva, Jacob
> Subject:     Re: MCA E-mail #7
>
> Good morning, sir.
>
> Thank you for circling back and confirming receipt of all the e-mails.
>
> I'd also like to make sure to communicate one more point....these issues are not new to this leadership team. These behaviors and this culture have been emanating for 5 years. The notion of ignoring any "District" obligations (and in actuality, tormenting them at every turn), denigrating relationships with investors, breaking relationships with Founding Families, ignoring recommendations from the education partner, thumbing noses at critical agreements (written or otherwise), ruining the relationship with the Landlord and the city of Naples, etc.... the list goes on and on. These individuals have alienated any and all stakeholders...and all the while appearing to be accountable to none.
>
> I hope we can find a pathway to reconstitute the existing MCA Board of Directors...or replace MCA with another Classical Charter School, in partnership with Hillsdale College!!
>
> Lastly, let me offer you, or any of your designees, my help in any way....please don't hesitate to ask.
>
> Regards,
>
> Matt Mathias

349.   On August 30, 2019, Coleman spoke with FDOE about Commissioner Corcoran's demands regarding, among other things, Bileca being appointed MCA Board Chair (to which MCA never agreed at mediation).

350.   On September 4, 2019, Fishbane and Fox co-authored another letter asserting baseless breaches of the MSA focused on Hillsdale's involvement.

351.   On September 6, 2019, the MCA Board approved hiring Vickaryous as principal.

352.    On September 17-20, 2019, Durst sent a series of emails to MCA concerning an alleged failure to provide an annual FERPA Notice under 20 USC 1232(g) and 34 CFR 99.

353.    On September 24, 2019, Coleman responded to Fox's September 4, 2019 letter with a cc to the MCA Board and Arnold.  This letter was also quickly posted on Lewis' Weebly website.

354.    On October 3 2019, Bolduc emailed the MCA Board and incoming Principal Vickaryous to document how MCA Compliance Officer, Scott Moore, lied to MCA Staff and the MCA Board on the reason for developing a Violation of Established Policies Notice, and also lied about "mistakenly" sending it to CCSB.

355.    On October 4, 2019, Vickaryous official started as MCA's Principal.

356.    On October 4, 2019, E. Donalds publicly announced that Optima Foundation partnered with the Phoenix to submit a charter application to the Collier County School District for Naples Classical Academy.



357.    The application did not identify any school facility or site.  According to the charter application, Optima Foundation receives 12% of the school's gross revenues.

358.    The timing of the submission of this application did not comply with the CCSB's standard charter school application time frames that had been followed for several years.

359.    On October 7-8, 2019, Bolduc and Vickaryous attended a Captivated Health annual meeting of the membership in Massachusetts to learn more about the health insurance program for schools. Bolduc initially invited MCA interim Principal Joe Whitehead to join him, but Whitehead suggested Bolduc invite Vickaryous instead because she was starting as Principal on October 4, 2019. Vickaryous asked Lichter if joining Bolduc would be a good idea, and Lichter responded it would be a great idea.

360.    On October 10, 2019, Vickaryous emailed Mark Gaunya, Captivated Health's Founder and President stating, **"***Hello Mark, Thank you for having David and I at the annual conference this week…. Can't wait to follow up with Dean to see what is next! All the best from Naples! Pam."[19]*

361.    On October 10, 2019, E. Donalds spoke with Hillsdale about continuing to work with Fishbane:

---

[19] Vickaryous later testified under oath on April 20, 2020 that *"I have also been a firsthand witness to David Bolduc's misuse of his position as MCA's Treasurer to further his own personal financial interests, not the least of which was his acting in dual roles as an MCA board member and as a Director at Captivated Health when he took me to Boston and Orlando. On those trips, he acted as an agent of Captivated Health in procuring deals, including one with MCA, all without ever making any public disclosure of his vested financial interest during MCA's meetings*

> ○ Matt Mathias reached out to the school board and Fishbane (general counsel) says he doesn't think they should talk to school board members before the vote. On Fishbane's counsel, the school board members and superintendent won't talk to them. Matt is planning to meet with Fishbane on October 24. Erika is trying to break through so they can talk to school board members.
> ○ No press interest yet.

362.    On October 13-15, 2019, Mathias texted with E. Donalds about the status of John Bruner being the principal at Naples Classical Academy after "*what might have been a swift MCA takeover*" failed:



363.    On October 17, 2019, Fishbane and Fox co-authored another letter to
MCA about supposed violations of the MSA:



364.    On October 21, 2019, E. Donalds and Optima Foundation posted on
Facebook to drum up support for Florida Senate Bill 536, which would streamline the
application process for "high-performing" charter schools (like MCA, which she was
trying to take over) and Senate Bill 526, which would prohibit owners of charter
schools that close or are terminated from applying to open another school for five
years—both of which E. Donalds clearly was pushing for in connection with the
ongoing conspiracy against MCA:



The Optima Foundation
October 21, 2019 · 

Two bills that would have an impact on Florida charter schools have been filed for the 2020 legislative session by state Sen. Manny Diaz, R-Hialeah. S.B. 536 would streamline the application process to allow high-performing charter schools to expand in a timely fashion. It calls for a council to to review applications and make decisions within 30 days of receiving them. S.B. 526 would prohibit owners of charter schools that close or are terminated from applying to open another charter school for five years.

7

365.    On October 28-29, 2019, Bolduc invited Vickaryous to the Florida Charter School Conference because there were several service providers in attendance whose services might help MCA.  Vickaryous attended but was witnessed seeking out and exchanging several minutes of pleasantries with E. Donalds, despite Vickaryous knowing E. Donalds was involved in trying to have CCSB terminate MCA's charter and hand over the school's assets to Phoenix.

366.    The Conference was also attended by several other people involved in the effort to take over MCA and remove its Board:

**2019 Florida Charter School Conference Recap**

🕐 3 years ago    👤    🗁 Press releases, Uncategorized

The 2019 Florida Charter School Conference was a huge success. The 3-day conference, hosted by the Florida Department of Education, was packed with informative workshops and an array of opportunities to network with charter school leaders and stakeholders from around the state.

On Tuesday, former State Representative Michael Bileca moderated a lively panel discussion about the state of the charter school movement in Florida. Panelists included Erika Donalds, Chair, School Choice Movement; Jim Horne, FCSA board member and former Florida Commissioner of Education; Dr. Jesse Jackson, Superintendent, Lake Wales Charter Schools and FCSA member; Jenna Hodgens, Director, Hillsborough Charter School Office; Shawn Arnold, Arnold Law Firm; and Doug Rodriguez, President, Doral College and Somerset Jefferson turn-around team members. Sponsored by the Florida Charter School Alliance, Wednesday's Opening Session featured keynote remarks by Governor Ron DeSantis, Commissioner of Education Richard Corcoran and FCSA's Director of Governmental Affairs, Ralph Arza.

State of the Charter School Movement panelists with FCSA's Lynn Norman-Teck (center).

367.    On October 30, 2019, Coleman, Hazard, Taylor, Klaus, Doupe & Diaz, P.A., finalized its Investigative Report of Allegations Made Against Mason Classical Academy (the "Coleman Report"), which completely exonerated the MCA governing board and administration.

368.    On October 31, 2019, Vickaryous and Yormak mediated her pending whistleblower lawsuit against the CCSB with Fox and Fishbane.  Not long after, Vickaryous secretly altered the employment contracts of several MCA employees without MCA Board knowledge, including adding lump sum payout provisions that could cost MCA $350,000 should the employees exercise them.  Vickaryous also secretly increased Moore's salary to $65,000 (more than most teachers at MCA).

369.    On October 31, 2019, Mathias emailed Coykendall about supporting Naples Classical Academy's charter application:



370.    On November 16, 2019, Bolduc forwarded an email from Dean Bushey of Captivated Health to Vickaryous, stating, "*Per the attached and below, Dean Bushey has forwarded a list of data elements which Captivated Health utilizes to run a no obligation proposal for MCA. If interested to see what a Captivated Health Proposal will look like, please provide the desired data elements directly to Dean.*"

371.    Bolduc was **not** secretly working for Captivated Health in 2019 and did not even hold a Florida 2-40 Health Insurance License at the time.  Bolduc instructed Vickaryous to deal directly with Captivated Health on all data elements to offer a no obligation proposal.

372.    On December 2, 2019, Bob Harden joined Optima Foundation.[20]

373.    On December 3, 2019, Lewis emailed Erick Carter in support of Phoenix's Charter School Application, which was set for vote on the CCSB December 9, 2019 agenda.  This timeframe for approval of Phoenix's charter application was inconsistent with CCSB's standard timeframes for charter school approvals.

374.    On December 9, 2019, the CCSB Board approved Naples Classical Academy's charter application, just 65 days after it was submitted.  No charter school application has been fast tracked this quickly in Florida.  That approval gave E. Donalds and Optima Foundation the **third school** they had been pushing for:

---

[20] As noted above, Harden serves on the Board of the Foundation for Government Accountability with Bridgett Wagner, Vice President for External Relations at The Heritage Foundation and  Steamboat Institute Board member alongside Dr. Spalding, the Vice President of Washington Operations and Dean of the Van Andel Graduate School of Government for Hillsdale College in Washington D.C.



375.   Lewis a commented in a Facebook post,  *"We will remove the 'Mason' name from the school so as to REBRAND the NEW school..."*:

> to take the school down with them. Kelly Lichter named the
> school after her father - her maiden name. She said she doesn't
> want anyone else running the school with her dad's name on it -
> so be it. Whatever happens, we will rebuild - and we will remove
> the "Mason" name from the school so as to REBRAND the NEW
> school from the 5 years of bad press that have occurred due to
> this 1st round of leadership. Hopefully at the end of this process,
> we can demonstrate to the Naples community what a Classical
> Academy, founded on Civic duty, can truly stand for and
> accomplish.

376. Meanwhile, following her mediation with Fishbane, Vickaryous continued her coordinated effort to destroy MCA from the inside. Among other things, Vickaryous called for an informational after school parents meeting to discuss CCSB's stated desire to terminate MCA's Charter and asked MCA's IT Director, Fedor Steer, for access to MCA's Google Vault.[21] Vickaryous also began secretly and illegally monitoring employee and Board member emails.

377. On December 5, 2019, Carr, Riggs and Ingram emailed MCA's "Settlement Agreement Audit" required by the MSA to Vickaryous and Scott Moore. This Audit was the last item MCA needed to satisfy its obligations under the MSA.

378. On December 10, 2019, Coykendall emailed O'Toole about the Naples Classical Academy application discussion at the December 9, 2019 CCSB meeting and the timeline of events associated with the MCA dispute:

---

[21] No other employee, in the history of the school, has had access to the school's Google Vault other than Steer.

On Dec 10, 2019, at 11:24 AM, Eric Coykendall <ccoykendall@hillsdale.edu> wrote:

Katy,

Per your request, I've reviewed the following:

- Local (Florida-based) news sites
- Facebook pages for Naples Classical Academy, Mason Classical Academy, Erika Donalds, Optima Foundation, and Concerned Parents MCA
- The Naples Classical Academy application
- The websites of Mason Classical Academy, Naples Classical Academy, and thehostiletakeoverofmca.com.

I have also begun reviewing the Collier County School District site. The main thing that I want to see is the footage from yesterday's (December 9) board meeting, where representatives of Naples Classical Academy spoke on behalf of their charter and representatives of Mason Classical Academy spoke against it. At present, that footage is not available. I will continue to look for it.

Having reviewed that information, here's my best answer to your questions:

1. When Naples applied, what they said about our involvement?

NCA's application reads like the application of an affiliated school, and is simply a modified and improved version of the application that Erika Donalds filed for Treasure Coast Classical Academy and Jacksonville Classical Academy. BCSI and/or Hillsdale College are referenced frequently in the following areas:

2. What role Mason had in the new Naples application?

As a general matter, it may be impossible to sever Mason completely from the NCA project—because several members of the NCA project were introduced to classical education through the founding and early years of Mason Classical Academy, and because these same members are seeking to get that quality of education without the current MCA leadership problems. That said, Mason did not have any direct role in the NCA application.

Over the summer, the Naples Classical Academy group hoped that the Mason charter might be revoked and that they might be able to stand in the breach (see, for example, my July 15 call notes). Erika Donalds was arranging the necessary pieces in order to make this plan feasible. Shortly after Mason's mediation meeting, however, that plan was put on hold or given up. From my August 15 call with Erika until now, there has been no mention of taking over the Mason campus. All group energy has been directed towards finding a school site that fits the parameters that we gave them—a campus approximately 20 minutes NE of Mason.

3. Has Erika been successful in working on the new school without mentioning Mason?

I believe that Erika and the Naples Classical Academy group have honored our requirement that they keep Mason out of all public conversations, etc, surrounding the proposed school. There is no mention of Mason in their application, on their website, on their Facebook page, in their press releases, etc.

379.    Meanwhile, Vickaryous continued her efforts to try to destroy MCA, including spending over $13,000 of MCA's money to hand out very expensive gift bags filled with swag for every faculty & staff member, ordered through her friend's company and invoiced as "school supplies."

380.    On December 16, 2019, Fox and Fishbane co-authored another letter to MCA's counsel regarding "Mason Classical Academy, Inc. (MCA): Continuing Contractual and Legal Concerns," which was replete with baseless allegations and concluding that, *"Your chronic disregard for the consequences of your actions, your unwillingness to honor your contractual commitments, and your expressed paranoid hostility to your contractual partner, leads us to concluded that you have no interest in, cannot abide by, nor will you accept any guidance, counsel, or even simple requests to follow the law. We are therefore constrained to advise our client that under these conditions any further contractual relationship with MCA is untenable."* Once again, despite the letter being addressed only to MCA with a cc to the CCSB, Lewis posted it on her website the same day.

381.    On December 20, 2019, the last day of school before winter break, after Vickaryous & Moore sat on the very important Settlement Agreement Audit for fifteen (15) days, Moore tried to stall on delivering it to Fishbane's office by claiming to need Board approval.   Upon learning this, Bolduc immediately called Vickaryous to demand that Moore send the MCA Board confirmation that the Mediation Settlement Audit was delivered to CCSB.

382.    The Mediation Settlement Audit was delivered and almost immediately

posted to Lewis' Weebly website, along with an email exchange between Moore and

Fishbane's office on December 20, 2019 to schedule the hand delivery later in the day.

383.    In late December 2019, Vickaryous secretly and illegally downloaded

MCA documents to an outside server—eventually illegally downloading over 30,000

of the school's documents.

384.    In January 2020, Vickaryous continued the pattern of unlawful conduct

aimed at manufacturing MCA violations of state laws that could trigger the

termination of MCA's charter, including:

> A.    not providing proper 403(b) payments to some faculty & staff members;
>
> B.    moving the only laptop which contains the school's QuickBooks account to an outside vendor in Ft. Myers, exposing the school to potential fraud, waste and financial mismanagement;
>
> C.    recommending to MCA senior management that the school call the most academically achieving applicants to enroll them in MCA (which is a suggestion of illegal activity, as all new enrollment is subject to a blind lottery per Florida law); and
>
> D.    allowing Ayers to coach Middle School basketball without a Level II clearance which could be considered as an endangerment of student health, safety and welfare under Florida law.

385.    On January 10, 2020, Bolduc sent a text to Vickaryous which stated,

"*Good Morning, any feedback on the analytics for Captivated Health?*"    Vickaryous

responded same day, "*Morning, Ms. Daza is working on this, and we will provide the information requested to Dean [Bushey] today."*

386.    On February 6, 2020**,** Lichter scheduled a phone call with Vickaryous to discuss Moore's misconduct.  Lichter wanted to discuss what, if anything, Vickaryous was going to do to hold him accountable.   Unbeknownst to Lichter, Vickaryous allowed Moore to listen to this call on speakerphone.

387.    On February 7, 2020, Vickaryous emailed Dean Bushey of Captivated Health, stating, *"Hello Dean!.....Since our board will be meeting in the near future, I wanted to find out what our next steps are in the process of considering health benefits through Borislow. Please advise. Thank you! Pamela A. Vickaryous, Principal, Mason Classical Academy"*

388.    On February 7, 2020, Vickaryous emailed Bolduc asking, **"***Are you available to join me Tuesday at 2pm for a call?"* Bolduc responded via text message to Vickaryous, stating, **"***Is the Tuesday call with Dean?"* and Vickaryous confirmed that it was.  Vickaryous later testified falsely under oath that she did not invite Bolduc to the February 11, 2020 meeting in her office.

389.    On February 12, 2020**,** Lewis and Durst's Citizens Concerned for MCA Facebook Page falsely claimed that Bolduc's son received a lenient 1-day suspension for "selling" vape products at school—even suggesting that if the Donalds' child was caught "selling" vaping products at school they would be expelled, instead of suspended for 1 day, like Bolduc's son.

390.    On February 18, 2020, Vickaryous (represented by Yormak), entered into a Settlement Agreement with Corcoran (as Florida Education Commissioner), resolving the administrative complaint based on her misconduct at Manatee Middle School [Administrative Complaint Case No. 178-2606] with a letter of reprimand and two years of probation.

391.    On March 19, 2020, Durst emailed MCA Board Member Conrad Wilcomm to pressure him to take action against the MCA Board under the subject line "In too Deep":

| From: | Christopher Durst <​[redacted]​gmail.com> |
|---|---|
| Sent time: | 03/19/2020 06:10:07 PM |
| To: | Conrad Wilkomm <cwillkomm@masonacademy.com> |
| Subject: | Re In too deep!! |

Conrad

    Do yourself a favor and get out now. You're in too deep and you're going to get hurt professionally sticking with these criminals. I still believe you came into this thinking the school was being treated unfairly, but you would be a fool to still think this. You've seen too much and unfortunately I believe you've acted unethically to a certain degree.

If I convince the AG into looking at the laundry list of violations and she determines there were criminal actions.....you are the only one that has a career at risk. Do you want(at a minimum)that asterisk under your license and something listed under your 10yr discipline history?

Why do I care whether you resign or not? I would prefer to see you and Ms Foster treated less harshly than the other three. You didn't get the school into this mess....but you certainly aren't holding them accountable as a member of the Board....are you? Getting out now would be a sign that you didn't agree with their actions and maybe you can be spared some of the embarrassment that the other three deserve.

Chris Durst

392.    On March 19, 2020, former Principal Hull was appointed as MCA's Executive Director.  This was a newly created position to provide leadership, support and guidance to the School as it confronted many challenges, largely due to COVID-19.  Until this point, Vickaryous only reported to the MCA Board and could easily

hide her sabotage of the school because the Board was not involved in the day-to-day operations of the school.

393.   As Executive Director, Hull was the top administrator at MCA and Vickaryous reported to him. His first responsibility was to initiate and fulfill an online learning plan.  Hull soon realized Vickaryous was not equipped to serve as principal, had committed several breaches of trust, and exhibited insubordination and a failure to comply with School policies and Board directives.  Among other things, Hull discovered issues with a lack of hiring and significant turnover amongst the employees, outstanding public records requests, improper access and misuse of the School's Google vault (document storage), unauthorized salary increases and lump sum provisions given to certain employees, and a lack of accountability, direction or organization.

394.   The day after Hill returned (March 20, 2020), Vickaryous spent the entire day conducting 63 separate searches of MCA's computer system and live-time feeds illegally tracking Lichter and Bolduc's emails.

395.   On March 21, 2020, Vickaryous emailed Dean Bushey of Captivated Health, stating, *"Hello again Mr. Bushey!...Would you happen to have anything for the board presentation on Monday that should be posted beside our agenda? If you do, please send to my attention. Thank you, Pamela Vickaryous, Principal, Mason Classical Academy."*

396.   This email clearly refutes Vickaryous' future false whistleblower claim that *"I have also been a firsthand witness to David Bolduc's misuse of his position as MCA's Treasurer to further his own personal financial interests, not the least of which was his acting in*

*dual roles as an MCA board member and as a Director at Captivated Health when he took me*

*to Boston and Orlando. On those trips, he acted as an agent of Captivated Health in procuring*

*deals, including one with MCA, all without ever making any public disclosure of his vested*

*financial interest during MCA's meetings"*

397.   Dean Bushey responded to all with, *"Hello Ms. Vickaryous, Thank you for*

*your note and we look forward to our meeting on Monday. The attached PDF is the presentation*

*we will discuss. The Zoom video technology allows us to share a version of this presentation for*

*real-time viewing".*

398.   On Sunday, March 22, 2020, Vickaryous continued surreptitiously

monitoring Lichter's and Bolduc's emails and conducted another 31 searches of

MCA's Google Vault.

399.   Thereafter, Vickaryous permanently deleted 19 MCA documents

(including critical charter amendments) and downloaded over 3,000 hand-picked

school documents to an unknown outside IP address.

400.   MCA also later discovered (after Vickaryous's termination) that she

wiped one of her school laptops and had BitLocker encryption installed on her other

laptop, making access to its data impossible.

401.   On March 23, 2020 –Captivated Health gave a presentation at an MCA

Board meeting.  Vickaryous later claimed *"it was exactly like the presentation they went*

*through with me on February 11th."*  After the Captivated Health presentation, the MCA

Board voted, **with Bolduc absent from the meeting**, to "approve moving forward in

next steps with Captivated Health." There was no vote to approve an agreement or relationship with Captivated Health.

402.    Clearly colluding with Vickaryous on a potential basis to go after Bolduc, Fox's March 23, 2020 time entry states that he *"reviewed meeting agenda and contract of this day.".* There were only four documents posted to the MCA website in addition to the agenda: meeting call-in instructions; Captivated Health PowerPoint discussion document; Captivated Health "Illustrative" Five Year Cost Projection; and Hull Executive Director Contract. Thus, the only "contact of this day" Fox reviewed on March 23, 2020 must have been David Hull's new Executive Director contact, not a Captivated Health contract, because it did not exist.

403.    Fox's March 25, 2020 time entry states, *"Spoke with concerned citizen. Reviewed 3/26 agenda and documents. Reviewed **first 44 minutes** of 3/23 meeting."* The actual vote to move forward with next steps took place at **44:45**, or ***45 seconds after*** Fox's absurd entry that he stopped watching MCA's March 23, 2020 meeting at 44 minutes.

404.    Fox later falsely stated at the CCSB June 9, 2020 meeting that, *"We have reviewed every single [MCA] board meeting, every single committee meeting, the videos, we have kept track of the exact words used. We have examined every document provided by Mason Classical Academy. We have examined when they put things up on their agendas and when they didn't. There is absolutely no basis in truth to the claim that this is based on some sort of third-party web page [Lewis' MCA Weebly Page]"*

405.    On March 25, 2020, Mathias posted the following:



406.   On March 25, 2020, a press release was issued about Bolduc becoming
Director of the Southeast Region for Captivated Health.

407.   On March 26, 2020, Bolduc asked Jeff Wood at Tripp Scott to draft a
written possible conflict of interest disclosure, since Bolduc did not attend the March
23, 2020 MCA Board meeting.

408.   On March 26, 2020, due to COVID, MCA held its first Board meeting
by Zoom, during which Vickaryous publicly revealed MCA's highly successful virtual
learning program—and a video soon posted on Lewis' Weebly website focused on the
plan so that it could be viewed in its entirety and unobstructed.

409.   During the March 26, 2020 MCA public meeting, there was one
community comment, by Michelle Caswell: *"Because I was not able to get on last week's
board of directors meeting* [meeting was in-person only, and did not have dial-in or Zoom
instructions]….*I am not aware of whether Mr. Bolduc was present at the meeting and/or
whether he voted on the Captivated Health proposal. My questions are as follows: (1) Did
Mr. Bolduc vote on the Captivated Health agenda item? (2) Did Mr. Bolduc notify the board
prior to last week's meeting as to his employment with Captivated Health? To someone looking
from the outside, this appears to be a conflict of interest, which is alarming.*"

410.    On March 27, 2020, while Bolduc was in the midst of conferring with MCA's outside counsel, Tripp Scott, to disclose his new relationship with Captivated Health before the MCA Board voted on MCA formalizing any contractual relationship with Captivated Health, Moore sent the MCA Board a Notice of Violation of Established Policies falsely claiming Bolduc violated MCA Policy 6.0 on Conflict of Interest.

411.    Moore sent this Notice of Violation in violation of MCA's By-laws and policies, thwarting the policies and procedures requiring the MCA Board to determine the existence of a conflict of interest and the existence of a violation of the conflict-of-interest policy.  On April 1, 2020, Bolduc emailed Moore a Notice of Disclosure and asked him to send it to the Board Members, which Moore failed to do.

412.    Clearly, Bolduc was being set up.

413.    On March 31, 2020, Vickaryous emailed Lisa Byczko, Director of Captivated Health Client Service stating, *"Thank you Lisa! would you also be able to invite: Rmoore@masoracademy.com Scott Moore is our compliance officer."*

414.    On April 6, 2020, Robertson Ryan, MCA's current Health Insurance Broker, emailed Vickaryous and Daza, stating, *"Are the captive projections medically underwritten and approved by the Captive yet, or is this a projection, as the illustration states?"*

415.    On April 7, 2020, Hull prepared a draft report documenting Vickaryous's leadership failures, serious issues with staff and teachers, and other misconduct.  He provided an initial draft to Vickaryous, who became outraged and threatened to resign.

As a result, Hull prepared an alternate version of the report that was less critical of Vickaryous.

416.   That same day (April 7, 2020), Vickaryous again secretly and illegally read Lichter's emails and believed that she was planning to terminate Moore at an April 14, 2020 MCA Board meeting.  Vickaryous later testified that she also believed she *"was next."*

417.   Consequently, Vickaryous and Moore started working with Yormak to contrive supposed Whistleblower claims against MCA.

418.   On April 14, 2020, in a completely unnecessary and unauthorized response to the Coleman report exonerating MCA and its Board, Fishbane and Fox sent a letter to MCA's counsel claiming that "*Mr. Bolduc's actions stand in violation of F.S. 1002.33(26), F.S. 112.313(3) & (7), and F.S. 112.3143(3)(9). In so doing, he also violated MCA Policy 6.0 -Conflict of Interest, which addresses many of the statutory issues noted above. These represent serious statutory and ethical violations for which he is accountable as a Board Member of a public school.*"  This letter falsely accusing Bolduc of committing multiple crimes was also posted to Lewis' Weebly website.

419.   ***Fifteen minutes before*** the MCA Board meeting, Fox emailed MCA's counsel an 81-page document titled, "REPLY OF THE DISTRICT GENERAL COUNSEL TO THE COLEMAN LAW FIRM'S INVESTIGATIVE REPORT OF ALLEGATIONS MADE AGAINST MASON ACADEMY," stating in his email, *"Our client would like confirmation the attached report is **delivered to MCA's Compliance Officer**"* (emphasis added).

420.   As was the case with his original Investigative Report, Fishbane
gratuitously advocated on behalf of Hillsdale's interests in his Reply to the Coleman
Report based on a slanted, misleading version of the facts.

421.   Vickaryous and Yormak were clearly conspiring and working with
Fishbane to frame Bolduc and transform Moore's unauthorized Notice of Policy
Violation into a Whistleblower notice so Yormak could file a lawsuit against MCA
and Fishbane could use Bolduc's supposed criminal acts to try to terminate MCA's
charter and oust its Board.

422.   During the April 14, 2020 MCA Board meeting, Moore admitted that he
did not speak MCA's counsel before sending his unauthorized notice, which
Vickaryous participated, and that he based on Caswell's comment the day before.

423.   As planned, Fishbane used the charges fabricated by Moore, Vickaryous,
and Yormak in his Reply to the Coleman Report (**"...**_on March 23, 2020, a Board Meeting
was held not only to approve the contract for Mr. Hull but also another contract with a company
called Captivated Health....Mr. Bolduc moved and the Board, including Bolduc, voted to
approve the contract for which Mr. Bolduc had the inside track and knowledge and which inured
to his personal and private benefit...Mr. Bolduc his all this from the Board and the public when
he moved to approve and voted on the approval of the contract...This Reply, and the most recent
Board actions, have shown the depth of Ms. Lichter's, Mr. Hull's, Ms. Miller's, Mr. Bolduc's,
and others' capacity to deceive, mislead, terrorize, and control MCA stakeholders and the public
through their statements and actions."_).

424.    During the April 14, 2020 MCA Board meeting, Bolduc addressed
Moore's false, unauthorized Notice of Violation, explained in detail why it was false,
and stated, *"I feel this only confirms a pattern of working to undermine Mason Classical
Academy. Mr. Moore, perhaps my fellow board members feel otherwise, but I believe your March
27th written notice of alleged violation, combined with your other just described documented
actions, all with the tacit approval of Mrs. Vickaryous, have been in opposition to MCA's Pillars
of Virtue the entire time."*

425.    During the April 14, 2020 meeting, the MCA Board voted against
exploring Captivated Health any longer and, on the advice of counsel, terminated
Moore.  Vickaryous attended this meeting and was fully aware on April 14, 20220 that
MCA's current Health Insurance Broker was Robertson Rya, Florida Blue was the
school's Health Insurance company, and that MCA's Board voted not to continue
exploring Captivated Health.

426.    On April 15, 2020, Lewis and Durst's Citizens Concerned for MCA
Facebook Page updated their profile picture to a photo including Lichter and Bolduc
in prison jump suits surrounded by handcuffs:



427.   On April 17, 2020, MCA's Health Insurance Broker, Robertson Ryan, emailed Vickaryous and to confirm the renewal of MCA's insurance through  Florida Blue.

428.   On April 20, 2020, with Yormak's assistance, Vickaryous sent multiple knowingly false complaints to the Florida Commission on Ethics and various State and Federal Agencies, primarily based on false allegations involving Bolduc and the Captivated Health situation:

Following the April 14, 2020 termination of MCA's Compliance Officer, Scott Moore, after his written documentation regarding illegal conduct at MCA, it has become clear to me that MCA's Board will continue to violate Florida law, the Florida Administrative Code, MCA's Governing Charter Agreement, and the Mediation Settlement Agreement with the District School Board of Collier County unless something more drastic is done.

Since beginning my employment with MCA as principal less than 7-months ago, I have been a witness to the Board President and certain Board Members committing and conspiring to commit a multitude of Sunshine Law violations. This ranges from ordering the delay on responding to and fulfilling valid public records requests to conducting MCA business outside of a properly noticed Board Meeting (i.e. private emails and texts) to deciding matters not on any agenda at Board Meetings in a choreographed fashion with other board members (i.e. firing Scott Moore) to even secretly removing staff's access to the email server so those completing public records requests would not find responsive documents. The list goes on and on. I have also been a firsthand witness to David Bolduc's misuse of his position as MCA's Treasurer to further his own personal financial interests, not the least of which was his acting in dual roles in that capacity and as a Director at Captivated Health when he took me to Boston and Orlando. On those trips, he acted as an agent of Captivated Health in procuring deals, including one with MCA, all without ever making any public disclosure of his vested financial interest during MCA's meetings. What's more, the Board President has directed me to assist in the thwarting of the very job Mr. Moore was tasked to do to keep MCA in compliance – and when I would have none of it, she set ~~your~~ focus on me. I have delayed implementing Captivated Health because of the illegality of the deal the board president and certain board members struck up behind closed doors.

429.    On April 24, 2020, Lewis and Durst's Citizens Concerned for MCA Facebook Page posted Fishbane's Reply to the Coleman Report and the following comment:



**Citizens Concerned for MCA**
April 24, 2020 · 

-Response to Coleman Report -

What is the antonym of 'exonerate' Kelly Mason Lichter, David Bolduc, Laura Miller Mlinarich, Conrad Willkomm, Pearline Foster, Melissa McMurray, Jana Greer, Tim Mason, & Guenther Doerr?

List of acceptable antonyms: indict, impeach, and convict.

Oddly enough, there are a few people on the list of names above that are intimately familiar with those antonyms and are likely to understand their meaning again if the Florida Attorney General agrees to this weeks request to investigate the crime and corruption occurring at MCA.

430.   On April 24, 2020 , Lewis and Durst's Citizens Concerned for MCA

Facebook Page also posted:



431.   On April 27, 2020, Lewis and Durst's Citizens Concerned for MCA

Facebook Page posted:

> **Citizens Concerned for MCA**
> April 27, 2020 · ⊙
>
> It doesn't take an accounting degree to see how the
> MCA Board's actions have started MCA down the
> slippery slope towards dissolution!  The Finance Report
> from today's Finance Committee meeting tells you all
> you need to know....
>
> 9/6/2020 - 911 students enrolled
> 4/27/2020 - 882 students FTE on revised budget
> Results - $907,165 shortfall in funding revenue
>
> PLUS
>
> $267,000 so far in legal fees as of 1/20/2020 with
> another $200,000 in still sitting in lawyer's bank
> accounts.  IF the MCA Board doesn't spend in excess of
> the remaining balances (this budget adjustment doesn't
> account for Feb, Mar, & Apr legal fees that have yet to
> be billed), that's $467,000 in legal fees for the school
> year.
>
> EQUALS - $487,597 deficit instead of a $353,992 surplus.
> The difference of $841,589 would have been even worse
> if the Board had not spent $407,000 less in instruction
> and ESE expenses.
>
> THIS IS YOUR BOARD - Spend ~$467,000 on worthless
> activities (lawsuits to defend the honor of people that
> have no honor), spend $407,000 less on your child's
> education (including 40% less on ESE programs), and
> further erode the school's viability by chasing away
> current and prospective students with the anti-social
> (and often illegal) behavior of the leadership of this
> school.
>
> As Nicholas Lichter promised, he and Kelly Mason
> Lichter will let the school fail rather than give in to a
> change in leadership.  Probably the only promise he's
> ever kept!

432.    On the afternoon of April 28, 2020, shortly before a scheduled MCA Board meeting to discuss Vickaryous' complaints, Vickaryous emailed the Board a "Principal's Report" and misleadingly asked for it to be "upload[ed] in advance of the meeting," when she had already secretly posted this Principal's Report on MCA's website, which Lichter quickly removed minutes later.

433.    Lichter notified Vickaryous that, "*The board meeting is an emergency meeting and there was no principal report on the agenda.  Posting your "principal report" on the website is a clear violation of policy B. 3.0.  Thank you!*"

434.    In clear coordination with her co-conspirators, the document Vickaryous improperly posted—which was not a "Principal's Report," but a false narrative alleging illegal activity at MCA and endangerment of the health, safety, and welfare of children—was almost immediately posted on Lewis and Durst's Citizens Concerned for MCA Facebook Page:[22]

---

[22] Fox later tried to cover Lewis and Durst, claiming on May 28, 2020, that: *"Sometime on the 28th, a memorandum was posted on the webpage. The memorandum was from Principal Vickaryous to the board chair and was dated April 20 (eight days earlier). After appearing briefly on the MCA meeting page, it was taken down for unknown reasons—presumably to prevent the public from seeing it"……"A screenshot of this webpage (as it existed before it was altered) may be found at* https://mca-info.weebly.com/. *This same website details a fairly extensive practice at MCA over the last year of altering its meeting webpages to reflect its revisionist history."*



435.    Lewis and Durst's Citizens Concerned for MCA Facebook Page also

posted:



436.    On April 28, 2020, Fox's friend, Heidi Jinkins, used her three-minute

public comment at the MCA Board meeting to read Vickaryous' "Principal Report,"

followed by a comment by Durst: *"Based on the corroboration of the ongoing accusations*

*against multiple board members of both unethical and illegal activity, I would expect you*

*to….tender your resignations. Your departure is not going to save you from the numerous actions*

*that are about to be taken against you as individuals."*

437.    On April 28, 2020, Durst also sent another email extorting Willkomm by

false claiming he was talking to the Attorney General:

| | |
|---|---|
| **From:** | Christopher Durst ▬▬▬▬@gmail.com> |
| **Sent time:** | 04/28/2020 05:11:47 PM |
| **To:** | Conrad Willkomm <cwillkomm@masonacademy.com> |
| **Subject:** | RE: Your options.... |

I hate to say I told you so, but I did. I have already reached out to the Attorney General again today to update her on the new information we received.

If you want me to coordinate a discussion with her, let me know. I'm going on the assumption (and hope) that you have less to answer for than the others and helping save the school from these people may help you.

Chris

438. On April 29, 2020, Yormak emailed MCA's counsel regarding interviewing Vickaryous about her complaints and requested that "counsel for CCPS [**Fishbane**] be in attendance."

439. On April 29, 2020, MCA scheduled another Emergency Meeting to address Stanley Walkeitz's supposed complaint (released by Vickaryous), as well as Vickaryous's alteration of numerous MCA employee contracts which could cost the school $350,000.

440. On April 29, 2020, Vickaryous emailed the MCA Board and Senior Administration, stating, *"Mrs. Lichter, I would like to add a Principal's Report according to Policy 3.0."*

441. Lichter responded, *"This is an emergency meeting, and we will not be addressing any principal or officer reports. Also, I should bring to your attention that yesterday you violated Policy B. 15.0, Principal Report. The 'principal report' that you posted on the MCA website does not adhere to MCA's policies regarding the Principal Report. Thank you!"*

442.    Lisa McCluggage of Tripp Scott also responded: *"Good Afternoon Principal Vickaryous: Please be advised that tomorrow's Board Meeting is an Emergency Board Meeting, and thus, Policy 3.0 doesn't apply.  Further, pursuant to Policy 15.0 governing Principal's Reports (not Policy 3.0), Principal Reports are required once a month which require the listed elements of enrollment data and trend analysis, staff changes, summary of school discipline and outcome and parameters.  You have already posted your monthly "Principal's Report" at yesterday's meeting (in violation of 15.0). Moreover, the posted agenda for tomorrow's Emergency Board Meeting identifies one of the items you posted on your "Principal's Report" yesterday. Accordingly, you are not authorized to post a Principal's Report for tomorrow's Emergency Board Meeting, and your request is denied. Thank you."*

443.    **Thirty-one (31) minutes prior to the MCA Board Meeting** on April 30, 2020, Vickaryous emailed the MCA Board, stating, *"This Principal Report is being submitted to the MCA Board for its consideration at the Emergency Meeting on 4/30/20, an agenda item of which relates to the contract of Assistant Principal Whitehead."*  Vickaryous' email contained five (5) attachments, including fraudulent, unapproved MCA Meeting Minutes from March 23, 2020 (which did not show Bolduc was absent), other documents accusing MCA of financial mismanagement; employment contracts which Vickaryous altered without Board knowledge (Moore's conveniently missing), and other documents attempting to frame MCA Board members for mismanagement and illegal conduct.

444.    Of course, these same documents were posted to Lewis' Weebly website that same day and eventually used by Fishbane as supposed proof of violations of law to try to terminate MCA's charter.

445.    On April 30, 2020, MCA maintenance employee Walkeiwitz admitted that Vickaryous prompted him to write his so-called health and safety report eight days prior—although the "report" was dated April 13, 2020, the day before Moore was terminated.

446.    On April 30, 2020, the MCA Board voted unanimously to suspend Vickaryous with pay.

447.    After Vickaryous was suspended, she invited someone into the school after hours to try to access Steer's school computer but was unsuccessful.

448.    On May 1, 2020, in what appears to be a reward for an MCA sabotage job well done, Yormak filed a Notice of Settlement in Vickaryous's Whistleblower lawsuit against CCSB.

449.    On May 1, 2020, Lewis and Durst's Citizens Concerned for MCA Facebook Page posted:



**Citizens Concerned for MCA**
May 1, 2020 · 🌐

****Kelly Mason Lichter Will Close the School******

The documents that have surfaced over the last few days are irrefutable proof that there has been an attempt at the criminal misappropriation of taxpayer funds at the school. A "Golden Parachute" was created with the intent to illegally pay almost $900,000 to David Hull, Joe Whitehead, Gina Smith and potentially Pamela Vickaryous. This would be a lump sum pre-payment of the remainder of the salary that would have been paid to each employee if they completed their multi-year contracts. Furthermore, the clause that was inserted into each contract, allegedly at the direction of Kelly Mason Lichter, would also allow the employees to keep all of the funds they were paid in the event they were fired or the school was terminated.

Those of you that have supported Kelly Mason Lichter and the current leadership team at Mason Classical Academy should be aware that there is a very good chance that Kelly Mason Lichter will do everything in her power to close MCA before allowing anyone else to operate the school. Both Kelly and Nicholas Lichter have made statements in the past that they will make sure the school fails before ever allowing anyone but Kelly to run the school.

It appears that it is inevitable that there will be major changes in leadership at the school at a minimum. Those parents that have supported Kelly in the past and those parents that have remained silent, I would hope that you make every effort to let Kelly Mason Lichter know that you do not want the MCA Board to further damage or attempt to close MCA. One would hope that it wouldn't be as simple as Kelly and the remaining Board members taking a vote to close the school, but if it were that simple, wouldn't you want the opportunity to dissuade Kelly from taking that action?

⭕❤ 8                                    1 Comment

450.    On May 6, 2020, Lewis and Durst used Vickaryous's actions to publicly

attack MCA on their Citizens Concerned for MCA Facebook page:



**Citizens Concerned for MCA**
May 6, 2020 · 🌐

MCA finally called the police!!!

UPDATE: I guess Kelly decided it looked bad that they
had not called the police for the attempted theft of over
$900,000 and had Joe try and report the real crimes.
Unfortunately, Joe failed to divulge to the Naples PD
that he was one of the accused. How typical. They told
Joe to go away. We will make sure to update Naples PD
with the whole story.

Yes, Kelly Lichter ordered Joe Whitehead to finally call
the Naples Police Department yesterday, after the FDLE
told him they couldn't help him. Why wouldn't the FDLE
help MCA with the attempted theft of almost $900,000
by a handful of employees?????

Oh, Joe wasn't calling police for the real crime, especially
a crime in which he was an accomplice. He was calling
to file a complaint about Pam Vickaryous deleting some
files from the school database. It is a real problem
though if Pam deleted incredibly important files that can
never be recovered. It could possibly cripple the
attempt to modify the MCA charter if important
information is gone forever.

Wait.....What? All those files that the MCA Board spent
an hour obsessing over with Fedor Steer in the Monday
Board Meeting are not gone? Uhhhhhh...nope. Luckily
the database is backed up on a daily basis. But that
scripted Board Meeting was very interesting. It was
good enough that the MCA Drama Club aka the MCA
Board may get to re-enact Monday's drama on the
stand. It won't be Law & Order, but the Collier County
Courthouse is a more than appropriate venue for these
criminals. Don't worry, Nicholas Lichter can help them
all acclimatize to their new surroundings afterwards.
And Joe Whitehead might be able to make friends with
his old buddies from the corrections department.....from
the inside. If the prison has a pool to clean, David Hull
will feel right at home. Kelly, Laura, Gina and Bolduc
might be lucky enough to be housed in the same
women's facility.....so they can all remain friends. What
is it that Nick always says????? STAY TUNED.......

😮👍😡 10                                    6 Comments

451.    Durst later commented, "**there's much more to come**":



452.   On May 9, 2020, Lewis and Durst's Citizens Concerned for MCA

Facebook Page posted:



453.   On May 11, 2020 - Lewis and Durst's Citizens Concerned for MCA

Facebook Page posted:



454.   In response, Robyn Matthias (now posting under "Robyn Lynn") posted:



455.   On May 14, 2020, Vickaryous testified falsely under oath that Bolduc

secretly worked for Captivated Health:

```
 1       A.    So I'm sitting here, right here before you,
 2  telling you that his own words is that there's a high
 3  likelihood that he would be partnering and managing
 4  Captivated Health in Florida.
 5       Q.    Right.  So I understand what his words are.
 6  What I'm trying to find out is what your statement is.
 7  That's why we're here for your statement.
 8       A.    Okay.
 9       Q.    Okay.  So you're saying that it clicked to you
10  in January of 2020 that he had a financial interest in
11  Captivated?
12       A.    Yes.
```

456.    On May 16, 2020, Lewis and Durst's Citizens Concerned for MCA

Facebook Page posted:



**Citizens Concerned for MCA**
May 16, 2020 · ⊙

Poor Nick & Kelly. They're chief concern is not the children, not the school, not any of the parents. Their chief concern is that their cash cow, Mason Classical Academy, will be taken from their criminal hands.

They thought they would make millions screwing other schools like they did MCA, but the other school in Osceola county found out very quickly that this group had no idea what they were doing, further proving that it was all the OTHER parents at MCA that helped build the school. Not the #LichterCrimeFamily.

Here's an excerpt from todays post from Kelly, ranting about the hundreds of people that oppose them. Of course, anyone that is against them must be part of the growing conspiracy. However, Hull, Whitehead, & Smith the closest people to the #LichterCrimeFamily and their business partners are the ones that are accused of trying to embezzle almost $900,000 from taxpayers.

Question: Who did you plagiarize this time?

The individuals named here are Robert Norton (Hillsdale's GC), Brian Carpenter (Hillsdale's charter school board trainer), the unhinged Chris Durst (the one who threatened the MCA Board), Todd Allen (the attorney that represents ANYONE that does not like MCA including Byron and Erika Donalds), and Joe Baird (keyboard superhero and the individual being sued for tortious interference).

Why is Hillsdale still involved when they parted ways with MCA months ago? Is Chris Durst on the payroll to help destroy MCA even though his children do not attend the school? How long has Todd Allen been working on the destruction of MCA and how much is he being paid? If he is not being paid, what is his motivation? Do these individuals suffer from MCA derangement syndrome? Have they taken things too far? How soon will they all be exposed? Stay tuned...

 5                                    3 Comments

457.    On May 18, 2020, O'Toole emailed Arnn, King, and Norton about Fishbane's Reply to the Coleman Report and Arnn's desire to help Fishbane in the never-ending war against MCA and its Board:

| From: | kotoole@hillsdale.edu |
| To: | George King; Robert Norton; Larry P. Arnn |
| Subject: | Fishbane strikes again |
| Date: | Monday, May 18, 2020 7:59:14 PM |
| Attachments: | jon_fishbanes_response_to_coleman_report_pages_1-15.pdf |
| | ATT00001.htm |

Sending this so we can discuss. Fishbane's response to the Coleman report (authored by MCA to respond to his original investigation) is excellent. LPA thinks we should call Fishbane to thank him, and discuss how we can help him. Hillsdale is discussed in some detail in Part 6 of the report.

https://mca-info.weebly.com/uploads/1/2/6/1/126137162/jon_fishbanes_response_to_coleman_report_pages_1-15.pdf

458.    On May 20, 2020, Durst sent an email from his new "Rogue Castaways" email address to Borislow Insurance, Bolduc's employer, and program manager for Captivated Health, asking for Bolduc's hire date.

459.    On May 27, 2020, Durst published on his Rogue Castaways website, Episode 2 – "A Felon, an Insurance Salesman and a Priest Walk Into a Bar…"  This post focused on Vickaryous and included Durst's statement:

On Tuesday March 28th 2020, Mason Classical Academy had an Emergency Board Meeting. The agenda for the meeting only included two items: An item titled 'Investigation' and another called – 'Closed attorney-client Session'.

Just prior to the meeting, on the school website, there was a document posted in an area that is typically used to post the agenda and documents discussed during the board meeting. The document posted on that day was only 'up' on the website for a few minutes before it was deleted altogether. Luckily, a savvy parent had downloaded the document and circulated it to other parents before it was deleted..

This document was a letter from the current Principal of MCA, Pamela Vickaryous, to the Board Chair, Kelly Mason Lichter. In the letter she accused the Board Members of committing a 'multitude' of Sunshine Law violations and goes on to detail their actions. Mrs. Vickaryous also states that she will no longer stay silent about the crimes and she notifies Mrs. Lichter that she has already reported these activities to the Florida Office of the Inspector General, the Florida Department of Education, and the Florida Commission on Ethics.

Along with the letter, Mrs. Vickaryous included two emails...one from a teacher detailing what she called offensive and demeaning behavior directed at her by current Executive Director and former Principal, David Hull. The second was the email from the Director of Maintenance at MCA, Stanley Walkiewicz. His email, which we discussed at length in episode 1 of this podcast detailed many concerns about the deteriorating conditions of the school building and his belief that the building would not currently pass a health or fire Marshall inspection.

One paragraph from Mrs. Vickaryous' letter is particularly shocking. It read:

Since the beginning of my employment with MCA as principal less than 7-months ago, I have been a witness to you and other Board Members committing and conspiring to commit a multitude of Sunshine Law violations. This ranges from you ordering the delay on responding to and fulfilling valid public records requests to conducting MCA business outside of a properly noticed Board Meeting to deciding matters not on any agenda at Board Meetings in a choreographed fashion with other board members. To even secretly removing staff's access to the email server so those completing public records requests would not find responsive documents.

Pamela Vickaryous continues: I have also been a firsthand witness to David Bolduc's misuse of his position as MCA's Treasurer to further his own personal financial interests, not the least of which was his acting in dual roles as an MCA board member and as a Director of Captivated Health when he took me to boston and Orlando. On those trips, he acted as an agent of Captivated Health in procuring deals, including one with MCA, all without ever making any public disclosure of his vested interest during MCA's meetings. What's more, you have directed me to assist in the thwarting of the very job Mr. Moore was tasked to do to keep MCA in compliance – and when I would have none of it, you set your focus on me.

I have delayed implementing Captivated Health because of the illegality of the deal you and the other board members struck behind closed doors.

Wow.....The fact that the letter to Mrs Lichter and emails from staff members was posted to the website and almost immediately taken down, leads us to believe that Mrs. Vickaryous posted the documents with the intention of sharing them with the public and that a board member or the Executive Director, Mr. Hull subsequently removed them from the page to prevent the details of the contents from going public.

Once the meeting was underway, Kelly Lichter did some quick housekeeping and then stated that there had been an accusation by the Principal, Pam Vickaryous and that she believes that the Board should engage their regular attorney to investigate the accusations. Board member, Conrad Willkomm asked what specifically would the attorney be investigating. Kelly restated that they would be investigating the 'accusations' and would not provide further details. A motion was made, then seconded, unanimous approval....again.

There weren't many people that had heard about this Captivated Health issue before this meeting, but there were a few that noticed when the school took steps to make the change in health insurance providers. What was this all about and how could it have gotten past everyone unnoticed that David Bolduc was involved with this company.

Some of the details are still a little fuzzy, but apparently in the Fall of 2019, Pam
Vickaryous started to explore a change to a different health insurance provider at the
request of David Bolduc. We don't know the exact details of the conversations , but
by October 2019, it was evident that Pamela Vickaryous and David Bolduc had
visited the offices of Captivated Health in both Orlando and Boston.

The supposed goal of the visits was to understand the features and benefits of this
new plan and how it would be administered if the Board chose to make the change.
According to Pam Vickaryous, it appeared to her that David Bolduc was already
acting as if he was an agent of the company all the way back in October.

Things progressed with Captivated Health and fast forward to March 2020 when
David Bolduc put the vote to approve the change to Captivated Health on the Board
Meeting for March 23, 2020.  Additionally, a teleconference was organized with two
representatives of the company to present the details of the change to the Board.
When the actual meeting was held, only Kelly Lichter and Laura Mlinarich showed up
for the meeting in person.  Pearline Foster attended the meeting via telephone.
Conrad Willkomm did not attend the meeting and neither did David Bolduc.

That's strange......Bolduc put the health insurance item on the agenda and marked it
to be an item in which the board would be required to vote.  He was supposed to be
the insurance 'expert'.  Why wasn't he there?  Who would be the representative of
the board most qualified to answer other board member's questions?  This was
troubling....

Bolduc immediately defended himself by stating that the school attorney had told
him that it would be sunshine law violation to discuss the conflict with other board
members outside a board meeting.  THIS WAS TRUE.  But you have to listen closely
to what he was saying.  He could not discuss the violation with the Board....that
would have been an improper meeting.  HOWEVER, he absolutely could have sent a
message to every board member either (a) stating the facts of the conflict OR (b)
simply telling them there's a potential conflict and there should not be a vote before
Mr. Bolduc disclosed the details.  That was all that was needed to stop the vote on
the change in healthcare plan.

Mr. Bolduc was trying to mislead everyone into believing that he couldn't
communicate the issue to the board legally, so he decided to wait.  Unfortunately,
this deception wasn't a very good attempt at covering up his scheme, as there was a
board meeting just three days later when the parent pointed out the conflict and
Bolduc declined to comment, even though there was a board comment session after
the parent pointed out the issue.

This deception did not get past Willkomm either, who pointed out that he had every
opportunity to disclose the conflict at the meeting on the 26th and he failed to do so.

Bolduc did reveal that he had disclosed the possibility of a relationship to the
attorney, but he failed to reveal that he had actually talked to the attorney back in
EARLY February.  Of course, Kelly Lichter chimed in and said the school attorney said
that it wasn't a violation because Bolduc didn't vote.  Which was incorrect or a lie...
because the failure to disclose the relationship is absolutely a violation.

460.   On May 28, 2020, Fox and Fishbane co-authored a letter to MCA's counsel with a cc to CCSB, titled, "Mason Classical Academy, Inc. (MCA): Continuing Contractual Concerns," which was based on the Captivated Health situation and parroted the same false accusations Vickaryous made.  Lewis published this letter on her Weebly website the same day.

461.   When asked during a deposition how she came to possess Fox's May 28, 2020 letter, Lewis testified that she made a records request to CCSB days "before" May 28, 2020.  However, in response to a public records request for all of Lewis's public records requests received by CCSB between April 15, 2020 and June 15, 2020, CCSB confirmed it had "*No Responsive Documents*."

462.   Clearly, Fishbane was continuing to coordinate with Lewis and Durst to publish false accusations and information detrimental to MCA and its Board as part of the plan to take over MCA and oust its Board, also facilitating Yormak's lawsuits against MCA.

463.   On May 29, 2020, Vickaryous filed a false complaint with the U.S. Department of Education regarding the Captivated Health issue.

464.   On June 5, 2020, the MCA Board terminated Vickaryous for "cause" based on gross misconduct, dishonesty, fraud, gross insubordination in violation of state and/or federal law and as outlined in the Employee Handbook, and failure to comply with reasonable and lawful documented directives of the Board or written policies contained in the School's Employee Handbook.

465.  **Within an hour**, Yormak filed a wrongful termination lawsuit on behalf of Vickaryous against MCA, claiming Vickaryous was terminated because she was whistleblower [Collier County Case No. 2020-CA-1791]   Notably, whistleblower protections do not apply to employees who "disclose information known by the employee to be false." § 112.3187(4)(c), *Fla. Stat.*  Vickaryous later amended to assert civil rights claims and joined Lichter and Bolduc as Defendants, leading to removal. [*See* M.D. Fla. Case No. 21-cv-903-JLB-NPM].

466.  On June 6, 2020, Durst published *ROGUECASTAWAYS: HOSTILE TAKEOVER • EPISODE 3, Unchained* on his Rogue Castaways website and stated the following about an email Lichter sent to the MCA community:

> The email in and of itself is a racist act....even though it is unlikely that the author would ever recognize it as such.
>
> Her single mindedness and pure hatred towards people have blinded her to recognizing what she has done by writing this email.  This is the true nature of racism.  The failure to even understand what you are doing by putting your egotistic desires above all else, even another person's humanity.

467.  At a Regular School Board meeting on June 9, 2020, under the guise of an "Informational Item" without public comment, CCSB addressed the "*Mediation Settlement Agreement violations, multiple letters concerning same and other matters sent by outside counsel to MCA's counsel, General Counsel's Reply to the Coleman Report, and MCA*

*Board and employment events since March 20, 2020, and related matters."* [23]  The last item

on the Agenda was a "Review of MCA Issues" and states:

> *FLORIDA STATUTE: 1002.33*
>
> *EXECUTIVE SUMMARY: General Counsel will review with the Board for informational and discussion purposes multiple areas of concern involving Mason Classical Academy.   These will include, but not be limited to, Mediation Settlement Agreement violations, multiple letters concerning same and other matters sent by outside counsel to MCA's counsel, General Counsel's Reply to the Coleman Report, and MCA Board and employment events since March 20, 2020, and related matters.*
>
> *LEGAL APPROVAL: The item was reviewed and approved by Jon Fishbane, District General Counsel.*

468.     At Fishbane's invitation, Fox made a presentation to the CCSB, during

which he falsely accused MCA and its Board of violating its policies, the MSA,

Florida's ethics laws, Florida's government in the Sunshine laws, Florida's public

records laws, the Constitution of the State of Florida, and the **Constitution of the**

**United States**, and stated, "This has to do with the governance. And the personal

attacks that have been launched against members of this board, *Mr. Fishbane* and

*myself*, in all my years of practice, I have never seen such unprofessionalism, not ever!"

---

[23] In response to a public records request for documents demonstrating how CCSB obtained the documents attached to the Meeting Agenda, it responded that one was mailed anonymously via USPS and the other four were "pulled" from the MCA website.  This is false because those four documents were never posted to MCA's website.  They must have been provided by Vickaryous and Yormak or downloaded from Lewis and Durst's website and Facebook page, the true intent of which is to serve as a repository of otherwise non-public information so it could be used by Fishbane in the never-ending quest to terminate and/or takeover MCA.

469.   In response to a question from CCSB Chair Lucarelli, Fishbane recommended *"to place MCA on 'probationary warning status' and ask the board to review that recommendation carefully."[24]*

470.   "Probationary warning status" has not existed under the operative charter school *Florida Statutes* since 2012.

471.   On June 10, 2020, Lewis and Durst's Citizens Concerned for MCA Facebook Page posted:



---

[24] During the meeting, CCSB Board Member Jen Mitchell stated, " It sure would be helpful if our State Board of Education, whether it's the Commissioner or our faithful Chancellor, whomever, would weigh in here, given the serious nature of these concerns and we are talking about potential contracts of interest, contracts involving taxpayer money, potential activity that may, or may not be legal, so I just am just hopeful that the state decides that they want to weigh in here.  The Commissioner [Corcoran] has worked really hard to promote charter schools and so I just think there's a real potential here to be a real black eye on them and so I would just, I would hope that that's something that they would see fit to weigh in on. That's really all I have to say."  Board member Jory Westbury stated, "Yes, I have some concerns. First of all, Mr. Fox, thank you that was very enlightening. And I am troubled by the information provided, there are, there's lots of information that I am trying to digest, but when I look at the "Principal's Report" and I read something loke this... 'board chair after receiving public records corroborating what she perceived to be the impending hostile takeover of MCA, and new Classical School Application approval with CCPS, directed Principal to protect staff friendly and sympathetic to her interests through lucrative contracts' There is a lot  of information on this, and I think that it warrants, I wouldn't say the word investigation, but I can't think of another word....and maybe purse at the next meeting,"

472.    Durst personally commented on this post:

> **Christopher Durst**
> **Nancy Duvall** And when will you
> stop being so gullible Nancy? Even
> the most stupid supporters of Kelly
> Lichter and David Hull now realize
> that these criminals are only in this
> for the money. They have no interest
> in your children other than the
> money that each MCA child
> represents in the 'school' bank
> accounts. Get a clue!

473.    Durst and Lewis were fully aware of their role in the ongoing conspiracy to fabricate crimes charges against Bolduc being used to place MCA on "Probationary Warning Status."

474.    At the July 28, 2020 CCSB meeting, Fishbane also falsely claimed that Bolduc submitted a letter of resignation, resigned from the MCA Board, and then voted himself back on the board.  Board member Westbury claimed that she was seeing on social media and receiving emails that MCA people are being mistreated.  Fishbane responded with "*correct.*"  Fishbane also falsely claimed that MCA was not complying with the MSA, MCA's Charter Agreement, and Florida Law.

475.    On July 28, 2020, even after Tripp Scott attorney Thomas Strenberg spoke and advised CCSB that "probationary warning status" did not exist, CCSB voted unanimously to place MCA on "Probationary Warning Status" and to require MCA to respond to all alleged violations and show compliance by November 6, 2020.  Several school board members also specifically referenced termination of the Charter Agreement with MCA if MCA failed to comply with this "Probationary Warning Status." based on supposed breaches of the MSA.  Fishbane requested and advised

that the School Board keep MCA on "Probationary Warning Status" for "each violation" on a rolling basis.

476.    **At that same meeting on July 28, 2020, CCSB approved its Vickaryous whistleblower lawsuit settlement and executed the written Settlement Agreement with Vickaryous,** which provided for a payment of $25,000 and that it would not affect Vickaryous's employment with any charter school:

8.    Matters Settled: This Agreement settles any and all claims and matters that the parties or any of them had related to the Lawsuit, whatsoever from the beginning of time with no party having any further duties or obligations whatsoever related to the Lawsuit to the other parties after the complete performance of this Settlement Agreement. Vickaryous will not be reinstated as part of the terms and condition as part of this Settlement. Moreover, nothing herein or in the General Release shall release or otherwise affect PAMELA VICKARYOUS' employment with any charter school under a charter granted by THE SCHOOL BOARD OF COLLIER COUNTY.



477.  On July 29, 2020, Lewis and Durst's Citizens Concerned for MCA

Facebook Page posted:



**Citizens Concerned for MCA**
July 29, 2020 ·

I can't imagine that Jana Greer is used to hearing people agree with her, but it probably wasn't in the manner she was anticipating when Jen Mitchell agreed that she too was tired of dealing with the MCA issues.

No one was sure what Jana was trying to accomplish by marching up there and accusing Mr Fox and Mr Fishbane of lying and then attacking the CCPS Board, but it certainly wasn't going to help MCA by her being a jerk.  Reminding everyone about the attempt by David Bolduc to slip his sweetheart insurance deal past taxpayers didn't  make her case any stronger.  Someone should have offered her a little of the advice she attempts to sell to others on making friends and influencing others.

It was clear from the tone of every member of the CCPS Board that they are all tired of Kelly Lichter and her shenanigans.  They were clear on what the issues were and they were clear in their intent..."Fix it or we'll terminate your charter and allow the administrative judge decide."

I thinks it's also clear that the leadership group at MCA is incapable of adhering to even the most simple rules.....so the outcome here seems inevitable at this point.

These people have caused irreparable damage to the school choice initiative throughout the State of Florida.....AND have thrown away an opportunity for a great educational  option for children in this area.

Good Work Criminals!!!

478.   On August 6, 2020, Fishbane sent a letter to MCA which, among other items, placed MCA on "Probationary Warning Status" through March 1, 2021 and specifically requested twenty (20) action items and documents, some of which are not contemplated within the Agreement, the Charter Agreement, or *Florida Statutes*.

479.    On August 15, 2020, Lewis and Durst's Citizens Concerned for MCA Facebook Page posted:



480.    On August 19, 2020, Yormak filed Motion to Reinstate Moore in his lawsuit against MCA. This Motion was based on numerous false statements and evidence fabricated by the conspirators, also incorporating nearly verbatim statements from Fishbane's letters and reports posted on Lewis and Durst's website and Facebook page, as well as Vickaryous' fraudulent March 23, 2020 Meeting Minutes:

> *Afterwards, the Board voted 4-0 to approve the contract with Captivated Health. (See Ex. 6 - Defendant's March 23, 2020 Meeting Minutes). No board member asked about Mr. Bolduc's relationship with Captivated Health. (Id.). Nor was any formal disclosure made to the Board that Mr. Bolduc had been working for at least five months with MCA staff to get the contract for his company. (Id.). Mr. Bolduc never sought to recuse himself. (Id.). Just two days after the vote - March 25, 2020 - Captivated Health released the following to the media: Managing Captivated Health's Tampa-based team will be David Bolduc, who will serve as Director for the Southeast Region. David has deep experience in underwriting (American International Group), risk analysis and*

*captive management (Strategic Risk Solutions) and reinsurance. David holds a Bachelor of Arts in Business Economics from Brown University. He also holds an Associate in Risk Management (ARM), Associate in Reinsurance (ARe) and is a Chartered Financial Analyst (CFA). David also brings first-hand experience with educational institutions, having served as a member of the Gulfview Middle School Advisory Committee, and Board Member of Mason Classical Academy. Accordingly, not only was Mr. Bolduc publicly disclosed to be Captivated Health's Director for the Southeast Region, Captivated Health's press release explicitly noted that he is a Board Member of the Defendant. Mr. Bolduc hid this from the Defendant's Board and never disclosed it prior to the Board's vote approving the Captivated Health contract. (See Ex. 6 - Defendant's March 23, 2020 Meeting Minutes). Additionally, Mr. Bolduc still failed to disclose to the Board his now publicly announced relationship with Captivated Health, despite there being a March 26, 2020 Board Meeting that he attended and notwithstanding the fact that a community member broached the subject during that public meeting. (See Ex. 8 - Defendant's March 26, 2020 Meeting Minutes; Ex. 9 - Moore's March 27, 2020 Whistleblower Letter). Moore Disclosed What Were Actual Violations of Florida Law. The Charter Agreement between the Defendant and CCPS incorporated Florida ethics statutes pertinent to public officials. F.S. § 1002.33(26)(a) and (b) provide the following:*

*(26) STANDARDS OF CONDUCT AND FINANCIAL DISCLOSURE.-*

*(a)     A member of a governing board of a charter school, including a charter school operated by a private entity, is subject to ss. 112.313(2), (3), (7), and (12)     and 112.3143(3).*

*(b)     A member of a governing board of a charter school operated by a municipality or other public entity is subject to s. 112.3145, which relates to the disclosure of financial interests.*

*In this context, F.S. §112.313(3) provides in pertinent part the following:*

*(3) DOING BUSINESS WITH ONE'S AGENCY.-No employee of an agency acting in his or her official capacity as a purchasing agent, or public officer acting in his or her official capacity, shall either directly or indirectly purchase, rent, or lease any realty, goods, or services for his or her own agency from any*

195

*business entity of which the officer or employee or the officer's or employee's spouse or child is an officer, partner, director, or proprietor or in which such officer or employee or the officer's or employee's spouse or child, or any combination of them, has a material interest. Nor shall a public officer or employee, acting in a private capacity, rent, lease, or sell any realty, goods, or services to the officer's or employee's own agency, if he or she is a state officer or employee, or to any political subdivision or any agency thereof, if he or she is serving as an officer or employee of that political subdivision.*

*And F.S. § 112.313(7) provides in pertinent part:*

*(7)    CONFLICTING    EMPLOYMENT    OR CONTRACTUAL RELATIONSHIP*

*(a) No public officer or employee of an agency shall have or hold any employment or contractual relationship with any business entity or any agency which is subject to the regulation of, or is doing business with, an agency of which he or she is an officer or employee, excluding those organizations and their officers who, when acting in their official capacity, enter into or negotiate a collective bargaining contract with the state or any municipality, county, or other political subdivision of the state; nor shall an officer or employee of an agency have or hold any*

*employment or contractual relationship that will create a continuing or frequently recurring conflict between his or her private interests and the performance of his or her public duties or that would impede the full and faithful discharge of his or her public duties.*

*Finally, F.S. § 112.3143, which pertains to voting conflicts, provides in pertinent part the following:*

*3)(a) No county, municipal, or other local public officer shall vote in an official capacity upon any measure which would inure to his or her special private gain or loss; which he or she knows would inure to the special private gain or loss of any principal by whom he or she is retained or to the parent organization or subsidiary*

*of a corporate principal by which he or she is retained, other than an agency as defined in s. 112.312(2); or which he or she knows would inure to the special private gain or loss of a relative or business associate of the public officer. Such public officer shall,*

*prior to the vote being taken, publicly state to the assembly the
nature of the officer's interest in the matter from which he or she is
abstaining from voting and, within 15 days after the vote occurs,
disclose the nature of his or her interest as a public record in a
memorandum filed with the person responsible for recording the
minutes of the meeting, who shall incorporate the memorandum in
the minutes.*

*It is undisputed that on March 23, 2020, the Defendant
conducted a board meeting to approve a contract with a company
named Captivated Health.*

*Nevertheless, the Board heard a lengthy presentation from
a Captivated Health representative. No board member asked about
Mr. Bolduc' s relationship to Captivated Health. Nor was any
formal disclosure made to the board that Mr. Bolduc had been
working for months with the Defendant's staff to get the contract
for his company. Mr. Bolduc never sought to recuse himself.*

*On March 25, 2020, Captivated Health issued its press
release to the media. Accordingly, not only is Mr. Bolduc
Captivated Health's Director for the Southeast Region, it is
expressly noted that he is a Board Member of the Defendant.
Mr. Bolduc hid this from the Defendant's Board when he moved to
approve and voted on approval of the Captivated Health contract.
Without much doubt, Mr. Bolduc's actions were a violation of F.S.
§ 1002.33(26), § 112.313(3) and (7), and § 112.3143(3)(9)."*

481.    On September 3, 2020, a Final Order was entered in Vickaryous's FDOE

Administrative Complaint case (Case No. 178-2606), approving the Settlement

Agreement reached with Corcoran.

482.    On September 8, 2020, Lewis and Durst's Citizens Concerned for MCA

Facebook Page posted:



**Citizens Concerned for MCA**
September 8, 2020 ·

New month.....New MCA law firm!!!

Yep....they're hiring another one. The plan by the board to destroy the school rather than give up their stranglehold continues. Nick Lichter promised that this is what they would do if anyone tried to remove Kelly from her throne and I guess they're following through with his threats.

Understand, they don't care about you...they don't care about your children...they ONLY care about MONEY and their perceived POWER.

You want to know the biggest enemy to School Choice is in the entire nation??? The Board of Mason Classical Academy!!!!

If it really is this easy for these uneducated self-destructive criminals to get a stranglehold on a taxpayer funded school like MCA, imagine what damage could be done by intelligent criminals.

I think it is pretty safe to say that the Board of MCA will have re-allocated more than a million dollars meant for educational programs for your children to multiple law firms in the State of Florida in 2019 and 2020.

WHY? GREED - PRIDE - WRATH - ENVY - LUST

Wow!!!- Five of the Seven Deadly Sins. No surprise there.

It's already hard enough to convince nay-sayers that School Choice is a great educational option, but these fools have done nothing but validate the argument of the anti-school choice movement.

#napleslogcabin #RealRICO #LichterCrimeFamily

483.    On September 17, 2020, Lewis and Durst used their Citizens Concerned for MCA Facebook Page to promote Naples Classical Academy:



484.    On October 13, 2020, Lewis and Durst's Citizens Concerned for MCA

Facebook Page also posted:



485.   On October 15, 2020, Lewis and Durst used the Citizens Concerned for

MCA Facebook Page to defend their co-conspirators, Baird, E. Donalds, Mathias, and

Hillsdale:



**Citizens Concerned for MCA**
October 18, 2020 · ⊙

If there is any doubt that the MCA Board is engaging in
unethical and criminal activities.....you only have to look
at the money they are dumping into the Joe Baird
lawsuit.  They are already aware that they will get ZERO
money from Mr Baird.

If that is the case, then why do they continue to sue?

Well, that's simple.  They continue to try and dig up
information to use against Erika Donalds and Matt
Mathias.

How do we know?  They are sending their attorneys to
Michigan next month to spend three days in a
deposition of the Hillsdale College leadership.  This will
cost tens of thousands of dollars.  What possible reason
could they have to question Hillsdale about Joe Baird?
NONE!

Joe Baird has no real connection to Hillsdale.....but MCA
continues to spend the money ear-marked for teacher
raises, money set aside for children's educational
materials, money meant for a fence, money that could
have been used to put hot water in the second floor
bathrooms, money that should have been spent on the
school.

Hundreds of thousands of dollars for what has been
proven to be a Board of criminals and idiots!

A 'principal/executive director' with mental issues, a vice
principal who tried to steal thousands in unearned salary
from the school and an uneducated girlfriend of the
principal/executive director who is in charge of directing
real professionally trained teachers in how to be a
teacher!

Guess what criminals.....THEY are coming for you!!!!

486.   On October 24, 2020, Baird emailed Lewis regarding "Eviction Coming"

and attached a statement from MCA's landlord while telling Lewis "**don't post to

your Weebly site just yet**":





487.    On October 26, 2020, Lewis and Durst posted the materials Baird provided to their Citizens Concerned for MCA Facebook Page:



488. On October 26, 2020, MCA filed a lawsuit against the CCSB for declaratory and injunctive relief based on CCSB's assertions that MCA violated the MSA and the CCSB's placement of MCA on "Probationary Warning Status." [Collier County Circuit Court Case No. 20-CA-003427]

489. On November 3, 2020, Lewis and Durst's Citizens Concerned for MCA Facebook Page posted:



490.  On November 3, 2020, Durst commented on a Facebook post:

> Christopher Durst
> I wonder how the Hillsdale
> College depositions went
> today? Word on the street is
> that the Hillsdale people
> were confused as the entire
> deposition was questions
> about Erika Donalds and
> nothing about Joe Baird.
> #ErikaOwnsKelly

491.  On December 7, 2020, Hillsdale College sued Lichter for allegedly

tortiously interfering with its business relationships with charter school affiliates

[Collier County Circuit Court Case No. **20-CA-3892**].    A copy of Hillsdale's

December 9, 2020 Complaint is attached hereto as **Exhibit E**. This retaliatory lawsuit is also based on Lichter's protected activities.

492.    ***Two days later***, on December 9, 2020, FDOE filed an Ethics Complaint against Bolduc that was based entirely on Vickaryous's false ethics complaint (filed 8 months prior) [**Case No. 20-235**], a copy of which is attached hereto as **Exhibit F.**

493.    On January 5, 2021, Fox acting at Fishbane's direction filed an Answer and Counterclaim/Cross-Claim on behalf of the CCSB in Collier County Circuit Court Case No. 20-CA-003427, a copy of which is attached hereto as **Exhibit G**, that added Lichter and Bolduc as cross-defendants and asserted claims against them individually seeking their removal as MCA Governing Board Members.

WHEREFORE the School Board respectfully requests that this Court enter judgment in its

favor and declare that:

1.    MCA is a "public school" in Collier County, Florida;

2.    The School Board has the constitutional delegated responsibilities to "supervise,

operate and control" MCA;

3.    The School Board is not limited to merely granting or terminating MCA's charter

under its constitutional duties;

19

4.    The School Board has broad powers, considerable latitude, and wide discretion

short of termination to require MCA to honor its charter and follow Florida Law;

5.    The School Board may enforce MCA's charter and the Florida Statutes in a court

of law;

6.    The School Board may enforce the Settlement Agreement in a court of law;

7.    MCA must abide by the terms of the Settlement Agreement;

8.    MCA must fully and faithfully carry out the corrective actions the School Board

has required of it as outlined in the "IR" and the four official letters sent to MCA;

9.    Multiple actions taken by LICHTER and BOLDUC were ultra vires;

10.    Multiple actions taken by LICHTER must rotate off and leave the MCA Board;

11.    BOLDUC must rotate off and leave the MCA Board; and

12.    and, such other relief as is just and proper.

494.    **CCSB never voted to approve filing these claims against MCA,**

**Lichter, and Bolduc.**

495.    On April 30, 2021, Vickaryous again perjured herself:

```
 2      Q.    Okay.  Do you recall a board meeting
 3   scheduled for March 26th, 2020?
 4      A.    Yes, I do.
 5      Q.    Were you present at that meeting?
 6      A.    Yes, I was.
 7      Q.    And what happened at the meeting?
 8      A.    A community member informed the board of a
 9   conflict of interest with David Bolduc now being -- it
10   was announced the day before that he was employed with
11   Captivated Health.
12      Q.    Was this known to you previously?
13      A.    I had no idea.
```

496.  On October 29, 2021, Mathias sued Lichter, her husband, Joseph Whitehead, and Jana Greer for defamation [Collier County Circuit Court Case No. **21-CA-002572**].  A copy of Mathias's Complaint is attached hereto as **Exhibit H**. Among other things, Mathias based this lawsuit on a December 3, 2019 criminal complaint Lichter filed over what she believed to be an illegal audio recording.

497.  On March 22, 2022, the Florida Commission on Ethics found there was **no probable cause** for Vickaryous's Complaint falsely accusing Bolduc of violating section 112.313, *Florida Statutes*, in connection with the Captivated Health situation:

BEFORE THE
STATE OF FLORIDA
COMMISSION ON ETHICS

MAR 0 9 2022

COMMISSION ON ETHICS

In re DAVID BOLDUC,                    )
                                       )
        Respondent.                    )        Complaint Nos. 20-062 & 20-235
_____                  )                      (Consolidated)
                                       )

**PUBLIC REPORT**

Based on the preliminary investigation of these complaints and the recommendation of the Commission's Advocate, the Commission on Ethics finds there is no probable cause to believe the Respondent, as the Board Treasurer for Mason Classical Academy, violated Section 112.313(3), Florida Statutes, by doing business with Mason Classical Academy, or violated Section 112.313(7)(a), Florida Statutes, by having a conflicting employment or contractual relationship, as alleged in the complaints.

Accordingly, these complaints are dismissed with the issuance of this public report.

ORDERED by the State of Florida Commission on Ethics meeting in executive session on March 4, 2022.

March 9, 2022

Date

John Grant

## V.    DEFENDANTS'
## PATTERN OF CRIMINAL MISCONDUCT

498.    Through the above-described conduct, Defendants conducted or participated in, directly or indirectly, individually and in agreement and conspiracy with their co-Defendants and others, a pattern of racketeering and criminal activity consisting of the following acts, at least two of which had the same or similar intents, results, accomplices, victims, and/or methods of commission, and were not isolated incidents:

A.    Defendants engaged in "racketeering" activity under 18 U.S.C. § 1961(1)(A) by committing acts or threats involving bribery or extortion under Florida law, punishable by imprisonment for more than one year, "including violations of §§ 836.05 (extortion), 838.16 (commercial bribery), and 838.022 (official misconduct), *Florida Statutes*;

B.    Defendants engaged in violations of 18 U.S.C. §1343 by, having devised or intending to devise a scheme or artifice to defraud, or to obtain money or property by means of fraud or fraudulent pretenses, representations, or promises, transmitting or causing to be transmitted by means of wire in interstate commerce writings for the purpose of executing a scheme or artifice to defraud, through material misrepresentations or omissions of material facts;

C.    Defendants engaged in violations of § 815.04, *Fla. Stat.*, including: (1) rendering data or supporting documentation residing or existing internal or external to a computer, computer system, computer network, or electronic device unavailable; (2) destroying data or supporting documentation that resided or existed internal or external to a computer, computer system, computer network, or electronic device; and/or (3) taking confidential data, programs, or supporting documentation that resided or existed internal or external to a computer, computer system, computer network, or electronic device;

D.    Defendants engaged in violations of §815.06, *Fla. Stat.*, including: (1) accessing or causing to be accessed a computer, computer system, computer network, or electronic device with knowledge that such access was unauthorized or the manner of use exceeded authorization; (2) destroying, taking, injuring, or damaging equipment or supplies used or intended to be used in a computer, computer system, computer network, or electronic device; (3) destroying, injuring, or damaging any computer, computer system, computer network, or electronic device; and/or (4) engaging in surveillance of an individual by accessing any inherent feature or component of a computer, computer system, computer network, or electronic device, including accessing the data or information of a computer, computer system, computer network, or electronic device that is stored by a third party;

E.    Defendants engaged in violations of §817.569, *Fla. Stat.*, including: (1) using public records or information obtainable only through public records to facilitate or further the commission of a crime; and/or (2) providing false information that becomes part of a public record to facilitate or further the commission of a crime;

F.    Defendants engaged in violations of §837.02, *Fla. Stat.*, including making false statements not believed to be true under oath in an official proceeding concerning material matters;

G.    Defendants engaged in violations of §837.06, *Fla. Stat.*, including knowingly making a false statement in writing with the intent to mislead a public servant in the performance of his or her official duty;

H.    Defendants engaged in violations of §838.022, *Fla. Stat.*, including: knowingly and intentionally obtaining a benefit for any person or causing unlawful harm to another, by falsifying, or causing another person to falsify, any official record or official document; or concealing, covering up, destroying, mutilating, or altering any official record or official document, except as authorized by law or contract, or causing another person to perform such an act;

I.    Defendants engaged in violations of §877.13, *Fla. Stat.*, including: (1) knowingly disrupting or interfering with the lawful administration or functions of an educational institution or activity on school board property in this state; (2) knowingly advising, counseling, or instructing a school employee to disrupt any school or school board function, activity on school board property, or classroom; and/or (3) conspiring to engage in any school campus or school function disruption which interferes with the educational processes or with the orderly conduct of a school campus, school, or school board function or activity on school board property;

J.    Defendants engaged in violations of §877.01, *Fla. Stat.*, including: (1) giving, promising, offering or conspiring to give, promise, or offer, to anyone any bribe, money, goods, presents, reward, or any valuable thing whatsoever with the intent and purpose of stirring up strife and litigation; or with intent and purpose of assisting, seeking out, influencing, or advising others to bring suit or seek professional legal services or advice; and/or (2) soliciting, receiving or accepting or agreeing to receive or accept, or conspiring to receive or accept, any bribe, money, goods, presents, reward, or any valuable thing whatsoever, or any promise, contract, or agreement whatsoever, with the intent and purpose of stirring up strife and litigation; or with the intent or purpose of seeking out, influencing, assisting, or advising others to bring suit, or seek professional legal services, counsel, or advice;

K.    Defendants engaged in violations of §784.048, *Fla. Stat.*, including: engaging in a course of conduct directed at a specific person that causes substantial emotional distress and serves no legitimate purpose and/or engaging in a course of conduct to communicate or cause to be communicated words, images, or language by or through electronic means directed at or pertaining that causes substantial emotional distress and serves no legitimate purposes.

499.  Defendants tacitly or explicitly agreed to participate in a common scheme and unlawful ongoing conspiracy, in furtherance of which they recommended,

210

agreed to, and participated in committing the criminal acts alleged in paragraph 498

that caused significant harm to Plaintiffs as a result.

## VI.    PLAINTIFFS' FUNDAMENTAL
## RIGHTS, PRIVILEGES & LIBERTIES

500.    Plaintiffs each have and hold clearly established fundamental rights,

privileges, and liberties protected by the United States Constitution, including:

    a.    Freedom of speech, assembly, and association, and to
          petition the government for the redress of grievances under
          the First Amendment;

    b.    Equal protection and due process under the Fourteenth
          Amendment

    c.    Freedom from unreasonable searches and seizures under the
          Fourth Amendment; and

    d.    Liberty, including the right to protect their reputations.

501.    Plaintiffs' First Amendment rights, including the rights to speak on

matters of public concern, petition for redress of grievances, assemble and associate,

influencing governmental action, and access to the courts are among the most precious

of the liberties safeguarded by the Bill of Rights and high in the hierarchy of First

Amendment values.

502.    Plaintiffs also have and hold the fundamental right to protect their

reputations from unjustified invasion and wrongful hurt, which "reflects no more than

our basic concept of the essential dignity and worth of every human being—a concept

at the root of any decent system of ordered liberty."[25]  Society prizes the dignity of every person and has "has a pervasive and strong interest in preventing and redressing attacks upon reputation."[26]

503.   Plaintiffs' rights to protect their reputations are fundamental and protected by the Constitution because they are "deeply rooted in our history and tradition" and essential to our Nation's "scheme of ordered liberty."  *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228, 2246 (2022).

504.   MCA, as the operator of a charter school, and Lichter and Bolduc, as members of a charter school's Governing Board, have duties and obligations to uphold the U.S. Constitution and laws of the United States, and therefore occupy an office, trust, or place of confidence.  Accordingly, Plaintiffs also have corresponding federal rights to be free from interference with the performance of their duties.

505.   MCA also has a legally protected interest in its Charter, Charter Agreement, and right to operate a "high-performing" charter school.

506.   Plaintiffs also have and hold the right to be free from retaliation for exercising all of their foregoing fundamental rights, privileges, and liberties.

---

[25] *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22 (1990) (quoting *Rosenblatt v. Baer*, 383 U.S. 75, 86 and 92-93 (1966)); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341 (1974); *Holter v. HLCY T.V., Inc.*, 366 So.2d 445, 451 (Fla. 2d DCA 1978);
[26] *Milkovich*, 497 U.S. at 22 (*citing Rosenblatt*, 383 U.S. at 86); *Seropian v. Forman*, 652 So.2d 490, 493 (Fla. 4th DCA 1995); *Layne v. Tribune Co.*, 108 Fla. 177, 146 So. 234, 238 (1933); *Pullum v. Johnson*, 647 So.2d 254, 256 (Fla. 1st DCA 1994).

507.    Plaintiffs' protected rights, privileges, and liberties outweigh any alleged interests Defendants may claim to have had in violating, limiting or restricting Plaintiffs' rights.

508.    Defendants tacitly or explicitly agreed to participate in a common scheme and unlawful ongoing conspiracy, in furtherance of which they recommended, agreed to, and participated in committing the above-described acts that violated Plaintiffs' above listed civil rights and caused significant harm as a result.

## COUNT I
## [42 U.S.C. §1983—Violation Of MCA's Civil Rights]

509.    MCA re-alleges paragraphs 1 through 508 as if fully set forth herein.

510.    This is an action under 42 U.S.C. §1983 by MCA against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, for violating and depriving MCA of its fundamental rights, privileges, and liberty acting under color of state law.

511.    MCA has and holds protected rights, privileges, and liberties under the U.S. Constitution and Federal law.

512.    Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, violated MCA's protected rights, privileges, and liberties by:

    a.    Defaming MCA while engaged in unauthorized, unlawful, and unjustifiable actions seeking to terminate MCA's Charter and Charter Agreement and interfering with MCA's operations;

b.    Defaming MCA while engaged in unauthorized, unlawful, and unjustifiable actions seeking to force the removal of MCA's Governing Board members and interfering with MCA's operations;

c.    Defaming MCA while engaged in unauthorized, unlawful, and unjustifiable actions to prevent MCA from exercising its rights to freedom of assembly and association;

d.    unlawfully searching MCA's computer systems and data without a warrant;

e.    unlawfully damaging MCA's property, including its computer systems and data, without probable cause or due process; and

f.    unlawfully depriving MCA of its protected rights, privileges, and liberties without due process of law.

513.   At all times material, Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, acted under color of state law and/or were jointly engaged or acted in conspiracy with state officials.

514.   Defendants' adversely impacted MCA's protected rights, privileges, and liberties.

515.   Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, conspired with each other and others to violate MCA's protected rights, privileges and liberties, and each of them engaged in overt acts in furtherance of their conspiracy that directly injured MCA and deprived it of having and exercising its protected rights, privileges, and immunities.

516.    Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, are jointly and severally liable for all harms flowing from their unlawful ongoing conspiracy, including the acts of each conspirator and all acts committed in furtherance of the conspiracy, regardless of whether such acts were specifically approved or known to the other conspirators.

517.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, MCA suffered and is entitled to recover damages, including damages for economic harm and harm to its reputation, all of which are continuing in nature and will continue into the future, in amounts to be proven at trial.

518.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, MCA suffered and incurred significant damages, including costs, attorneys' fees, expenses, time, energy and resources that could have been expended on the school and its students, and other valuable efforts to protect and defend against Defendants' unlawful misconduct and conspiracy; all of which MCA is entitled to recover under the wrongful act doctrine.

519.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, and in addition to the quantifiable monetary damages MCA suffered, MCA has also suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law if Defendants are not enjoined from violating MCA's fundamental rights, privileges and liberties.

520.   Defendants' unlawful conduct and conspiracy is ongoing and likely to continue and cause additional harm and injuries to MCA if the Defendants' unlawful conduct persists

521.   The public interest, most notably the interests of the students and staff of MCA and their parents, would be served by the entry of an injunction prohibiting Defendants' unlawful conduct and conspiracy.

522.   Based upon the facts alleged herein and to be established at trial, MCA has the clear legal right to the entry of an injunction prohibiting Defendants from violating MCA's rights, privileges, and liberties.

523.   Defendants' actions were unjustified, willful, intentional, malicious, and conducted in bad faith and with the intent to harm MCA.  Accordingly, Defendants' actions are not privileged and they entitle MCA to recover punitive damages.

**WHEREFORE,** Plaintiff, MCA, demands judgment against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, awarding:

A.   Compensatory damages in appropriate amounts to be established at trial;

B.   Special damages under the wrongful act doctrine in appropriate amounts to be established at trial;

C.   Punitive Damages in appropriate amounts to be established at trial;

D.   A declaration that Defendants' acts and practices violate 42 U.S.C. §1983;

E.   Injunctive relief prohibiting Defendants from violating
42 U.S.C. §1983;

F.   Reasonable attorneys' fees and costs associated with this
action; and

G.   Such other and further relief as the Court deems just and
appropriate to protect plaintiff's rights and interests.

## COUNT II
### [42 U.S.C. §1983—Retaliation Against MCA]

524.   MCA re-alleges paragraphs 1 through 508 as if fully set forth herein.

525.   This is an action under 42 U.S.C. §1983 by MCA against Defendants,

Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias,

Phoenix, Durst, Lewis, Vickaryous, and Yormak, for retaliating against MCA for

exercising its fundamental rights, privileges, and liberties while acting under color of

state law.

526.   MCA has and holds fundamental rights, privileges, and liberty under the

U.S. Constitution and federal law.

527.   MCA exercised its protected rights, privileges, and liberties by:

a.   Operating Mason Classical Academy;

b.   Assembling and associating, including with its Governing
Board Members;

c.   Refusing to terminate its Governing Board Members;

d.   Speaking about matters of public concern associated with
MCA and the actions taken by Defendants to try to
terminate MCA's Charter and Charter Agreement and force
the removal of MCA's Governing Board members;

e.   Filing a Complaint with FDOE against CCSB's
investigation, as set forth in Exhibit D;

> f.     Filing a lawsuit against CCSB to contest its placement of MCA on "Probationary Warning Status" [Collier County Circuit Court Case No 20-CA-3427]; and
>
> g.     Discharging and performing the duties of MCA's office.

528.    Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, took adverse action and retaliated against MCA for exercising its protected rights, privileges, and liberties by:

> a.     Unlawfully trying and conspiring to terminate MCA's Charter and Charter Agreement;
>
> b.     Unlawfully trying and conspiring to force the removal of MCA's Governing Board;
>
> c.     Committing and conspiring to commit crimes against MCA intended to terminate its Charter and Charter Agreement and to force the removal of its Governing Board;
>
> d.     Unlawfully searching MCA's computer systems without a warrant;
>
> e.     Unlawfully damaging and destroying MCA's computer systems and data without probable cause or due process;
>
> f.     Defaming MCA;
>
> g.     Filing meritless lawsuits and claims against MCA and its Governing Board Members, including those set forth in Exhibits E, G, and H; and
>
> h.     Filing false and baseless complaints against MCA, including those set forth in Exhibit F.

529.    Defendants singled out MCA for discriminatory treatment on an irrational and wholly arbitrary basis and were motivated by spite and without any legitimate objective.

530.    Defendants' retaliatory actions adversely affected MCA's protected activities.

531.    Defendants' retaliatory actions against MCA were causally connected to MCA's protected activities.

532.    Defendants' acts amounted to a threat, coercion, or intimidation through intimating that punishment, sanctions, or adverse regulatory action would immediately follow.

533.    Defendants' retaliatory actions would likely deter a person of ordinary firmness from exercising the fundamental rights, privileges, and liberties MCA exercised.

534.    At all times material, Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, acted under color of state law and/or were jointly engaged or acted in conspiracy with state officials.

535.    Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, unlawfully deprived MCA of its protected rights, privileges, and liberties without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

536.    Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, conspired with each other and others to retaliate against MCA and each of them engaged in overt

acts in furtherance of their conspiracy that directly injured MCA and deprived it of having and exercising its protected rights, privileges, and immunities.

537.    Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, are jointly and severally liable for all harms flowing from their unlawful ongoing conspiracy, including the acts of each conspirator and all acts committed in furtherance of the conspiracy, regardless of whether such acts were specifically approved or known to the other conspirators.

538.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, MCA suffered and is entitled to recover damages, including damages for economic harm and harm to its reputation, all of which are continuing in nature and will continue into the future, in amounts to be proven at trial.

539.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, MCA suffered and incurred significant damages, including costs, attorneys' fees, expenses, time, energy and resources that could have been expended on the school and its students, and other valuable efforts to protect and defend against Defendants' unlawful misconduct and conspiracy; all of which MCA is entitled to recover under the wrongful act doctrine.

540.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, and in addition to the quantifiable monetary damages MCA suffered, MCA has also suffered and will continue to suffer irreparable harm for which there is

no adequate remedy at law if Defendants are not enjoined from violating MCA's fundamental rights, privileges and liberties.

541. Defendants' unlawful conduct and conspiracy is ongoing and likely to continue and cause additional harm and injuries to MCA if the Defendants' unlawful conduct persists

542. The public interest, most notably the interests of the students and staff of MCA and their parents, would be served by the entry of an injunction prohibiting Defendants' unlawful conduct and conspiracy.

543. Based upon the facts alleged herein and to be established at trial, MCA has the clear legal right to the entry of an injunction prohibiting Defendants from violating MCA's rights, privileges, and liberties.

544. Defendants' actions were unjustified, willful, intentional, malicious, and conducted in bad faith and with the intent to harm MCA. Accordingly, Defendants' actions are not privileged and they entitle MCA to recover punitive damages.

**WHEREFORE,** Plaintiff, MCA, demands judgment against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, awarding:

A.   Compensatory damages in appropriate amounts to be established at trial;

B.   Special damages in appropriate amounts to be established at trial;

C.   Punitive damages in appropriate amounts to be established at trial

D.   A declaration that Defendants' acts and practices violate 42 U.S.C. §1983;

E.  Injunctive relief prohibiting Defendants from violating 42 U.S.C. §1983;

F.  Mandatory injunctive relief requiring Defendants to dismiss their retaliatory claims and lawsuits filed against MCA;

G.  Reasonable attorneys' fees and costs associated with this action; and

H.  Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## COUNT III
### [42 U.S.C. §1983—Violation Of Lichter's Civil Rights]

545.  Lichter re-alleges paragraphs 1 through 508 as if fully set forth herein.

546.  This is an action under 42 U.S.C. §1983 by Lichter against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, for violating and depriving her of her fundamental rights, privileges, and liberty acting under color of state law.

547.  Lichter has and holds protected rights, privileges, and liberties under the U.S. Constitution and Federal law.

548.  Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, violated Lichter's protected rights, privileges, and liberties by:

a.  Defaming Lichter while engaged in unauthorized, unlawful, and unjustifiable actions seeking to force her removal from MCA's Governing Board and interfering with her right to perform her duties;

b.  Defaming Lichter while engaged in unauthorized, unlawful, and unjustifiable actions seeking to prevent her

from exercising her rights to freedom of assembly and association;

c.  Unlawfully searching Lichter's emails without a warrant; and

d.  Unlawfully depriving Lichter of her protected rights, privileges, and liberties without due process of law.

549.  At all times material, Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, acted under color of state law and/or were jointly engaged or acted in conspiracy with state officials.

550.  Defendants' adversely impacted Lichter's protected rights, privileges, and liberties.

551.  Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, conspired with each other and others to violate Lichter's protected rights, privileges and liberties, and each of them engaged in overt acts in furtherance of their conspiracy that directly injured Lichter and deprived her of having and exercising her protected rights, privileges, and immunities.

552.  Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, are jointly and severally liable for all harms flowing from their unlawful ongoing conspiracy, including the acts of each conspirator and all acts committed in furtherance of the

conspiracy, regardless of whether such acts were specifically approved or known to the other conspirators.

553.   As a direct and proximate result of Defendants' unlawful conduct and conspiracy, Lichter suffered and is entitled to recover damages, including damages for economic harm, harm to her reputation, emotional distress, mental anguish, humiliation, and loss of enjoyment of life, all of which are continuing in nature and will continue into the future, in amounts to be proven at trial.

554.   As a direct and proximate result of Defendants' unlawful conduct and conspiracy, Lichter suffered and incurred significant damages, including costs, attorneys' fees, expenses, time, energy and resources, and other valuable efforts to protect and defend against Defendants' unlawful misconduct and conspiracy; all of which Lichter is entitled to recover under the wrongful act doctrine.

555.   As a direct and proximate result of Defendants' unlawful conduct and conspiracy, and in addition to the quantifiable monetary damages Lichter suffered, Lichter has also suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law if Defendants are not enjoined from violating Lichter's fundamental rights, privileges and liberties.

556.   Defendants' unlawful conduct and conspiracy is ongoing and likely to continue and cause additional harm and injuries to Lichter if the Defendants' unlawful conduct persists

557. The public interest, most notably the interests of the students and staff of MCA and their parents, would be served by the entry of an injunction prohibiting Defendants' unlawful conduct and conspiracy.

558. Based upon the facts alleged herein and to be established at trial, Lichter has the clear legal right to the entry of an injunction prohibiting Defendants from violating Lichter's rights, privileges, and liberties.

559. Defendants' actions were unjustified, willful, intentional, malicious, and conducted in bad faith and with the intent to harm Lichter. Accordingly, Defendants' actions are not privileged and they entitle Lichter to recover punitive damages.

**WHEREFORE,** Plaintiff, Lichter, demands judgment against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, awarding:

A.  Compensatory damages in appropriate amounts to be established at trial;

B.  Special damages under the wrongful act doctrine in appropriate amounts to be established at trial;

C.  Punitive Damages in appropriate amounts to be established at trial;

D.  A declaration that Defendants' acts and practices violate 42 U.S.C. §1983;

E.  Injunctive relief prohibiting Defendants from violating 42 U.S.C. §1983;

F.  Reasonable attorneys' fees and costs associated with this action; and

G.  Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## COUNT IV
### [42 U.S.C. §1983—Retaliation Against Lichter]

560.    Lichter re-alleges paragraphs 1 through 508 as if fully set forth herein.

561.    This is an action under 42 U.S.C. §1983 by Lichter against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, for retaliating against Lichter for exercising her fundamental rights, privileges, and liberties while acting under color of state law.

562.    Lichter has and holds fundamental rights, privileges, and liberty under the U.S. Constitution and federal law.

563.    Lichter exercised her protected rights, privileges, and liberties by:

a.    Assembling and associating with others on MCA's Governing Board;

b.    Refusing to resign as an MCA Governing Board Member;

c.    Speaking about matters of public concern associated with MCA and the actions taken by Defendants to try to terminate MCA's Charter and Charter Agreement and force the removal of MCA's Governing Board members;

d.    Filing a Complaint with FDOE against CCSB, as set forth in Exhibit D;

e.    Approving the filing a lawsuit against CCSB to contest its placement of MCA on "Probationary Warning Status" [Collier County Circuit Court Case No 20-CA-3427]; and

f.    Discharging and performing the duties of her office.

564.    Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, took adverse

action and retaliated against Lichter for exercising her protected rights, privileges, and liberties by:

     a.    Unlawfully trying and conspiring to force her removal as an MCA Governing Board Member;

     b.    Engaging in and conspiring to engage in crimes against Lichter intended to force her removal as a member of MCA's Governing Board;

     c.    Unlawfully searching her emails without a warrant;

     d.    Defaming Lichter; and

     e.    Filing meritless lawsuits and claims against Lichter, including those set forth in Exhibits E, G, and H and paragraph 465.

565. Defendants singled out Lichter for discriminatory treatment on an irrational and wholly arbitrary basis and were motivated by spite and without any legitimate objective.

566. Defendants' retaliatory actions adversely affected Lichter's protected activities.

567. Defendants' retaliatory actions against Lichter were causally connected to her protected activities.

568. Defendants' acts amounted to a threat, coercion, or intimidation through intimating that punishment, sanctions, or adverse regulatory action would immediately follow.

569. Defendants' retaliatory actions would likely deter a person of ordinary firmness from exercising the fundamental rights, privileges, and liberties Lichter exercised.

570.    At all times material, Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, acted under color of state law and/or were jointly engaged or acted in conspiracy with state officials.

571.    Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, unlawfully deprived Lichter of her protected rights, privileges, and liberties without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

572.    Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, conspired with each other and others to retaliate against Lichter, and each of them engaged in overt acts in furtherance of their conspiracy that directly injured Lichter and deprived her of having and exercising her protected rights, privileges, and immunities.

573.    Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, are jointly and severally liable for all harms flowing from their unlawful ongoing conspiracy, including the acts of each conspirator and all acts committed in furtherance of the conspiracy, regardless of whether such acts were specifically approved or known to the other conspirators.

574.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, Lichter suffered and is entitled to recover damages, including damages for economic harm and harm to her reputation, emotional distress, mental anguish,

humiliation, and loss of enjoyment of life, all of which are continuing in nature and will continue into the future, in amounts to be proven at trial.

575.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, Lichter suffered and incurred significant damages, including costs, attorneys' fees, expenses, time, energy and resources, and other valuable efforts to protect and defend against Defendants' unlawful retaliation and conspiracy; all of which Lichter is entitled to recover under the wrongful act doctrine.

576.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, and in addition to the quantifiable monetary damages Lichter suffered, she has also suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law if Defendants are not enjoined from violating Lichter's fundamental rights, privileges and liberties.

577.    Defendants' unlawful conduct and conspiracy is ongoing and likely to continue and cause additional harm and injuries to Lichter if the Defendants' unlawful conduct persists

578.    The public interest, most notably the interests of the students and staff of MCA and their parents, would be served by the entry of an injunction prohibiting Defendants' unlawful conduct and conspiracy.

579.    Based upon the facts alleged herein and to be established at trial, Lichter has the clear legal right to the entry of an injunction prohibiting Defendants from violating her rights, privileges, and liberties.

580.    Defendants' actions were unjustified, willful, intentional, malicious, and conducted in bad faith and with the intent to harm Lichter.  Accordingly, Defendants' actions are not privileged and they entitle Lichter to recover punitive damages.

**WHEREFORE,** Plaintiff, Lichter, demands judgment against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, awarding:

A.    Compensatory damages in appropriate amounts to be established at trial;

B.    Special damages in appropriate amounts to be established at trial;

C.    Punitive damages in appropriate amounts to be established at trial

D.    A declaration that Defendants' acts and practices violate 42 U.S.C. §1983;

E.    Injunctive relief prohibiting Defendants from violating 42 U.S.C. §1983;

F.    Mandatory injunctive relief requiring Defendants to dismiss their retaliatory claims and lawsuits filed against Lichter;

G.    Reasonable attorneys' fees and costs associated with this action; and

H.    Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## COUNT V
### [42 U.S.C. §1983—Violation Of Bolduc's Civil Rights]

581.    Bolduc re-alleges paragraphs 1 through 508 as if fully set forth herein.

582.    This is an action under 42 U.S.C. §1983 by Bolduc against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias,

Phoenix, Durst, Lewis, Vickaryous, and Yormak, for violating and depriving him of his fundamental rights, privileges, and liberty while acting under color of state law.

583. Bolduc has and holds protected rights, privileges, and liberties under the U.S. Constitution and Federal law.

584. Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, violated Bolduc's protected rights, privileges, and liberties by:

<ol type="a" style="margin-left:2em">
<li>Defaming Bolduc while engaged in unauthorized, unlawful, and unjustifiable actions seeking to force his removal from MCA's Governing Board;</li>
<li>Defaming Bolduc while engaged in unauthorized, unlawful, and unjustifiable actions seeking to prevent him from exercising his rights to freedom of assembly and association;</li>
<li>Unlawfully searching Bolduc's emails without a warrant; and</li>
<li>Unlawfully depriving Bolduc of his protected rights, privileges, and liberties without probable cause and due process of law.</li>
</ol>

585. At all times material, Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, acted under color of state law and/or were jointly engaged or acted in conspiracy with state officials.

586. Defendants adversely impacted Bolduc's protected rights, privileges, and liberties.

587.    Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, conspired with each other and others to violate Bolduc's protected rights, privileges and liberties, and each of them engaged in overt acts in furtherance of their conspiracy that directly injured Bolduc and deprived him of having and exercising his protected rights, privileges, and immunities.

588.    Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, are jointly and severally liable for all harms flowing from their ongoing unlawful conspiracy, including the acts of each conspirator and all acts committed in furtherance of the conspiracy, regardless of whether such acts were specifically approved or known to the other conspirators.

589.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, Bolduc suffered and is entitled to recover damages, including damages for economic harm, harm to his reputation, emotional distress, mental anguish, humiliation, and loss of enjoyment of life, all of which are continuing in nature and will continue into the future, in amounts to be proven at trial.

590.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, Bolduc suffered and incurred significant damages, including costs, attorneys' fees, expenses, time, energy and resources, and other valuable efforts to protect and defend against Defendants' unlawful misconduct and conspiracy; all of which Bolduc is entitled to recover under the wrongful act doctrine.

591.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, and in addition to the quantifiable monetary damages Bolduc suffered, Bolduc has also suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law if Defendants are not enjoined from violating his fundamental rights, privileges and liberties.

592.    Defendants' unlawful conduct and conspiracy is ongoing and likely to continue and cause additional harm and injuries to Bolduc if the Defendants' unlawful conduct persists.

593.    The public interest, most notably the interests of the students and staff of MCA and their parents, would be served by the entry of an injunction prohibiting Defendants' unlawful conduct and conspiracy.

594.    Based upon the facts alleged herein and to be established at trial, Bolduc has the clear legal right to the entry of an injunction prohibiting Defendants from violating Bolduc's rights, privileges, and liberties.

595.    Defendants' actions were unjustified, willful, intentional, malicious, and conducted in bad faith and with the intent to harm Bolduc.  Accordingly, Defendants' actions are not privileged and they entitle Bolduc to recover punitive damages.

**WHEREFORE,** Plaintiff, Bolduc, demands judgment against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, awarding:

    A.    Compensatory damages in appropriate amounts to be established
          at trial;

B.    Special damages under the wrongful act doctrine in appropriate amounts to be established at trial;

C.    Punitive Damages in appropriate amounts to be established at trial;

D.    A declaration that Defendants' acts and practices violate 42 U.S.C. §1983;

E.    Injunctive relief prohibiting Defendants from violating 42 U.S.C. §1983;

F.    Reasonable attorneys' fees and costs associated with this action; and

G.    Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## <u>COUNT VI</u>
### [42 U.S.C. §1983—Retaliation Against Bolduc]

596.    Bolduc re-alleges paragraphs 1 through 508 as if fully set forth herein.

597.    This is an action under 42 U.S.C. §1983 by Bolduc against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, for retaliating against Bolduc for exercising his fundamental rights, privileges, and liberties while acting under color of state law.

598.    Bolduc has and holds fundamental rights, privileges, and liberty under the U.S. Constitution and federal law.

599.    Bolduc exercised his protected rights, privileges, and liberties by:

a.    Assembling and associating with others on MCA's Governing Board;

b.    Refusing to resign as an MCA Governing Board Member;

c.   Speaking about matters of public concern associated with MCA and the actions taken by Defendants to try to terminate MCA's Charter and Charter Agreement and force the removal of MCA's Governing Board members;

d.   Speaking in defense of MCA at public CCSB Board Meetings;

e.   Approving the filing a lawsuit against CCSB to contest its placement of MCA on "Probationary Warning Status" [Collier County Circuit Court Case No 20-CA-3427]; and

f.   Discharging and performing the duties of his office.

600.   Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, took adverse action and retaliated against Bolduc for exercising his protected rights, privileges, and liberties by:

a.   Unlawfully trying and conspiring to force his removal as an MCA Governing Board Member;

b.   Engaging in and conspiring to engage in crimes against Bolduc intended to force his removal as a member of MCA's Governing Board;

c.   Unlawfully searching his emails without a warrant;

d.   Defaming Bolduc;

e.   Filing meritless lawsuits and claims against Bolduc, including those set forth in Exhibit G and paragraph 465; and

f.   Filing meritless and false ethics complaints against Bolduc, including those set forth in Exhibit F.

601.   Defendants singled out Bolduc for discriminatory treatment on an irrational and wholly arbitrary basis and were motivated by spite and without any legitimate objective.

602.   Defendants' retaliatory actions adversely affected Bolduc's protected activities.

603.   Defendants' retaliatory actions against Bolduc were causally connected to his protected activities.

604.   Defendants' retaliatory acts amounted to a threat, coercion, or intimidation through intimating that punishment, sanctions, or adverse regulatory action would immediately follow.

605.   Defendants' retaliatory actions would likely deter a person of ordinary firmness from exercising the fundamental rights, privileges, and liberties Bolduc exercised.

606.   At all times material, Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, acted under color of state law and/or were jointly engaged or acted in conspiracy with state officials.

607.   Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, unlawfully deprived Bolduc of his protected rights, privileges, and liberties without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

608.   Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, conspired with each other and others to retaliate against Bolduc and each of them engaged in

overt acts in furtherance of their conspiracy that directly injured Bolduc and deprived him of having and exercising his protected rights, privileges, and immunities.

609.   Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, are jointly and severally liable for all harms flowing from their unlawful ongoing conspiracy, including the acts of each conspirator and all acts committed in furtherance of the conspiracy, regardless of whether such acts were specifically approved or known to the other conspirators.

610.   As a direct and proximate result of Defendants' unlawful conduct and conspiracy, Bolduc suffered and is entitled to recover damages, including damages for economic harm and harm to his reputation, emotional distress, mental anguish, humiliation, and loss of enjoyment of life, all of which are continuing in nature and will continue into the future, in amounts to be proven at trial.

611.   As a direct and proximate result of Defendants' unlawful conduct and conspiracy, Bolduc suffered and incurred significant damages, including costs, attorneys' fees, expenses, time, energy and resources, and other valuable efforts to protect and defend against Defendants' unlawful retaliation and conspiracy; all of which Bolduc is entitled to recover under the wrongful act doctrine.

612.   As a direct and proximate result of Defendants' unlawful conduct and conspiracy, and in addition to the quantifiable monetary damages Bolduc suffered, he has also suffered and will continue to suffer irreparable harm for which there is no

adequate remedy at law if Defendants are not enjoined from violating his fundamental rights, privileges and liberties.

613.    Defendants' unlawful conduct and conspiracy is ongoing and likely to continue and cause additional harm and injuries to Bolduc if the Defendants' unlawful conduct persists

614.    The public interest, most notably the interests of the students and staff of MCA and their parents, would be served by the entry of an injunction prohibiting Defendants' unlawful conduct and conspiracy.

615.    Based upon the facts alleged herein and to be established at trial, Bolduc has the clear legal right to the entry of an injunction prohibiting Defendants from violating his rights, privileges, and liberties.

616.    Defendants' actions were unjustified, willful, intentional, malicious, and conducted in bad faith and with the intent to harm Bolduc.  Accordingly, Defendants' actions are not privileged and they entitle Bolduc to recover punitive damages.

**WHEREFORE,** Plaintiff, Bolduc, demands judgment against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, awarding:

A.    Compensatory damages in appropriate amounts to be established at trial;

B.    Special damages in appropriate amounts to be established at trial;

C.    Punitive damages in appropriate amounts to be established at trial

D.    A declaration that Defendants' acts and practices violate 42 U.S.C. §1983;

E.    Injunctive relief prohibiting Defendants from violating 42 U.S.C. §1983;

F.    Mandatory injunctive relief requiring Defendants to dismiss their retaliatory claims and lawsuits filed against Bolduc;

G.    Reasonable attorneys' fees and costs associated with this action; and

H.    Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

### COUNT VII
### [VIOLATION OF 42 U.S.C. §1985—MCA vs. Defendants]

617.    MCA re-alleges paragraphs 1 through 508 as if fully set forth herein.

618.    This is an action under 42 U.S.C. §1985 by MCA against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, for conspiracy to interfere with MCA's civil rights.

619.    MCA has a legally protected interest in its Charter and its right to operate a charter school. MCA also possesses rights of equal protection and due process under the Fourteenth Amendment. In its operation of a charter school, MCA has duties and obligations to uphold the U.S. Constitution and laws of the United States, and therefore occupies an office, trust, or place of confidence under the United States

620.    MCA has a corresponding federal right to be free from interference with the performance of its duties.

621.    Defendants unlawfully conspired to prevent, by intimidation or threat, MCA from discharging the duties of its office, to injure MCA in its person or property

on account of the lawful discharge of the duties of its office or while engaged in the
lawful discharge thereof, and unlawfully conspired to injure MCA's property so as to
interrupt, hinder, or impede it in the discharge of its official duties.

622.    Defendants' conspiracy alleged herein violates 42 U.S.C. §1985(1).

623.    Defendants' actions and conspiracy adversely affected MCA's protected
rights.

624.    Defendants' acts amounted to a threat, coercion, or intimidation through
intimating that punishment, sanctions, or adverse regulatory action would
immediately follow.

625.    Defendants' actions would likely deter a person of ordinary firmness
from exercising the fundamental rights, privileges, and liberties MCA exercised.

626.    At all times material, Defendants, Arnn, Hillsdale College, Fishbane,
E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and
Yormak, acted under color of state law and/or were jointly engaged or acted in
conspiracy with state officials.

627.    Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima
Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, unlawfully
conspired to interfere with MCA's protected rights, privileges, and liberties without
due process of law in violation of the Fourteenth Amendment to the United States
Constitution.

628.    As alleged above, Defendants, Arnn, Hillsdale College, Fishbane,
E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and

Yormak, conspired with each other and others to interfere with and prevent, injure, interrupt, hinder, or impede MCA's rights, privileges and liberties, and each of them engaged in overt acts in furtherance of their conspiracy that directly injured MCA.

629.    Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, are jointly and severally liable for all harms flowing from their unlawful conspiracy, including the acts of each conspirator and all acts committed in furtherance of the conspiracy, regardless of whether such acts were specifically approved or known to the other conspirators.

630.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, MCA suffered and is entitled to recover damages, including damages for economic harm and harm to its reputation, all of which are continuing in nature and will continue into the future, in amounts to be proven at trial.

631.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, MCA suffered and incurred significant damages, including costs, attorneys' fees, expenses, time, energy and resources, and other valuable efforts to protect and defend against Defendants' unlawful conspiracy; all of which MCA is entitled to recover under the wrongful act doctrine.

632.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, and in addition to the quantifiable monetary damages MCA suffered, it has also suffered and will continue to suffer irreparable harm for which there is no

adequate remedy at law if Defendants are not enjoined from violating its fundamental rights, privileges and liberties.

633.    Defendants' unlawful conduct and conspiracy is ongoing and likely to continue and cause additional harm and injuries to MCA if the Defendants' unlawful conduct persists

634.    The public interest, most notably the interests of the students and staff of MCA and their parents, would be served by the entry of an injunction prohibiting Defendants' unlawful conduct and conspiracy.

635.    Based upon the facts alleged herein and to be established at trial, MCA has the clear legal right to the entry of an injunction prohibiting Defendants from violating its rights, privileges, and liberties.

636.    Defendants' actions were unjustified, willful, intentional, malicious, and conducted in bad faith and with the intent to harm MCA.  Accordingly, Defendants' actions are not privileged and they entitle MCA to recover punitive damages.

**WHEREFORE,** Plaintiff, MCA, demands judgment against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, awarding:

A.    Compensatory damages in appropriate amounts to be established at trial;

B.    Special damages in appropriate amounts to be established at trial

C.    Punitive damages in appropriate amounts to be established at trial

D.    A declaration that Defendants' acts and practices violate 42 U.S.C. §1985(1);

E.    Injunctive relief prohibiting Defendants from violating 42 U.S.C. §1985(1);

F.    Reasonable attorneys' fees and costs associated with this action; and

G.    Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## COUNT VIII
## [VIOLATION OF 42 U.S.C. §1985—Lichter vs. Defendants]

637.    Lichter re-alleges paragraphs 1 through 508 as if fully set forth herein.

638.    This is an action under 42 U.S.C. §1985 by Lichter against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, for conspiracy to interfere with her civil rights.

639.    Lichter has a legally protected interest in her position as an MCA Governing Board member and possesses rights of equal protection and due process under the Fourteenth Amendment.  As an MCA Governing Board Member, Lichter has duties and obligations to uphold the U.S. Constitution and laws of the United States, and therefore occupies an office, trust, or place of confidence under the United States

640.    Lichter has a corresponding federal right to be free from interference with the performance of her duties.

641.    Defendants unlawfully conspired to prevent, by intimidation or threat, Lichter from discharging the duties of her office, to injure Lichter in her person or property on account of the lawful discharge of the duties of her office or while engaged

in the lawful discharge thereof, and unlawfully conspired to injure Lichter's property
so as to interrupt, hinder, or impede her in the discharge of her official duties.

642.    Defendants' conspiracy alleged herein violates 42 U.S.C. §1985(1).

643.    Defendants' actions and conspiracy adversely affected Lichter's
protected rights.

644.    Defendants' acts amounted to a threat, coercion, or intimidation through
intimating that punishment, sanctions, or adverse regulatory action would
immediately follow.

645.    Defendants' actions would likely deter a person of ordinary firmness
from exercising the fundamental rights, privileges, and liberties Lichter exercised.

646.    At all times material, Defendants, Arnn, Hillsdale College, Fishbane,
E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and
Yormak, acted under color of state law and/or were jointly engaged or acted in
conspiracy with state officials.

647.    Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima
Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, unlawfully
conspired to interfere with Lichter's protected rights, privileges, and liberties without
due process of law in violation of the Fourteenth Amendment to the United States
Constitution.

648.    As alleged above, Defendants, Arnn, Hillsdale College, Fishbane,
E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and
Yormak, conspired with each other and others to interfere with and prevent, injure,

interrupt, hinder, or impede Lichter's protected rights, privileges and liberties, and each of them engaged in overt acts in furtherance of their conspiracy that directly injured Lichter.

649.    Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, are jointly and severally liable for all harms flowing from their unlawful conspiracy, including the acts of each conspirator and all acts committed in furtherance of the conspiracy, regardless of whether such acts were specifically approved or known to the other conspirators.

650.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, Lichter suffered and is entitled to recover damages, including damages for economic harm and harm to her reputation, emotional distress, mental anguish, and loss of enjoyment of life, all of which are continuing in nature and will continue into the future, in amounts to be proven at trial.

651.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, Lichter suffered and incurred significant damages, including costs, attorneys' fees, expenses, time, energy and resources, and other valuable efforts to protect and defend against Defendants' unlawful conspiracy; all of which Lichter is entitled to recover under the wrongful act doctrine.

652.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, and in addition to the quantifiable monetary damages Lichter suffered, she has also suffered and will continue to suffer irreparable harm for which there is no

adequate remedy at law if Defendants are not enjoined from violating her fundamental rights, privileges and liberties.

653. Defendants' unlawful conduct and conspiracy is ongoing and likely to continue and cause additional harm and injuries to Lichter if the Defendants' unlawful conduct persists

654. The public interest, most notably the interests of the students and staff of MCA and their parents, would be served by the entry of an injunction prohibiting Defendants' unlawful conduct and conspiracy.

655. Based upon the facts alleged herein and to be established at trial, Lichter has the clear legal right to the entry of an injunction prohibiting Defendants from violating her rights, privileges, and liberties.

656. Defendants' actions were unjustified, willful, intentional, malicious, and conducted in bad faith and with the intent to harm Lichter. Accordingly, Defendants' actions are not privileged and they entitle Lichter to recover punitive damages.

**WHEREFORE,** Plaintiff, Lichter, demands judgment against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, awarding:

A. Compensatory damages in appropriate amounts to be established at trial;

B. Special damages in appropriate amounts to be established at trial;

C. Punitive damages in appropriate amounts to be established at trial;

D. A declaration that Defendants' acts and practices violate 42 U.S.C. §1985(1);

E.    Injunctive relief prohibiting Defendants from violating 42 U.S.C. §1985(1);

F.    Reasonable attorneys' fees and costs associated with this action; and

G.    Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## COUNT IX
### [VIOLATION OF 42 U.S.C. §1985—Bolduc vs. Defendants]

657.    Plaintiffs re-alleges paragraphs 1 through 508 as if fully set forth herein.

658.    This is an action under 42 U.S.C. §1985 by Bolduc against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, for conspiracy to interfere with his civil rights.

659.    Bolduc has a legally protected interest in his position as an MCA Governing Board member and possesses rights of equal protection and due process under the Fourteenth Amendment.  As an MCA Governing Board Member, Bolduc has duties and obligations to uphold the U.S. Constitution and laws of the United States, and therefore occupies an office, trust, or place of confidence under the United States

660.    Bolduc has a corresponding federal right to be free from interference with the performance of his duties.

661.    Defendants unlawfully conspired to prevent, by intimidation or threat, Bolduc from discharging the duties of his office, to injure Bolduc in his person or property on account of the lawful discharge of the duties of his office or while engaged

in the lawful discharge thereof, and unlawfully conspired to injure Bolduc's property

so as to interrupt, hinder, or impede him in the discharge of his official duties.

662.   Defendants' conspiracy alleged herein violates 42 U.S.C. §1985(1).

663.   Defendants' actions and conspiracy adversely affected Bolduc's

protected rights.

664.   Defendants' acts amounted to a threat, coercion, or intimidation through

intimating that punishment, sanctions, or adverse regulatory action would

immediately follow.

665.   Defendants' actions would likely deter a person of ordinary firmness

from exercising the fundamental rights, privileges, and liberties Bolduc exercised.

666.   At all times material, Defendants, Arnn, Hillsdale College, Fishbane,

E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and

Yormak, acted under color of state law and/or were jointly engaged or acted in

conspiracy with state officials.

667.   Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima

Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, unlawfully

conspired to interfere with Bolduc's protected rights, privileges, and liberties without

due process of law in violation of the Fourteenth Amendment to the United States

Constitution.

668.   As alleged above, Defendants, Arnn, Hillsdale College, Fishbane,

E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and

Yormak, conspired with each other and others to interfere with and prevent, injure,

interrupt, hinder, or impede Bolduc's protected rights, privileges and liberties, and each of them engaged in overt acts in furtherance of their conspiracy that directly injured Bolduc.

669.    Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, are jointly and severally liable for all harms flowing from their unlawful conspiracy, including the acts of each conspirator and all acts committed in furtherance of the conspiracy, regardless of whether such acts were specifically approved or known to the other conspirators.

670.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, Bolduc suffered and is entitled to recover damages, including damages for economic harm and harm to his reputation, emotional distress, mental anguish, and loss of enjoyment of life, all of which are continuing in nature and will continue into the future, in amounts to be proven at trial.

671.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, Bolduc suffered and incurred significant damages, including costs, attorneys' fees, expenses, time, energy and resources, and other valuable efforts to protect and defend against Defendants' unlawful conspiracy; all of which Bolduc is entitled to recover under the wrongful act doctrine.

672.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, and in addition to the quantifiable monetary damages Bolduc suffered, he has also suffered and will continue to suffer irreparable harm for which there is no

adequate remedy at law if Defendants are not enjoined from violating his fundamental rights, privileges and liberties.

673.     Defendants' unlawful conduct and conspiracy is ongoing and likely to continue and cause additional harm and injuries to Bolduc if the Defendants' unlawful conduct persists

674.     The public interest, most notably the interests of the students and staff of MCA and their parents, would be served by the entry of an injunction prohibiting Defendants' unlawful conduct and conspiracy.

675.     Based upon the facts alleged herein and to be established at trial, Bolduc has the clear legal right to the entry of an injunction prohibiting Defendants from violating his rights, privileges, and liberties.

676.     Defendants' actions were unjustified, willful, intentional, malicious, and conducted in bad faith and with the intent to harm Bolduc.  Accordingly, Defendants' actions are not privileged and they entitle Bolduc to recover punitive damages.

**WHEREFORE,** Plaintiff, Bolduc, demands judgment against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, awarding:

A.     Compensatory damages in appropriate amounts to be established at trial;

B.     Special damages in appropriate amounts to be established at trial;

C.     Punitive damages in appropriate amounts to be established at trial;

D.     A declaration that Defendants' acts and practices violate 42 U.S.C. §1985(1);

E.    Injunctive relief prohibiting Defendants from violating 42 U.S.C. §1985(1);

F.    Reasonable attorneys' fees and costs associated with this action; and

G.    Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## COUNT X
## [VIOLATION OF 42 U.S.C. §1986]

677.    Plaintiffs re-alleges paragraphs 1 through 676 as if fully set forth herein.

678.    This is an action under 42 U.S.C. §1986 by MCA, Lichter, and Bolduc against Defendant, Fishbane, for neglecting to prevent the violations of and conspiracy to interfere with Plaintiffs' civil rights set forth in Counts I-IX, above.

679.    Defendants entered into a conspiracy to violate 42 U.S.C. §1985.

680.    42 U.S.C. §1986 provides:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action…

681.    Fishbane had knowledge that wrongs conspired to be done against Plaintiffs in violation of 42 U.S.C. §1985 were about to be committed and had the power to prevent or aid in preventing the commission of those wrongs.

682.   Despite that knowledge, Fishbane neglected and/or refused to prevent or aid in preventing the wrongs from being committed.

683.   As a direct and proximate result of Fishbane's misconduct, Plaintiffs suffered and are entitled to recover damages, including damages for economic harm and harm to their reputation, emotional distress, mental anguish, and loss of enjoyment of life, all of which are continuing in nature and will continue into the future, in amounts to be proven at trial.

684.   As a direct and proximate result of Fishbane's misconduct, Plaintiffs suffered and incurred significant damages, including costs, attorneys' fees, expenses, time, energy and resources, and other valuable efforts to protect and defend against Defendants' unlawful conspiracy; all of which Plaintiffs are entitled to recover under the wrongful act doctrine.

685.   As a direct and proximate result of Fishbane's misconduct, and in addition to the quantifiable monetary damages Plaintiffs suffered, they have also suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law if Fishbane is not enjoined from violating 42 U.S.C. § 1986.

686.   Fishbane's conduct is ongoing and likely to continue and cause additional harm and injuries to Plaintiffs if Fishbane's misconduct persists

687.   The public interest, most notably the interests of the students and staff of MCA and their parents, would be served by the entry of an injunction prohibiting Fishbane's misconduct.

688.    Based upon the facts alleged herein and to be established at trial, Plaintiffs

have the clear legal right to the entry of an injunction prohibiting Fishbane from

violating 42 U.S.C. § 1986.

689.    Fishbane's actions were unjustified, willful, intentional, malicious, and

conducted in bad faith and with the intent to harm Plaintiffs.    Accordingly,

Defendants' actions are not privileged and they entitle Plaintiffs to recover punitive

damages.

**WHEREFORE,** Plaintiffs, MCA, Lichter, and Bolduc, demand judgment

against Defendant, Fishbane, awarding:

A.    Compensatory damages in appropriate amounts to be established at trial;

B.    Special damages in appropriate amounts to be established at trial;

C.    Punitive damages in appropriate amounts to be established at trial;

D.    A declaration that Fishbane's acts and failures to act violate 42 U.S.C. §1986;

E.    Injunctive relief prohibiting Fishbane from violating 42 U.S.C. §1986;

F.    Reasonable attorneys' fees and costs associated with this action; and

G.    Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

### COUNT XI
### [RICO—18 U.S.C. § 1964]

690.  Plaintiffs realleges paragraphs 1 through 508 as if fully set forth herein.

691.  This is an action by Plaintiffs against Defendants, Arnn, Fishbane, E. Donalds, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, under 18 U.S.C. § 1964.

692.  Hillsdale College, Optima Foundation, and/or the Barney Charter School Initiative, collectively or independently, are an ongoing organization, formal or informal, with a common purpose of engaging in a course of conduct and functioned as a continuing unit (the "Enterprise").

693.  The Enterprise and its activities affected interstate commerce.

694.  Defendants, Arnn, Fishbane, E. Donalds, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, were employed by or associated with the Enterprise.

695.  Defendants, Arnn, Fishbane, E. Donalds, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, conducted or participated in, directly or indirectly, the conduct of the Enterprise by engaging in a pattern of racketeering activity consisting of the acts described in paragraphs 498-499, above, at least two of which had the same or similar intents, results, accomplices, victims, and/or methods of commission, and were not isolated incidents.

696.  The pattern of racketeering activity described in paragraphs 498-499, above, occurred over an extended period of time and is also ongoing in nature and likely to extend into the future.

697.  The pattern of racketeering activity described in paragraphs 498-499, above, was committed in furtherance of the affairs of the Enterprise.

698.    Defendants were able to commit the acts comprising the pattern of racketeering activity described in paragraphs 498-499, above, because of their positions in the Enterprise or involvement in or control over the affairs of the Enterprise.

699.    Defendants each had the specific intent to either personally engage in at least two incidents of racketeering activity or specifically intended to otherwise participate in the affairs of the Enterprise with knowledge and intent that other members of the conspiracy would engage in at least two incidents of racketeering activity.

700.    As a direct and proximate result of Defendants' racketeering activities, Plaintiffs suffered injury to their business and property and are entitled to recover treble damages.

701.    As a direct and proximate result of Defendants racketeering activities, and in addition to the quantifiable monetary damages Plaintiffs suffered, Plaintiffs have also suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law if Defendants are not enjoined.

702.    Defendants' unlawful conduct is ongoing and likely to continue, and continued injuries will result if the Defendants' unlawful conduct persists

703.    The public interest would be served by the entry of an injunction prohibiting Defendants' unlawful conduct.

704.    Based upon the facts alleged herein and to be established at trial, Plaintiffs have the clear legal right to the entry of a permanent injunction prohibiting Defendants from violating 18 U.S.C. 1962(a)-(c).

705.    Defendants' actions were unjustified, willful, intentional, malicious, and conducted in bad faith and with the intent to harm Plaintiffs.    Accordingly, Defendants' actions are not privileged and they entitle Plaintiffs to recover punitive damages.

**WHEREFORE,** Plaintiffs, MCA, Lichter, and Bolduc, demand judgment against Defendants, Arnn, Fishbane, E. Donalds, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, awarding:

A.    Treble damages in appropriate amounts to be established at trial;

B.    Injunctive relief prohibiting Defendants from engaging in violations of 18 U.S.C. § 1962;

C.    Attorneys' Fees and Costs associated with this action; and

D.    Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## COUNT XII
### [RICO CONSPIRACY—18 U.S.C. § 1964]

706.    Plaintiffs realleges paragraphs 1 through 508 as if fully set forth herein.

707.    This is an action under 18 U.S.C. § 1964 by Plaintiffs against Defendants, Arnn, Fishbane, E. Donalds, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, for a conspiracy to violate 18 U.S.C. § 1962 (A)-(C).

708.    Hillsdale College, Optima Foundation, and/or the Barney Charter School Initiative, collectively or independently, are an ongoing organization, formal or informal, with a common purpose of engaging in a course of conduct and functioned as a continuing unit (the "Enterprise").

709.   The Enterprise and its activities affected interstate commerce.

710.   Defendants, Arnn, Fishbane, E. Donalds, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, were employed by or associated with the Enterprise.

711.   Defendants, Arnn, Fishbane, E. Donalds, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, conspired to conduct or participate in, directly or indirectly, the conduct of the Enterprise by engaging in a pattern of racketeering activity consisting of the acts described in paragraphs 498-499, above, at least two of which had the same or similar intents, results, accomplices, victims, and/or methods of commission, and were not isolated incidents.

712.   The pattern of racketeering activity described in paragraphs 498-499, above, occurred over an extended period of time and is also ongoing in nature and likely to extend into the future.

713.   The pattern of racketeering activity described in paragraphs 498-499, above, was committed in furtherance of the affairs of the Enterprise.

714.   As a direct and proximate result of Defendants' conspiracy, Plaintiffs suffered injury to their business and property and are entitled to recover treble damages.

715.   As a direct and proximate result of Defendants' conspiracy, and in addition to the quantifiable monetary damages Plaintiffs suffered, Plaintiffs have also suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law if Defendants are not enjoined.

716.    Defendants' unlawful conduct is ongoing and likely to continue, and continued injuries will result if the Defendants' unlawful conduct persists

717.    The public interest would be served by the entry of an injunction prohibiting Defendants' unlawful conduct.

718.    Based upon the facts alleged herein and to be established at trial, Plaintiffs have the clear legal right to the entry of a permanent injunction prohibiting Defendants from violating 18 U.S.C. 1962(d).

719.    Defendants' actions were unjustified, willful, intentional, malicious, and conducted in bad faith and with the intent to harm Plaintiffs.    Accordingly, Defendants' actions are not privileged.

**WHEREFORE,** Plaintiffs, MCA, Lichter, and Bolduc, demand judgment against Defendants, Arnn, Fishbane, E. Donalds, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, awarding:

A.    Treble damages in appropriate amounts to be established at trial;

B.    Injunctive relief prohibiting Defendants from engaging in violations of 18 U.S.C. § 1962(D);

C.    Attorneys' Fees and Costs associated with this action; and

D.    Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## <u>COUNT XIII</u>
## [CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT]

720.    Plaintiffs realleges paragraphs 1 through 508 as if fully set forth herein.

721.   This is an action by Plaintiffs against Defendants, Arnn, Fishbane, E. Donalds, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, under § 772.104, *Florida Statutes.*

722.   Hillsdale College, Optima Foundation, and/or the Barney Charter School Initiative, collectively or independently, are an ongoing organization, formal or informal, with a common purpose of engaging in a course of conduct that functioned as a continuing unit (the "Enterprise").

723.   Defendants, Arnn, Fishbane, E. Donalds, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, were employed by or associated with the Enterprise.

724.   Defendants, Arnn, Fishbane, E. Donalds, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, conducted or participated in, directly or indirectly, the conduct of the Enterprise by engaging in a pattern of criminal activity consisting of acts described in paragraphs 498-499, above, at least two of which had the same or similar intents, results, accomplices, victims, and/or methods of commission, and were not isolated incidents:

725.   The pattern of criminal activity described in paragraphs 498-499, above, occurred over an extended period of time and is also ongoing in nature and likely to extend into the future.

726.   The pattern of criminal activity described in paragraphs 498-499, above, was committed in furtherance of the affairs of the Enterprise.

727.    Defendants were able to commit the acts comprising the pattern of criminal activity described in paragraphs 498-499, above, because of their positions in the Enterprise or involvement in or control over the affairs of the Enterprise.

728.    Defendants each had the specific intent to either personally engage in at least two incidents of criminal activity or specifically intended to otherwise participate in the affairs of the Enterprise with knowledge and intent that other members of the conspiracy would engage in at least two incidents of criminal activity.

729.    As a direct and proximate result of Defendants' criminal activities, Plaintiffs suffered injury to their business and property and are entitled to recover treble damages.

730.    As a direct and proximate result of Defendants actions, and in addition to the quantifiable monetary damages Plaintiff suffered, Plaintiffs have also suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law if Defendants are not enjoined from violating section 772.103, *Florida Statutes*.

731.    Defendants' unlawful conduct is ongoing and likely to continue, and continued injuries will result if the Defendants' unlawful conduct persists.

732.    The public interest would be served by the entry of an injunction prohibiting Defendants' unlawful conduct.

733.    Based upon the facts alleged herein and to be established at trial, Plaintiffs have the clear legal right to the entry of a permanent injunction prohibiting Defendants from violating section 772.103, *Florida Statutes*.

734.    Defendants' actions were unjustified, willful, intentional, malicious, and conducted in bad faith and with the intent to harm Plaintiffs.    Accordingly, Defendants' actions are not privileged.

**WHEREFORE,** Plaintiffs, MCA, Lichter, and Bolduc,  Kelly Lichter, demand judgment against Defendants, Arnn, Fishbane, E. Donalds, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, awarding:

A.    Treble damages in appropriate amounts to be established at trial;

B.    Injunctive relief prohibiting Defendants from violating § 772.103, *Fla. Stat.*;

C.    Attorneys' Fees and Costs associated with this action; and

D.    Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## COUNT XIV
## [CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT--CONSPIRACY]

735.    Plaintiffs realleges paragraphs 1 through 508 as if fully set forth herein.

736.    This is an action under § 772.104, *Florida Statutes*,  by Plaintiffs against Defendants,  Arnn,  Fishbane,  E.  Donalds,  Mathias,  Phoenix,  Durst,  Lewis, Vickaryous, and Yormak, for a conspiracy to violate  § 772.103(1)-(3), *Florida Statutes.*

737.    Hillsdale College, Optima Foundation, and/or the Barney Charter School Initiative, collectively or independently, are an ongoing organization, formal or informal, with a common purpose of engaging in a course of conduct that functioned as a continuing unit (the "Enterprise").

738.   Defendants, Arnn, Fishbane, E. Donalds, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, were employed by or associated with the Enterprise.

739.   Defendants, Arnn, Fishbane, E. Donalds, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, conspired or endeavored to conduct or participate in, directly or indirectly, the conduct of the Enterprise by engaging in a pattern of criminal activity consisting of acts described in paragraphs 498-499, at least two of which had the same or similar intents, results, accomplices, victims, and/or methods of commission, and were not isolated incidents:

740.   The pattern of criminal activity described in paragraphs 498-499, above, occurred over an extended period of time and is also ongoing in nature and likely to extend into the future.

741.   The pattern of criminal activity described in paragraphs 498-499, above, was committed in furtherance of the affairs of the Enterprise.

742.   As a direct and proximate result of Defendants' conspiracy, Plaintiffs suffered injury to their business and property and are entitled to recover treble damages.

743.   As a direct and proximate result of Defendants actions, and in addition to the quantifiable monetary damages Plaintiff suffered, Plaintiffs have also suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law if Defendants are not enjoined from violating section 772.103, *Florida Statutes*.

744.   Defendants' unlawful conduct is ongoing and likely to continue, and continued injuries will result if the Defendants' unlawful conduct persists.

745.    The public interest would be served by the entry of an injunction prohibiting Defendants' unlawful conduct.

746.    Based upon the facts alleged herein and to be established at trial, Plaintiffs have the clear legal right to the entry of a permanent injunction prohibiting Defendants from violating section 772.103, *Florida Statutes*.

747.    Defendants' actions were unjustified, willful, intentional, malicious, and conducted in bad faith and with the intent to harm Plaintiffs. Accordingly, Defendants' actions are not privileged.

**WHEREFORE,** Plaintiffs, MCA, Lichter, and Bolduc, Kelly Lichter, demand judgment against Defendants, Arnn, Fishbane, E. Donalds, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, awarding:

A.    Treble damages in appropriate amounts to be established at trial;

B.    Injunctive relief prohibiting Defendants from violating § 772.103, *Fla. Stat.*;

C.    Attorneys' Fees and Costs associated with this action; and

D.    Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## COUNT XV
### [VIOLATION OF FLORIDA DECEPTIVE & UNFAIR TRADE PRACTICES ACT]

748.    Plaintiffs realleges paragraphs 1 through 508 as if fully set forth herein.

749.    This is an action by Plaintiffs against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis,

Vickaryous, and Yormak, for declaratory and injunctive relief and attorneys' fees under § 501.211, *Florida Statutes*.

750.   Pursuant to Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), unconscionable, unfair, and deceptive acts or practices in the conduct of trade or commerce are unlawful.  Fla. Stat. § 501.204(1).

751.   Anyone aggrieved by a violation of FDUTPA may bring an action for injunctive relief and a declaratory judgment.  Fla. Stat. § 501.211 (1).

752.   Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, engaged in deceptive and/or unfair business acts and practices.

753.   Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, actions offend established public policy, and are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.

754.   Plaintiffs have been aggrieved by Defendants' unfair and deceptive acts and practices.

755.   Plaintiffs are entitled to a declaration that Defendants' conduct violates FDUTPA and an injunction prohibiting Defendants' deceptive, unfair, and unlawful conduct.

756.   Plaintiffs suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law if Defendants are not enjoined from unlawfully violating FDUTPA.

757.    Defendants' unlawful conduct is ongoing and likely to continue, and continued injuries will result if the Defendants' unlawful conduct persists.

758.    The public interest would be served by the entry of an injunction prohibiting Defendants' unlawful conduct.

759.    Based upon the facts alleged herein and to be established at trial, Plaintiffs have the clear legal right to the entry of a permanent injunction prohibiting Defendants from violating FDUTPA.

760.    Defendants' actions were unjustified, willful, intentional, malicious, and conducted in bad faith and with the intent to harm Plaintiffs.    Accordingly, Defendants' actions are not privileged and they entitle Plaintiffs to recover punitive damages.

**WHEREFORE,** Plaintiffs, MCA, Lichter, and Bolduc, demand judgment against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, for:

A.    A declaration that Defendants committed deceptive and unfair trade practices in violation of FDUTPA;

B.    Injunctive relief prohibiting Defendants from violating FDUTPA;

C.    Attorneys' Fees and Costs associated with this action;

D.    Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## COUNT XVI
## [DEFAMATION—MCA vs Defendants]

761.    Plaintiff realleges paragraphs 1 through 508 as if fully set forth herein

762.    Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima
Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, published,
caused to be published, and/or directed or encouraged others to publish false and
defamatory statements which did expose and had the tendency to expose MCA to
hatred, contempt, ridicule and disgrace.

763.    Defendants' false and defamatory statements are of and concerning
MCA and reasonably understood to be about MCA.

764.    The Defendants' defamatory statements about MCA are false.

765.    Defendants published, caused to be published, and/or directed or
encouraged others to publish the defamatory statements knowing that they were false
or with reckless disregard for their truth or falsity.

766.    The Defendants' false and defamatory statements are defamatory *per se*
because they charged that MCA committed crimes and tended to injure MCA in its
trade, business or profession.

767.    In light of MCA's standing in the community, the nature of the
statements, the extent to which the statements were circulated, and the tendency of the
statements to injure someone such as MCA, Defendants directly and proximately
caused MCA to suffer significant damages, including substantial reputational harm
which is ongoing in nature and will be suffered in the future.  MCA is also entitled to
recover damages for the costs associated with repairing its reputation and/or
correcting the defamatory statements.

768.   Re-publication of the Defendants' defamatory statements in other publications, online, and through social media, caused MCA to suffer additional damages; all of which were foreseeable.

769.   The Defendants acted knowingly, intentionally, willfully, wantonly and maliciously, with the intent to harm MCA, or in blatant disregard of the substantial likelihood of causing MCA harm.

770.   As a direct and proximate result of Defendants' tortious conduct, MCA is entitled to compensatory and special damages in amounts to be proven at trial.

771.   As a direct and proximate result of the Defendants' tortious conduct, and in addition to the quantifiable monetary damages MCA suffered, MCA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

772.   Based upon the facts alleged herein, MCA has the clear legal right to the entry of an injunction prohibiting Defendants from publishing and republishing the defamatory statements.

773.   The public interest would be served by the entry of an injunction prohibiting Defendants' tortious conduct.

774.   Based upon the facts alleged herein and to be established at trial, MCA has the clear legal right to the entry of a permanent injunction prohibiting Defendants from publishing and republishing the defamatory statements.

775.   Defendants' actions were willful, intentional, malicious, and conducted in bad faith and with the intent to harm MCA.  Accordingly, Defendants' actions were not privileged and they entitle MCA to recover punitive damages.

**WHEREFORE,** Plaintiff, Mason Classical Academy, Inc., demands judgment against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, awarding:

A.   Compensatory and special damages in appropriate amounts to be established at trial;

B.   Punitive Damages;

C.   Injunctive relief prohibiting Defendants from publishing and republishing the defamatory statements; and

D.   Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## COUNT XVII
### [DEFAMATION—Lichter vs Defendants]

776.   Plaintiff realleges paragraphs 1 through 508 as if fully set forth herein.

777.   Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak published, caused to be published, and/or directed or encouraged others to publish false and defamatory statements which did expose and had the tendency to expose Lichter to hatred, contempt, ridicule and disgrace.

778.   Defendants' false and defamatory statements are of and concerning Lichter and reasonably understood to be about Lichter.

779.   The Defendants' defamatory statements about Lichter are false.

780.    Defendants published, caused to be published, and/or directed or encouraged others to publish the defamatory statements knowing that they were false or with reckless disregard for their truth or falsity.

781.    The Defendants' false and defamatory statements are defamatory *per se* because they charged that Lichter committed crimes and tended to injure Lichter in her trade, business or profession.

782.    In light of Lichter's standing in the community, the nature of the statements, the extent to which the statements were circulated, and the tendency of the statements to injure someone such as Lichter, the Defendants directly and proximately caused her to suffer significant damages, including substantial reputational harm which is ongoing in nature and will be suffered in the future.  Lichter is also entitled to recover damages for the costs associated with repairing her reputation and/or correcting the defamatory statements.

783.    Lichter also suffered humiliation, mental anguish, emotional distress, and embarrassment as a direct and proximate result of the Defendants' false and defamatory statements.

784.    Re-publication of the Defendants' defamatory statements in other publications, online, and through social media, caused Lichter to suffer additional damages; all of which were foreseeable.

785.    The Defendants acted knowingly, intentionally, willfully, wantonly and maliciously, with the intent to harm Lichter, or in blatant disregard of the substantial likelihood of causing Lichter harm.

786.    As a direct and proximate result of Defendants' tortious conduct, Lichter is entitled to compensatory and special damages in amounts to be proven at trial.

787.    As a direct and proximate result of the Defendants' tortious conduct, and in addition to the quantifiable monetary damages Lichter suffered, she has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

788.    Based upon the facts alleged herein, Lichter has the clear legal right to the entry of an injunction prohibiting Defendants from publishing and republishing the defamatory statements.

789.    The public interest would be served by the entry of an injunction prohibiting Defendants' tortious conduct.

790.    Based upon the facts alleged herein and to be established at trial, Lichter has the clear legal right to the entry of a permanent injunction prohibiting Defendants from publishing and republishing the defamatory statements.

791.    Defendants' actions were willful, intentional, malicious, and conducted in bad faith and with the intent to harm Lichter.  Accordingly, Defendants' actions were not privileged and they entitle her to recover punitive damages.

**WHEREFORE,** Plaintiff, Kelly Lichter, demands judgment against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, awarding:

A.    Compensatory and special damages in appropriate amounts to be established at trial;

B.    Punitive damages in appropriate amounts to be established at trial;

C.    Injunctive relief prohibiting Defendants from publishing and republishing the defamatory statements; and

D.    Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## <u>COUNT XVIII</u>
### [DEFAMATION—Bolduc vs. Defendants]

792.    Plaintiff realleges paragraphs 1 through 508 as if fully set forth herein.

793.    Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak, published, caused to be published, and/or directed or encouraged others to publish false and defamatory statements which did expose and had the tendency to expose Bolduc to hatred, contempt, ridicule and disgrace.

794.    Defendants' false and defamatory statements are of and concerning Bolduc and reasonably understood to be about Bolduc.

795.    The Defendants' defamatory statements about Bolduc are false.

796.    Defendants published, caused to be published, and/or directed or encouraged others to publish the defamatory statements knowing that they were false or with reckless disregard for their truth or falsity.

797.    The Defendants' false and defamatory statements are defamatory *per se* because they charged that Bolduc committed crimes and tended to injure him in his trade, business or profession.

798.    In light of Bolduc's standing in the community, the nature of the statements, the extent to which the statements were circulated, and the tendency of the

statements to injure someone such as Bolduc, the Defendants directly and proximately caused him to suffer significant damages, including substantial reputational harm which is ongoing in nature and will be suffered in the future. Bolduc is also entitled to recover damages for the costs associated with repairing his reputation and/or correcting the defamatory statements.

799. Bolduc also suffered humiliation, mental anguish, emotional distress, and embarrassment as a direct and proximate result of the Defendants' false and defamatory statements.

800. Re-publication of the Defendants' defamatory statements in other publications, online, and through social media, caused Bolduc to suffer additional damages; all of which were foreseeable.

801. The Defendants acted knowingly, intentionally, willfully, wantonly and maliciously, with the intent to harm Bolduc, or in blatant disregard of the substantial likelihood of causing him harm.

802. As a direct and proximate result of Defendants' tortious conduct, Bolduc is entitled to compensatory and special damages in amounts to be proven at trial.

803. As a direct and proximate result of the Defendants' tortious conduct, and in addition to the quantifiable monetary damages Bolduc suffered, he has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

804. Based upon the facts alleged herein, Bolduc has the clear legal right to the entry of an injunction prohibiting Defendants from publishing and republishing the defamatory statements.

805.    The public interest would be served by the entry of an injunction prohibiting Defendants' tortious conduct.

806.    Based upon the facts alleged herein and to be established at trial, Bolduc has the clear legal right to the entry of a permanent injunction prohibiting Defendants from publishing and republishing the defamatory statements.

807.    Defendants' actions were willful, intentional, malicious, and conducted in bad faith and with the intent to harm Bolduc.  Accordingly, Defendants' actions were not privileged and they entitle him to recover punitive damages.

**WHEREFORE,** Plaintiff, David Bolduc, demands judgment against Defendants, Arnn, Hillsdale College, Fishbane, E. Donalds, Optima Foundation, Mathias, Phoenix, Durst, Lewis, Vickaryous, and Yormak , awarding:

A.    Compensatory and special damages in appropriate amounts to be established at trial;

B.    Punitive damages in appropriate amounts to be established at trial;

C.    Injunctive relief prohibiting Defendants from publishing and republishing the defamatory statements; and

D.    Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: August 19, 2022.

/s/ Shane B. Vogt
Shane B. Vogt - FBN 257620
LEAD COUNSEL
E-mail: svogt@tcb-law.com
David A. Hayes - FBN 096657
E-mail: dhayes@tcb-law.com
TURKEL CUVA BARRIOS, P.A.
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel: (813) 834-9191
Fax: (813) 443-2193
*Attorneys for Plaintiffs*